**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Lennisha Reed *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 3:20-cv-01139-SPM |
| Wexford Health Sources, Inc., *et al.*, | Judge Stephen P. McGlynn |
| Defendants. | |

**PLAINTIFFS' MOTION FOR ENTRY OF A
<u>HIPAA-QUALIFIED PROTECTIVE ORDER</u>**

Plaintiffs, through their undersigned counsel, hereby move for entry of a HIPAA-qualified protective order pursuant to 45 C.F.R. § 164.512(e).  Pursuant to the Court's standing order, the proposed protective order is not appended to this motion, but rather will be submitted to chambers via email concurrently with the filing of this Motion.

The proposed protective order would supplant the existing HIPAA protective order in this case, ECF 34.  The proposed order would modify the existing protective order in one substantive respect:  while the existing protective order applies only to the protected health information ("PHI") of Lenn Reed Sr., the decedent in this case, *see* ECF 34 ¶ 3, the proposed protective order would cover the PHI of third parties as well.

Counsel for Plaintiffs has consulted with counsel for Wexford via email, and attempted to contact Wexford counsel by telephone without success.  Via email Plaintiffs were informed that Wexford opposes Plaintiffs' motion.

In support of their motion, Plaintiffs state as follows:

**BACKGROUND**

This is a civil rights action brought under 42 U.S.C. § 1983 concerning the death of Lenn Reed from a cancer that was ignored for years by Wexford Health Sources, Inc., the corporation that contracts with the Illinois Department of Corrections, where Mr. Reed was incarcerated, to provide medical care to its prisoners.  In their complaint, Plaintiffs, who are Mr. Reed's adult children and the co-administrators of his estate, allege that in early 2018 Mr. Reed, an otherwise healthy 40-year-old, began complaining to Wexford medical staff about digestive problems.  ECF 1 ¶ 10.  Medical staff handled his complaints as a case of indigestion and gave him indigestion medication.  *Id.* ¶ 11.  Those medications did not alleviate Mr. Reed's symptoms, his weight began to drop dramatically, and he had other alarming symptoms like a feeling of blocked bowels.  *Id.* ¶¶ 11-18.  These were signs of cancer, but Wexford's medical staff ignored them and persisted in treating Mr. Reed solely for indigestion, even though treatment was demonstrably ineffective.  *Id.*  Eventually, when Mr. Reed's weight loss became impossible to ignore, medical staff ordered testing, which revealed he had cancer.  *Id.* ¶¶ 19-21.  That should have led to immediate staging and treatment, but instead Wexford medical staff proceeded in an unhurried manner.  *Id.* ¶¶ 22-31.  As a result it became too late for Mr. Reed to receive effective treatment, and he died of cancer in January 2019.  *Id.* ¶ 32.

Plaintiffs have brought this action against Wexford and several of its employees.  While Plaintiffs have sued the employees for their alleged mistreatment of Mr. Reed himself, evidence of Mr. Reed's own mistreatment is not sufficient to make out a claim against Wexford.  Rather, under current binding precedent in this Circuit, to prevail on a claim against a for-profit corporation like Wexford, Plaintiff must satisfy the rigorous standard of proof set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Specifically, as Plaintiffs explain herein,

under *Monell* they must prove that Wexford had *widespread* practices of providing inadequate care, affecting not just Plaintiff but numerous other prisoners as well.

Plaintiffs have made precisely such allegations. They have charged that Wexford had widespread practices across the IDOC of failing to diagnose and failing adequately to treat patients under its care who were suffering from cancer. *See* ECF 1 ¶¶ 34-46, 61-65. These *Monell* allegations are extensive and detailed. Among other things, Plaintiffs point to *Lippert v. Godinez*, an injunctive class action pending in the U.S. District Court for the Central District of Illinois regarding the medical care given to IDOC prisoners. *See id.* ¶¶ 41-45. In *Lippert*, experts appointed by the District Court have submitted multiple reports in which they have concluded that scores of IDOC prisoners under Wexford's care have been denied lifesaving medical care. *Id.* ¶ 41. In particular, Plaintiffs allege, the *Lippert* experts identified

> numerous cases throughout the IDOC in which the time from cancer symptoms to cancer treatment was intolerably long: on numerous occasions, Wexford medical staff assumed innocent explanations for symptoms that were indicative of cancer; were slow in ordering diagnostic testing even when the possibility of cancer was self-evident; and took months to work up patients for chemotherapy when the same procedures could have occurred in a matter of weeks or even days. The *Lippert* report observes that this lengthening in time from first symptoms to treatment caused numerous people suffering from cancer in the IDOC to die unnecessarily.

