IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Lennisha Reed *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Wexford Health Sources, Inc., *et al.*, <br><br> Defendants. | Case No. 3:20-cv-01139-SPM <br><br> Judge Stephen P. McGlynn |

**PLAINTIFFS' MOTION TO COMPEL RESPONSE TO SUBPOENA**

Pursuant to Federal Rules of Civil Procedure 45 and 37, Plaintiffs, through their undersigned counsel, hereby move the Court to compel the Illinois Department of Corrections ("IDOC") to respond to Plaintiffs' subpoena asking the IDOC to produce documents. The subpoena in question is attached hereto as **Exhibit 1**.

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs certify that before filing this motion counsel for Plaintiffs conferred and attempted to reach resolution with counsel for the IDOC. These attempts included telephone calls and emails in November and December 2021, and January 2022. Plaintiffs bring this motion after exhausting these efforts without securing the documents called for in the subpoena. In support of their motion Plaintiffs state as follows:

**BACKGROUND**

This motion arises from Plaintiffs' efforts to gather evidence to support their allegations that Lenn Reed Sr., the man whose death has given rise to this action, died because Wexford Health Sources, Inc. ("Wexford") has widespread practices of failing to diagnose and treat cancer among its patients. Mr. Reed was a prisoner of the IDOC. Wexford was responsible for his healthcare. Mr. Reed died of cancer. Plaintiffs allege this happened because Wexford staff

ignored signs of his cancer over an extended period and then failed to secure prompt care for him after the cancer was finally detected. Those failings occurred, Plaintiffs allege, because Wexford allows to flourish widespread practices whereby its employees provide grossly inadequate medical care, including inadequate care for cancer, thus making Wexford liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

As part of their efforts to identify other cases of potentially inadequate cancer care, Plaintiffs have looked to two reports prepared by court-appointed experts in *Lippert v. Godinez*, an injunctive class action case pending against the IDOC in the Northern District of Illinois. Plaintiffs describe these reports in their motion for entry of a HIPAA protective order, *see* ECF 35 at 3-4. The two *Lippert* reports, which were submitted in 2014 and 2018, describe numerous instances of inappropriate medical care provided to IDOC prisoners, including multiple examples of inappropriate care provided to cancer patients. *See id.* at 3-4 (describing reports). Plaintiffs identified instances in which each report's authors noted that a patient had received inadequate care for cancer, and then prepared the subpoenas at issue, which ask the IDOC to produce the medical records of those patients. *See* Ex. 1 reqs. 21, 28.[1] Because the *Lippert* reports are anonymized (*i.e.*, they do not identify any of the patients by name), Plaintiffs could not simply name the patients identified in the reports and ask for their medical records. Instead, in their subpoena Plaintiffs referred to passages in the *Lippert* report where the care of each patient is discussed, and asked IDOC to produce the records for that patient. *See id.* The IDOC has been provided with confidential versions of the two *Lippert* reports and it is Plaintiffs' expectation that the IDOC can use those versions to identify each of the patients identified in Plaintiffs'

---

[1] Plaintiffs' subpoena to the IDOC attached both *Lippert* reports, which run to more than 1,200 pages. Plaintiffs have omitted those attachments from Exhibit 1.

subpoena.[2] The subpoena also asks the IDOC to produce various internal communications (and communications with Wexford) discussing the inadequate care identified in the two *Lippert* reports. *See, e.g.*, Ex. 1 reqs. 8-19, 22-26; 29-33.

The IDOC has answered Plaintiffs' subpoena, *see* **Exhibit 2**, and has agreed to produce certain documents in response to some of Plaintiffs' requests. The IDOC has flatly objected, however, to producing any documents in response to any of Plaintiffs' subpoena requests that connect with the *Lippert* reports—the requests for medical records set out in Ex. 1 reqs. 21 and 28, and the various communications and other documents that discuss or relate to the *Lippert* report findings set out in Ex. 1 reqs. 8-19, 22-26; 29-33. *See* Ex. 2 at 2. The IDOC claims that the documents sought in each of these requests are "confidential pursuant to the Court Orders" that have been entered in *Lippert*. *Id.* By way of reference IDOC has attached to its objections the two *Lippert* court orders it cites, which are dated in 2013 and 2017, and set out the rules of confidentiality governing the 2014 and 2018 *Lippert* reports, respectively. *Id.* The IDOC's objections do not explain what provisions in these two court orders prohibit disclosure of the information Plaintiffs seek, *see id.* at 2, and IDOC's counsel declined to identify the relevant provisions on calls and correspondence with Plaintiffs' counsel.