*Id.* ¶ 45. These *Monell* widespread-practice claims are currently in discovery.

On May 24, 2021, Wexford moved for entry of a HIPAA protective order (ECF 32) and submitted a proposed HIPAA protective order to the Court via email on May 26. Wexford's proposed HIPAA order, which the Court approved (ECF 33) and entered (ECF 34), covered only Mr. Reed's PHI, not that of third parties. *See* ECF 34 ¶ 3. Plaintiffs were not consulted before Wexford moved for entry of the protective order, and on May 26 Plaintiffs' counsel contacted defense counsel to propose an amended HIPAA-qualified protective order that covered third-

party PHI as well. *See* **Ex. 1** (May 26, 2021). Wexford responded that it opposed such an order, on grounds that the disclosure of third-party PHI was not appropriate in this case. *See id.* (May 27, 2021). Shortly after objecting to the entry of a HIPAA protective order covering third-party PHI, Wexford responded to discovery Plaintiffs had served, objecting that multiple discovery requests called for disclosure of third-party PHI, and thus violated HIPAA. *See* **Ex. 2 ¶¶** 25, 27, 29, 31, 46.

Plaintiffs served a second discovery request asking Wexford to produce documents relating to specific medical cases set out in two *Lippert* expert reports, which among other things documented numerous instances in which *Lippert*'s court-appointed experts had concluded that Wexford treaters had delayed or failed to provide diagnosis or care for cancer of IDOC inmates. *See* **Ex. 3**. Wexford objected to each one of these requests on grounds that they, too, violated HIPAA since they sought third-party PHI. Ex. 3 *passim*. After receiving these objections, Plaintiffs' counsel again contacted Wexford's counsel to seek Wexford's consent to entry of a HIPAA protective order that covered such third-party PHI. *See* Ex. 1 (Aug. 13, 2021). Once again, Wexford's counsel objected to entry of such an order. *See id.* (Aug. 18 & Aug. 25, 2021).

This motion follows.

## ARGUMENT

**A. Plaintiffs require third-party PHI to prove their *Monell* claims against Wexford.**

Plaintiffs *Monell* claim against Wexford alleges that the company engages in widespread practices of delaying diagnosis and treatment of cancer of the inmates under its care. *See supra* at 2-3. That allegation is not happenstance: the Seventh Circuit has repeatedly obligated parties seeking to hold a corporate entity like Wexford liable under Section 1983 to prove that liability pursuant to *Monell*, which requires plaintiffs to put forth evidence that any alleged misconduct is widespread—affecting not just the particular plaintiff, but numerous other individuals as well.

4

*See, e.g.*, *Daniel v. Cook Cnty.*, 833 F.3d 728, 734-35 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [the plaintiff] must show more than the deficiencies specific to his own experience, of course."); *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) ("[T]here can be little doubt that a practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways."); *Hildreth v. Butler*, 960 F.3d 420, 427 (7th Cir. 2020) (affirmed summary judgment in Wexford's favor on plaintiff's *Monell* claim based on the plaintiff's failure to provide evidence regarding other incarcerated individuals). Plaintiffs expect that, at summary judgment and at trial, Wexford will cite the above-referenced cases in arguing that the evidence Plaintiffs offer is insufficiently widespread, and did not affect a sufficient number of other prisoners, to permit a reasonable jury to find in Plaintiffs' favor on their *Monell* claim against it. That is Wexford's prerogative. The corollary, however, is that Wexford's treatment of other inmates is of central relevance in discovery under Rule 26(b)(1).

This Court's recent decision in *Green v. Meeks*, No. 3:20-cv-00463, 2021 WL 3631264 (S.D. Ill. July 14, 2021) (McGlynn, J.) reached that exact conclusion. *Green*, like this case, involves *Monell* claims against Wexford, alleging that the company has a widespread practice of failing to provide adequate medical care to IDOC prisoners. *Green* noted that Wexford elsewhere had sought and obtained summary judgment on a *Monell* claims against it "because the plaintiff did not offer evidence of medication delays for other incarcerated people." 2021 WL 3631264, at *4 (citing *Hildreth v. Butler*, 960 F.3d 420 (7th Cir. 2020)). In that light, the Court held that "because Plaintiff is alleging that Craigory Green died due to the widespread customs and practices of Wexford, she is entitled to a broad and substantial amount of

5

discovery." 2021 WL 3631264, at *4 (quotation omitted).  Citing *Hildreth*, the Court concluded in *Green*: "Plaintiff is required to show 'systemic and gross deficiencies' that have impacted others in IDOC custody, and thus, the Court will not limit discovery to only information pertaining to inmates with liver disease at Menard Correctional Center or limit the disclosure of information of non-party inmates . . . ." *Id.* (citing *Hildreth*,  960 F.3d at 426).