The IDOC's objections to the requests at issue in this motion include other objections, such as burden and overbreadth, but IDOC counsel has declined to engage in negotiation regarding resolution of those issues, on grounds that the prohibitions set out in the *Lippert*

---

[2]  While the public versions of the two *Lippert* reports (the versions to which Plaintiffs have access) redact the names of the patients whose care is described. The reports' authors provided "confidential" versions of the reports to the IDOC, and those confidential reports identify the patients by name. *See Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at *4 (N.D. Ill. Nov. 24, 2020) (explaining that the *Lippert* experts provided "confidential versions of those reports" to the *Lippert* litigants which permitted them to identify the prisoner-patients described in the reports).

protective orders are a threshold bar to all production. After multiple calls and emails, Plaintiffs and the IDOC determined that they were at impasse. This motion follows.

## ARGUMENT

The protective orders that the IDOC relies on do not cover any of the documents that Plaintiffs seek in their subpoena. Multiple courts have said as much and have ordered production of the same types of documents that Plaintiffs seek here.

The confidentiality provisions in both the 2013 and 2017 *Lippert* expert orders are set out in paragraph 6(a) of those orders, and they are identical:

> The Expert and his consultants and assistants, and counsel for any party, shall maintain the confidentiality of all material obtained and reviewed pursuant to this Order, as if all material was marked "Attorney's Eyes Only" material under the April 11, 2012 Protective Order.

*See* Ex. 2. The IDOC did not attach the April 11, 2012 Protective Order to its response, but Plaintiffs attach it to this motion as **Exhibit 3**. In addition to setting out confidentiality provisions relating to "Attorney's Eyes Only" documents, the 2012 *Lippert* Protective Order provides, "Nothing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate . . . ." Ex. 3 ¶ 17. These provisions, including the provisions of the 2012 order, are dispositive of the IDOC's "*Lippert*" objections that at issue in this motion. None of the *Lippert* orders bar production of the documents Plaintiffs have subpoenaed.

A. **The *Lippert* orders to not cover medical records in the IDOC's possession. (Subpoena request nos. 21, 28.)**

In light of the confidentiality provisions in the *Lippert* expert orders, multiple courts, including the *Lippert* court itself, have held that the *Lippert* orders appointing the experts do ***not*** prohibit the IDOC from producing its own files *underlying* the *Lippert* reports—which is exactly

4

what is sought in Plaintiffs' requests 21 and 28. The decisions are multiple, and they are uniform:

In *Lippert* itself, the plaintiff in another case called *Burks v. Soto* sought to intervene in *Lippert* to take the deposition of Dr. Shansky, one of the *Lippert* experts. *See Lippert v. Ghosh*, No. 10-cv4603, ECF 653, (N.D. Ill. Mar. 9, 2018) (attached hereto as **Exhibit 4**). The *Lippert* court rejected the *Burks* plaintiff's request because such discovery was barred by the orders appointing the *Lippert* experts (*i.e.*, the same orders IDOC has attached to its subpoena objections). *See* Ex. 4 at 3. However, the *Lippert* court observed, "[t]he originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim." *Id.* at 3 n.3. In short, while *Lippert* orders prohibited discovery from the *Lippert* experts, they did *not* prohibit discovery of the underlying documents in the possession of Wexford or the IDOC.

In *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985 (N.D. Ill. Nov. 24, 2020), the plaintiff had asked Wexford and the IDOC to produce documents in its possession underlying the *Lippert* reports. The defendants there made the same arguments that the IDOC does here, but the *Lymon* court flatly rejected them: "Wexford argues that responding to Plaintiff's discovery request [for documents it produced to the *Lippert* experts] would violate the court orders entered in the *Lippert* case. . . . However, as Plaintiff points out, the protective order entered in *Lippert* states that "[n]othing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate." *Id.* at ** 5, 6. "As such," *Lymon* held, "ordering Defendant Wexford or the IDOC to produce the underlying documents [*i.e.* documents underlying the *Lippert* reports] does not violate these court orders." *Id.* at *6.

In *Wilkerson v. Chovinard*, No. 3:17-cv-50046, ECF 206 (N.D. Ill Mar. 29, 2021) (attached hereto as **Exhibit 5**), the plaintiff asked Wexford to produce "all documents underlying the *Lippert* Reports, together with documents Defendant and third parties provided to the *Lippert* Reports' authors and documents referenced in the reports, for the time period of December 22, 2014 to December 18, 2020." Ex. 5 at 1. Like the IDOC, Wexford argued that "producing the documents provided to the authors of the *Lippert* Reports would violate" the *Lippert* expert orders. *Id*. Relying on *Lymon*, the *Wilkerson* court rejected that argument, holding that "the argument that the production of the documents underlying the report would violate orders in the *Lippert* case fail[s] because the *Lippert* court specifically acknowledged that an intervening party could request those underlying documents." *Id.* at 2 (citing *Lymon*).