The application of the Court's reasoning in *Green* to this case is inescapable.  Like the plaintiff in *Green*, Plaintiffs in this case have asserted a *Monell* claim against Wexford on the grounds that it has a widespread practice of providing inadequate medical care to numerous *other* IDOC prisoners, not just Mr. Reed.  Under Seventh Circuit precedent, Plaintiffs will be expected to show at summary judgment and at trial that Wexford does in fact have such a widespread practice—*i.e.*, that it has treated other prisoners in a similar manner.  The evidence of such treatment will be contained in other prisoners' medical records and communications about their medical care—*i.e.*, the PHI of those third-party prisoners.  Plaintiffs have served discovery requests seeking such PHI, *see* Exs. 2 & 3.  It is in order to obtain that discovery that Plaintiffs seek a HIPAA-qualified protective order pursuant to 45 C.F.R. § 164.512(e).

### B.  HIPAA does not limit the scope of discovery made pursuant to Section 164.512(e).

Having recently addressed the matter in *Green*, the Court is familiar with the regulatory background concerning HIPAA-qualified protective orders.  Because Wexford's objections implicate HIPAA's regulatory provisions in this case as well, however, Plaintiffs review those regulations here.

HIPAA, which is enacted through enabling regulations, protects a person's protected health information ("PHI") by providing that a person's PHI may only be disclosed if the person is (1) notified and (2) consents to disclosure.  *See* 45 C.F.R. §§ 164.508; 164.510.  The enabling

regulations, however, also provide for multiple exceptions to these protections. These exceptions are gathered in 45 C.F.R. § 164.512 ("A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section . . . ."). Among the exceptions is disclosure of PHI "[i]n response to a subpoena, discovery request, or other lawful process." *Id.* § 164.512(e)(1)(ii). In such a situation, a third-party's PHI may be disclosed without the person's notice or consent if the requesting party has secured "a qualified protective order." *Id.* § 164.512(e)(1)(ii). A "qualified protective order," in turn, is one that (a) prohibits the parties from using or disclosing a third party's PHI for any purpose other than the lawsuit, and (b) requires the return or destruction of the PHI at the conclusion of the lawsuit. *Id.* Thus whereas HIPAA's enabling regulations generally protect the privacy a person's PHI through the notice and consent requirements, in the course of litigation where PHI is requested through "a subpoena, discovery request, or other lawful process," § 164.512(e)(1)(ii), HIPAA's enabling regulations protect the privacy of a person's PHI through a qualified protective order instead. *See* § 164.512(e)(1)(v).

The protective order proposed by Plaintiffs satisfies the requirements of Section 164.512(e). It designates third-party PHI as confidential, *see* proposed order ¶ 3; it provides that such PHI may only be used for the present litigation; *id*. ¶ 4; and it provides that such PHI must be returned or destroyed when the litigation concludes. *Id.* ¶ 5. In short, under Section 164.512(e), Plaintiffs' proposed HIPAA-qualified protective order would permit the disclosure of third-party PHI in this case and would protect the confidentiality of that PHI by ordering the parties to keep the PHI confidential and destroy it at the end of the case.

7

Plaintiffs have provided their proposed protective order to Wexford, and Wexford does not dispute that it satisfies Section 164.512(e).  Rather, in correspondence Wexford's counsel stated that Wexford objects to entry of Plaintiffs' proposed order on grounds that its entry could lead to the production of third-party PHI "without a showing [by Plaintiffs] that the third-party PHI bears a factual connection to this matter," which "violates the policy of HIPAA."  *See* Ex. 1 (Aug. 18, 2021).  Asked for clarification, Wexford asserted that HIPAA imposes an "overarching" duty on Wexford to disclose only the "minimum necessary" third-party PHI, and that "[t]he potential relevance of third-party PHI to Plaintiffs' claims is not sufficient justification" for the disclosure of such PHI in this case.[1]  *See id.* (Aug. 25, 2021).