In *Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-cv-50044, 2021 WL 5232733 (N.D. Ill. Nov. 10, 2021), the plaintiff requested production of documents underlying the *Lippert* reports from both Wexford and the IDOC. Citing *Lymon*, *Arsberry* also ordered production. In doing so, it rejected Wexford's argument that the request for documents underlying the *Lippert* reports would implicate the *Lippert* case at all: "Wexford also argues that producing the documents underlying the *Lippert* reports would 'encroach on the authority of the *Lippert* court and raise a concern about duplicitous litigation.' This Court does not find these objections supported. . . . Plaintiff seeks to use these documents to support his *Monell* claim as alleged in this case. He can do this by either identifying other similarly situated plaintiffs who were subjected to the same policies he alleges in his complaint or by providing the documents produced by Wexford and the IDOC to his own experts to opine on the policies or practices that they disclose." *Arsberry*, 2021 WL 5232733, at *8.

6

Each of these cases stands for the same proposition: documents *underlying* the *Lippert* reports are not covered by the protective orders entered in *Lippert*, and are an appropriate subject of *Monell* discovery in cases alleging a widespread practice of providing inadequate medical care. Those are precisely the documents that Plaintiffs seek in Request Nos. 21 and 28 of their subpoena, and as Plaintiffs have explained to the Court in this case, *see* ECF 35 at 3-4, they seek those documents to prove that their *Monell* allegations against Wexford are true. The IDOC's refusal to produce such documents on grounds that they are covered by the *Lippert* protective orders are meritless. This Court should reject them and order production.

B. **The *Lippert* orders to not cover production of Plaintiffs' other requests connected to *Lippert*.  (Subpoena request nos. 8-19, 22-26; 29-33.)**

Whereas multiple courts have rejected the contention that the *Lippert* reports prohibit production of documents that underly the reports, *see supra*, Plaintiffs are aware of no litigant who has even attempted the IDOC's argument regarding Plaintiffs' other requests, which Plaintiffs understand essentially to be that that the *Lippert* orders prohibit production of any document *relating* to the *Lippert* reports—even if those documents are in the hands of a party like the IDOC, and were never reviewed or seen by the *Lippert* experts at all. Consider the following examples:

- Req. No. 10: "Produce all communications with Wexford personnel or with IDOC personnel relating to the descriptions in the 2014 *Lippert* Report relating to diagnosis or care of cancer."

- Req. No. 15: "Produce all communications with Wexford personnel or with IDOC personnel relating to the descriptions in the 2018 *Lippert* Report relating to referral for off-site medical care, including but not limited to diagnostic services and treatment for cancer."

- Req. No. 26: "Produce all Documents and Communications discussing or relating to any actual or potential changes in policies, practices, rules, directives, protocols, procedures, budgeting, recruiting, training, retention, or discipline, in light of the information contained in the 2014 *Lippert* Report."

Ex. 1 ¶¶ 10, 15, 26.  The IDOC has refused to respond to any of these requests on grounds that producing responsive documents is prohibited by the *Lippert* protective orders.  But these requests ask the IDOC to produce communications with its vendor, as well as internal discussions relating to potential policy changes, in light of criticisms in the *Lippert* reports about how that vendor delivered medicine to persons under the IDOC's care.  There is simply no way that the *Lippert* orders can plausibly be said to prohibit the production of such documents.  Plaintiffs readily acknowledge that requests of this nature raise the proportionality issues common to most discovery, and Plaintiffs have offered to work with the IDOC to address such issues and ensure an appropriate production.  But the IDOC has refused to engage in any such dialogue, on grounds that documents responsive to these and similar requests are protected from disclosure by the *Lippert* protective orders.  The IDOC has offered no support for that argument, because there is none.

By their terms, the *Lippert* protective orders are designed to protect the work product of the two experts who prepared the reports.  None of Plaintiffs' subpoena requests seek such documents at all.  Instead, the documents sought in Plaintiffs' subpoena requests are—by definition—in the IDOC's hands, not in the hands of the *Lippert* experts.  The IDOC has signally failed to explain how the documents Plaintiffs have requested might possibly violate the terms of the *Lippert* orders.  For good reason: the contention is meritless.  The Court should overrule those objections and order the IDOC to produce documents responsive to the IDOC's requests.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion to compel and order the IDOC to respond to Plaintiffs' subpoena as set forth herein.

8

January 26, 2022                                           Respectfully submitted,

                                                           /s/ Stephen H. Weil
                                                           Stephen H. Weil
                                                           Attorney for Plaintiff


Jon I. Loevy
Sarah C. Grady
Stephen H. Weil
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
weil@loevy.com

## CERTIFICATE OF SERVICE

I, Stephen Weil, an attorney, hereby certify that on January 26, 2022, I filed a copy of the foregoing via the CM/ECF system, which effected service on all counsel of record.

I further certify that I am concurrently serving a copy of the foregoing to the following counsel for the Illinois Department of Corrections via email and U.S. Mail:

Eric J. Rieckenberg
Staff Legal Counsel
IDOC Legal Services
711 Kaskaskia Street
Menard, IL 62259
Eric.Rieckenberg@illinois.gov

/s/ *Stephen H. Weil*
Stephen H. Weil

Attorney for Plaintiff