By this argument, Wexford is attempting to repurpose HIPAA to empower itself—not in its role as a litigant in this case, but rather in its role as a HIPAA custodian—to limit unilaterally the scope of discovery.  Wexford's argument is premised on the proposition that HIPAA limits the scope or substance of discovery that may be undertaken pursuant to the Federal Rules of Civil Procedure.  That contention is entirely unsupported—indeed it is precisely backward.  Wexford has recently been sanctioned for resisting discovery of third-party PHI (covered by a HIPAA-qualified protective order) on the same grounds it cited to Plaintiffs here.  *See Haywood v. Wexford Health Sources, Inc.*, No. 16-cv-3566, 2021 WL 2254968, at **3, 15 (N.D. Ill. June 3, 2021) (sanctioning Wexford $25,311 for refusing to disclose third-party PHI based on its claimed "'obligation to protect the HIPAA protections afforded to all inmates other than Donald Haywood'" and its claim that "HIPAA forbade it to disclose to plaintiff the PHI for 'thousands

---

[1]  Wexford has also invoked the "HITECH" Act, but despite repeated prompting it never identified what provisions of the HITECH Act were violated or implicated by the entry of a HIPAA-qualified protective order.  *See* Ex. 1 *passim*.  That line of objection should therefore be considered waived.

of' non-party inmates that is contained" in responsive discovery materials (quoting Wexford briefs)).

Wexford was sanctioned by in *Haywood* because contrary to Wexford's argument—which it repeated to Plaintiffs' counsel in this case—HIPAA contains no substantive obligation, or right, for a covered entity to limit the disclosure of information sought under a HIPAA-qualified protective order.  To the contrary, the Court of Appeals has made clear that HIPAA's "standard for disclosure of medical information in judicial or administrative proceedings" is "purely procedural [in] character," *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004), and courts have repeatedly held that HIPAA "unequivocally permits health care providers and other covered entities to disclose protected health information . . . in judicial proceedings" when a HIPAA protective order has been entered.  *Sanchez v. McCray*, No. 05-cv-22171, 2008 WL 11452601, at *3 (S.D. Fla. Feb. 25, 2008) (citing *Ashcroft*, 362 F.3d at 925).  For this reason, "HIPAA regulations do not trump the rules of civil procedure with respect to discovery obligations or questions of relevance." *BNSF Ry. Co. v. Lafarge Sw., Inc.*, No. 06-cv-1076, 2008 WL 11322949, at *5 (D.N.M. May 9, 2008) (citing *Ashcroft*, 362 F.3d at 926).  It is impermissible for a party to stymy the gathering of information otherwise discoverable under Federal Rule of Civil Procedure 26(b)(1) by objecting to the entry of a HIPAA-qualified protective order.  Yet that is exactly the maneuver Wexford is attempting here.

Wexford's contention—that HIPAA imposes duties that limit the permissible scope or breadth of discovery—is unfounded as a matter of law.  In email correspondence Wexford's counsel eventually based Wexford's objection to entry of a HIPAA protective order on a claim that HIPAA imposes a duty on Wexford as a covered entity to produce only the "minimum necessary" PHI in response to discovery.  *See* Ex. 1 (Aug. 25, 2021).  In making this argument,

Wexford apparently is attempting to prevent entry of Plaintiffs' proposed Section 164.512(e) protective order by invoking the "minimum necessary" requirement in 45 C.F.R. § 164.502(b). But that argument simply misconstrues the law.  Section 164.502(b) does indeed obligate covered entities to "make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request."  § 164.502(b)(1).  But that obligation has no substantive application to subpoenas and discovery requests made pursuant to Section 164.512(e).  *See, e.g.*, *Harrold-Jones v. Drury*, 422 P.3d 568, 573, 576 (Alaska 2018) ("HIPAA's minimum necessary requirements do not apply to the litigation exception," and explaining that "[t]he litigation exception allows for disclosures either by court order or '[i]n response to a subpoena, discovery request, or other lawful process.'" (quoting § 164.512(e)(1)(i)-(ii), and citing 65 Fed. Reg. 82,350).

When a HIPAA-covered entity served with a discovery request made under a Section 164.512(e) protective order, the only effect of the "minimum necessary" requirement is to impose a duty on the covered entity to conform the PHI disclosure to the discovery request that is being made.  As the U.S. Department of Health and Human Services explained in promulgating the HIPAA regulations, *see* Standards for Privacy of Individually Identifiable Health Information*, 65 Fed. Reg. 82,461 (Dec. 28, 2000) (codified at 45 C.F.R. §§ 160, 164), when responding to a subpoena or discovery request pursuant to Section 164.512(e),

> [a] covered entity is not required [by the "minimum necessary" requirement] to second guess the scope or purpose of the request, or take action to resist the request because they believe that it is over broad. In complying with the request, however, the covered entity must make reasonable efforts not to disclose more information than is requested.

65 Fed. Reg. 82,530/3.  HIPAA thus does *not* impose any duty, or confer any right, on the covered entity to object to "second guess" the *substance* of a discovery request.  The "minimum

necessary" requirement places no substantive limits on the scope or breadth information that a covered entity must disclose in response to a discovery request. This is identical to HIPAA's rule governing disclosures in response to court orders, which permits a covered entity to disclose third-party PHI "[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses *only the protected health information expressly authorized by such order*." 45 C.F.R. § 164.512(e)(1)(i) (emphasis added).

HIPAA gives covered entities no grounds to challenge the scope of a discovery request, to question the purpose of the request, or to object to the request on grounds it is overbroad. HIPAA only imposes a duty on covered entities not to disclose *more* protected information than a discovery request calls for. But that is simply to say that HIPAA leaves a covered entity in the same position as any other discovery respondent: while a covered entity is not to disclose *more* than a discovery request demands, HIPAA in no way limits the covered entity's obligation to disclose what the discovery request *does* seek. HIPAA gives Wexford no standing or grounds to object to Plaintiffs' discovery on the grounds that responding to the discovery requests Plaintiffs have made would violate its duty to disclose the "minimum necessary" PHI.

The objections that Wexford's counsel raised in enforcement correspondence therefore lack any legal foundation. Wexford's counsel objects that Plaintiffs' requests will "compel [Wexford] to produce more [PHI] than necessary for Plaintiffs to pursue their claims," or that that "[t]he potential relevance of third-party PHI to Plaintiffs' claims is not sufficient justification" for disclosing third-party PHI in this litigation. *See* Ex. 1 (Aug. 25, 2021). HIPAA gives Wexford no standing to make such substantive objections to the information and documents that Plaintiffs have requested. That is precisely the type of second-guessing of discovery requests that HIPAA prohibits. HIPAA offers Wexford no basis for objecting to the

entry of a HIPAA-qualified protective order for the simple reason that, as this Court observed in *Green v. Meeks*, "HIPAA does not create a privilege against production or admission of evidence; it *merely creates a procedure* for obtaining protected medical records in litigation." *Green v. Meeks*, No. 20-cv-00463-SPM, 2021 WL 3631264, at *4 (S.D. Ill. July 14, 2021) (citing *Ashcroft*, 362 F.3d at 925-26; emphasis added). *Accord U.S. ex rel. Block v. Del Campo*, No. 08-cv2624, 2010 WL 2698295, at *3 (N.D. Ill. July 7, 2010) (same, citing *Ashcroft*).

As a *litigant*, of course, Wexford may attempt to "second guess" the scope or purpose of a discovery request, or argue that it is overbroad. Wexford's standing to assert such objections, however, comes not from HIPAA, but rather from the Federal Rules of Civil Procedure, particularly the proportionality requirement of Rule 26(b)(1). *Cf. Cutting v. United States*, No. 07-cv-02053, 2008 WL 1775278, at *2 (D. Colo. Apr. 14, 2008) ("In the absence of a [HIPAA] privilege, [discovery of PHI is] governed by issues of relevance and confidentiality commonly addressed in civil lawsuits." (citing *Ashcroft*, 362 F.3d at 926)).

It is Rule 26(b)(1), not HIPAA, that controls the proper scope of discovery in this case, including whether discovery requests are proportional to the needs of a case. And on that score, contrary to Wexford's suggestion, the PHI of other prisoners is of central relevance to this litigation. *See supra* at 4-6. HIPAA affords Wexford no grounds for objecting to the entry of the HIPAA-qualified protective order that Plaintiffs have proposed. Plaintiffs' proposed HIPAA-qualified protective order, which covers the disclosure of other prisoners' PHI, is thus entirely appropriate.

12

**CONCLUSION**

For the foregoing reasons, this Court should enter Plaintiffs' proposed HIPAA-qualified protective order, to be transmitted to chambers concurrently with this Motion, supplanting ECF 34, which is the existing HIPAA-qualified protective order in this case.

September 11, 2021                                        Respectfully submitted,

                                                        /s/ Stephen H. Weil
                                                        Stephen H. Weil
                                                        Attorney for Plaintiff


Jon I. Loevy
Sarah C. Grady
Stephen H. Weil
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
weil@loevy.com

13

**CERTIFICATE OF SERVICE**

I, Stephen Weil, an attorney, hereby certify that on September 11, 2021, I filed a copy of the foregoing via the CM/ECF system, which effected service on all counsel of record.

/s/ *Stephen Weil*
Stephen Weil
Attorney for Plaintiff