047782/19344/TPD/RCW

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LENNISHA REED and LENN REED JR., as Co-Administrators of the Estate of LENN REED, SR., #B28789,<br><br>        Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, STEPHEN RITZ, and FAIYAZ AHMED,<br><br>        Defendants. | Case Number 3:20-cv-01139-SPM<br><br>District Judge Stephen P. McGlynn |

**RESPONSE TO PLAINTIFFS' MOTION TO COMPEL RESPONSE TO SUBPOENA**

COME NOW Defendants, WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O., by and through their attorneys, CASSIDAY SCHADE LLP, and for their Response to Plaintiffs, LENNISHA REED'S and LENN REED JR.'S, as Co-Administrators of the Estate of LENN REED, SR., Motion to Compel Response to Subpoena (Doc. 44), state as follows:

### I.    INTRODUCTION

**A. Plaintiffs' Motion Lacks a Proper Foundation: Plaintiffs are Pursuing Disclosure of Documents to Support Claims Based on Falsely Pled Allegations in their Complaint.**

Plaintiffs filed their Complaint on October 28, 2020. Despite allegations in the Complaint of specific care, Plaintiffs did not disclose the relevant medical records in this case in their initial disclosures or in their response to Defendants' Request for Production of Documents. Plaintiffs first disclosed the relevant medical records on the evening of December 22, 2021, and only after Defendants received a response from their subpoena to the IDOC and confronted Plaintiffs with numerous misrepresentations in the Complaint. In fact, on a meet and confer with

Plaintiff's counsel on December 21, 2021, the parties agreed to stay current discovery disputes to provide Plaintiffs the opportunity to cure the Complaint. Defendants eagerly await Plaintiffs' curative measures to address the misrepresentations in the Complaint, and they are concerned about Plaintiffs' representations in the Motion to Compel given the context of Mr. Reed's actual treatment. Accordingly, Defendants find it necessary to provide the Court with a brief, accurate reflection of Mr. Reed's documented medical care at issue in this case.

Mr. Reed first complained of constipation—the first symptom now known to be related to his colon cancer—11 months before his death. His first encounter with a named defendant was on July 26, 2018, when Dr. Shah recommended a CT scan to assess Mr. Reed's complaints. The CT scan was approved by Dr. Ahmed and Dr. Ritz and was performed on August 10, 2018. The CT scan found concerns for malignancy (cancer), with findings in his lymph nodes, lungs, kidney, bladder, colon, and rectum. The report was received on August 14, 2018, and the same day Dr. Ahmed submitted a referral for Mr. Reed to be assessed by an oncologist, which was approved two days later.

Dr. Saba, Mr. Reed's treating oncologist, scheduled Mr. Reed to be seen on September 12, 2018, where he ordered an ultrasound guided biopsy of the inguinal lymph nodes that are "very accessible for tissue diagnosis and this is the fastest way to confirm the etiology." Dr. Ahmed submitted an urgent referral for the biopsy, which was approved and was performed on September 20, 2018. The biopsy showed that Mr. Reed had stage 4 metastatic adenocarcinoma, which Dr. Saba explained is "unfortunately an incurable disease." Dr. Saba recommended a colonoscopy, biopsy, and port placement for chemotherapy, which was approved. Mr. Reed saw Dr. Rosett, a gastroenterologist, on October 11, 2018, and Dr. Rosett scheduled the procedures to be performed on October 21, 2018, at Carle Hospital.

Mr. Reed did not return to the prison until November 3, 2018, but he was not there for long as on November 13, 2018, he was readmitted into the hospital for concerns of a bowel obstruction. It was while he was hospitalized that Dr. Saba saw Mr. Reed on November 14, 2018. While hospitalized, Mr. Reed received radiation amongst other treatments determined by oncologists at Carle and Dr. Saba. Mr. Reed remained hospitalized until December 6, 2018.

After Mr. Reed returned from his second hospitalization on December 6, 2018, Dr. Saba again explained that Mr. Reed had terminal "stage 4 extensive high-risk resistant metastatic colorectal cancer presented with obstructive mass in rectum and extensive adenopathy with multiple complications." Mr. Reed was offered palliative chemotherapy (treats the symptoms not the disease), despite his extremely poor prognosis. The chemotherapy was approved. Dr. Saba ordered the chemotherapy to begin on January 2, 2019. Two days later, Mr. Reed was hospitalized a third time where he succumbed to his conditions on January 9, 2019.

Despite citing to portions of Mr. Reed's medical records in the Complaint, Plaintiffs make allegations that are contrary to the plain facts shown by the records. Plaintiffs allege that after October 25, 2018, "Dr. Shah, Dr. Ahmed, and Wexford's medical staff allowed Mr. Reed to sit in the prison's infirmary, with no chemotherapy, as his health continued to deteriorate." (Doc. 1, p. 8, ¶28). Yet, during this time, as noted above, Mr. Reed was admitted inpatient at Carle Hospital recovering from the surgery, recommended by Dr. Saba, that placed his chemotherapy port and biopsied his advanced metastasized colorectal adenocarcinoma cancer. Dr. Saba had not yet ordered chemotherapy to begin. The Complaint also alleges that after November 14, 2018, "Dr. Shah and Dr. Ahmed did not arrange for Mr. Reed to receive acute, outside medical care that would improve his condition." (Doc. 1, p. 9, ¶31). Yet again, at this

time, Mr. Reed was inpatient at Carle Hospital receiving palliative radiation and other treatment for his stage 4 cancer at the direction of his treating oncologists.

As Defendants await Plaintiffs' curative actions for these allegations that are contradicted by the medical records, Plaintiffs seek enforcement of a subpoena from the IDOC for records concerning a separate class-action. Although this subpoena is not directed at Defendants, it is an attempt to obtain confidential and potentially privileged information from other matters. Additionally, Plaintiffs' recitation of the nature of this case is contradicted by the medical records that Plaintiffs withheld for more than a year.

More accurately, this case is about Mr. Reed's aggressive, colorectal cancer that only presented with symptoms after it was at stage 4, had metastasized from his rectum and colon to his lymph nodes, prostate, bladder, spine, and lungs, and was terminal. From first presentation, Dr. Shah and Dr. Ahmed recommended imaging and specialty care to treat this cancer and Dr. Ritz authorized all Dr. Saba's recommendations, yet his condition was incurable. During the five months between Defendants becoming involved in Mr. Reed's medical care and his death, Mr. Reed had a CT scan, saw Dr. Saba seven times, saw Dr. Rosett two times, and was hospitalized for surgery and/or treatment three times. Thus, Defendants request the Court deny Plaintiffs' Motion to Compel as, in addition to legal issues addressed below, it is not proportional to the needs of this case. At minimum, Plaintiffs' Motion to Compel should be deferred until curative measures have been taken in order for the Court to assess the appropriate scope of discovery in this case.

    **B. Plaintiffs' Motion Risks Contrary Rulings on the Issues: Plaintiffs' Have a Currently-Pending Motion to Modify the *Lippert* Protective Order Before the *Lippert* Court to Permit Production of Documents That They Claim are Not Subject to Protection by that Order in their Instant Motion.**

The Reeds issued two subpoenas to third parties to this matter that sought production of information that was ordered to be confidential in the *Lippert* matter; one to the Uptown People's Law Center ("UPLC"), and one to the Illinois Department of Corrections ("IDOC").

In their subpoena to UPLC Plaintiffs request production of: "All documents sufficient to identify by name and IDOC # all patients discussed in the 2014 (Shansky) and 2018 (Puisis) court-appointed expert reports submitted in Lippert v. Godinez, No. 1:10-cv-04603 (N.D. Ill.)" *See* Plaintiffs' Subpoena to UPLC, attached as Exhibit "A". There is no limitation on this request in definitions or instructions attached to that request that corresponds to the terms of this Court's Protective Order. *See id*. The subpoena that the Reeds issued to the IDOC is significantly more extensive than that issued to UPLC, incorporating 34 numbered requests and numerous subparts. *See* Doc. 44-1.

Both UPLC and IDOC responded to the Reeds' subpoena with objections, including objecting to producing documents when doing so would violate this Court's Protective Order. (*See* UPLC Objections to Subpoena, attached as Exhibit "B"; Correspondence from Eric Rieckenberg stating objections of IDOC to Subpoena, Doc. 44-2.)

Before receiving UPLC's objection to the Reeds' subpoena, Wexford and certain co-defendants herein opened a miscellaneous action in the Northern District of Illinois and filed their Motion to Quash the subpoena. *See Reed v. Wexford*, No. 1:21-cv-05954-SJC (N.D. Ill.) (Coleman, J.). Judge Sharon Johnson Coleman in the Northern District conducted a telephonic hearing on Defendants' Motion to Quash on November 12, 2021. *See Reed v. Wexford,* No. 1:21-cv-05954-SJC, Doc. 8 (N.D. Ill.). At the hearing on the Motion to Quash, counsel for the Reeds disclosed that UPLC had responded to their subpoena by stating that UPLC could not produce the requested documents because they are subject to the *Lippert v. Ghosh* Protective

Order.  Judge Coleman continued the Motion to Quash pending the Reed Plaintiffs' filing and obtaining resolution of a motion to modify the Protective Order issued in *Lippert v. Ghosh* in that case.  *See id.*

On November 29, 2021, Defendants received UPLC's objection to the Reeds' subpoena issued to UPLC.  That objection stated unequivocally that orders entered in the *Lippert* matter barred it from producing the documents sought by the subpoena, namely documents that could identify anonymized patients discussed in the expert reports in that matter.  *See* Exhibit B.  UPLC's objection referred to the Orders appointing the experts in *Lippert* and an order that such information be redacted:

> I am responding to the subpoena served upon UPLC by the plaintiff in this case. The subpoena called for the production of "All documents sufficient to identify by name and IDOC # all patients discussed in the 2014 (Shansky) and 2018 (Puisis) court-appointed expert reports submitted in Lippert v. Godinez, No. 1:10-cv-04603 (N.D. Ill.)."
> Please be advised that while UPLC has possession of various documents which appear to be responsive to the subpoena, we are barred from producing those documents by an order entered in the Lippert case. A copy of the relevant orders are attached. I direct your attention specifically to paragraph 6(a) of the December 19th order (Doc. 244) and the nearly identical Dec 8th order (Doc. 593), as well as the provision regarding identifying information in the minute order (Doc. 320). Unless and until these orders are modified, UPLC is unable to produce any documents in its possession responsive to the subpoena.

Exhibit B.

UPLC's objection to the subpoena referred to the Orders appointing the experts Dr. Ronald Shansky and Dr. Michael Puisis as experts in *Lippert* (Docs. 244 and 593 in *Lippert*, attached hereto as Exhibits "C" and "D, respectively) and the *Lippert* Court's order that an expert report be filed with the information identifying the patients discussed therein redacted (Doc. 320 in *Lippert*, attached hereto as Exhibit "E") as the authorities barring its production of the requested information.

Those documents were barred from production by Orders identified by UPLC just as documents that IDOC possesses that would be subject to the Orders are barred from production by IDOC.

Plaintiffs have put the issue of whether the *Lippert* Court's Orders bar its production of the documents Plaintiffs' subpoenaed before the *Lippert* Court. Plaintiffs have a *currently pending* motion before the *Lippert* matter that requests that that Court modify its Protective Orders to permit UPLC to produce documents that Plaintiffs seek to compel IDOC to produce in their instant motion. On November 29, 2021, the Reeds filed their Motion to Intervene in *Lippert v. Ghosh* to request modification of the Protective Order issued in that matter to permit the production of materials deemed by UPLC subject to the Order and accordingly barred from production. *See Lippert v. Ghosh*, No. 10-cv-4603, Doc. 1484 (N.D. Ill. Nov. 29, 2021). The motion has since been fully briefed, and is pending resolution by the *Lippert* Court.

The Motion to Modify Protective Order Plaintiffs filed in *Lippert* could decide issues raised in the instant motion, and Plaintiffs' arguments in the two motions are not consistent on whether the documents at issue are subject to the *Lippert* Protective Order. Plaintiffs argue in their instant motion that the IDOC documents identifying the patients discussed in the *Lippert* expert reports are not subject to a protective order that bars their production. *See* Doc. 44, pp. 4-8. In their Motion to Modify Protective Orders filed in *Lippert*, however, Plaintiffs at least implicitly admit that the documents subject to the UPLC subpoena identifying patients in the expert reports are indeed subject to the Protective Orders that Plaintiffs seek to have modified. *See Lippert v. Ghosh*, No. 10-cv-4603, Doc. 1484, *passim*. There is danger of conflicting orders of this Court and the *Lippert* court if this Court were inclined to issue a different order than the *Lippert* court interpreting its orders.

**C. The Orders Appointing Experts Dr. Shansky and Dr. Puisis in *Lippert* Bar Production of Materials Obtained and Reviewed for the Expert Reports.**

On December 19, 2013, the *Lippert* Court issued an order appointing an expert for the Court. *See* Exhibit C. Subpart 6a of that order required the expert, his consultants and assistants, and "counsel for any party," to "maintain the confidentiality of all material obtained and reviewed pursuant to this Order, as if all material was marked 'Attorneys Eyes Only' as set forth in the Protective Order entered by this Court on April 11, 2012." Exhibit C, p. 5.

The reports prepared by court-appointed experts in the *Lippert* matter included analysis of confidential medical information provided on hundreds, if not thousands, of particular inmates whose identities were ordered to be anonymized and to remain secret. The inmates were identified in the reports by numbers only. These inmates received no notice of the inclusion of their confidential medical information in the reports, and they did not give their consent to be included in the reports.

The Reeds' subpoenas request that UPLC and IDOC provide information that would strip the confidentiality away from those inmates. The inmates would then become subject to public scrutiny and involvement in any case in which parties may seek to use the *Lippert* reports currently or in the future. The *Lippert* court obtained the consent of the parties in that action to publicly produce and analyze the particular medical histories of these inmates on the express conditions that the inmate patients' anonymity would not be lost, subjecting them to such public exposure. Such was one of the primary functions of the Orders Appointing Experts (Exhs. C and D), and the Stipulated Protective Order (Doc. 44-3).

This Court issued its Second Order Appointing Expert on December 8, 2017. *See* Doc. Exh. D. The Court appointed Dr. Michael Puisis as an expert pursuant to Rule 706 of the

Federal Rules of Evidence. That Order also required compliance with the Stipulated Protective Order. *See* Exhibit D, pp. 2, 5.

    **D. The *Lippert* Stipulated Protective Order Also Bars Production of The Requested Materials.**

The Stipulated Protective Order entered by the *Lippert* Court on April 11, 2012, provides that materials can be designated "Confidential," or "Attorneys Eyes Only." The documents to be designated "CONFIDENTIAL," can only be disclosed to:

> (a) the Court, its officers, and any jury seated to hear this case;
> (b) the attorneys of records in this case, employees of the attorneys of record engaged in this action, and outside litigation support providers retained by the attorneys of records…, all of whom shall use such information solely for purposes of this litigation, provided that each outside litigation support provider signs a confidentiality agreement…
> (c) third party experts or independent consultants engaged by the attorneys of record in this case or by the parties to assist in this litigation ("Experts"), who shall use such information solely for purposes of this litigation, provided that each Expert signs a confidentiality agreement…
> (d) the Parties…
> (e) witnesses or deponents whose testimony is reasonably related to the confident0ial information sought to be disclosed to him or harm provided that each such person signs a confidentiality agreement…"

Stipulated Protective Order, Doc. 44-3, pp. 2-3.

Defendants do not know what records are retained by the UPLC or IDOC; however, to the extent they have retained records marked "CONFIDENTIAL," the Reeds and their counsel undisputedly do not fall within the list of persons to whom the "CONFIDENTIAL" records can be disclosed, thus the records "shall not be disclosed." *Id*.

Second, the Stipulated Protective Order provides that documents designated "ATTORNEY'S EYES ONLY" shall only be disclosed to:

> (a)    the Court, its officers, and any jury seated to hear this case;
> (b)    the attorneys of records in this case, and employees of the attorneys of record engaged in this action, who shall use such information solely

>     for purposes of this litigation, provided that each outside litigation support provider signs a confidentiality agreement…
>     (c)    Experts, who shall use such information solely for purposes of this litigation provided that the Disclosing Party and the Expert comply with all requirements of Paragraph 2(c) above.

*Id*.

Again, Defendant does not know what records are retained by the UPLC or IDOC. To the extent they have retained "ATTORNEY'S EYES ONLY" records the Reeds and their counsel undisputedly do not fall within the list of persons that the "ATTORNEY'S EYES ONLY" records can be disclosed to, thus they also "shall not be disclosed." *Id*.

The Stipulated Protective Order remains in full force until it is modified by this Court. *See* Stipulated Protective Order, Doc. 44-3, pp. 7-8.

## II.    ARGUMENT

**Applicable Jurisprudence Does Not Support Ordering Production of the Documents the IDOC Objected to as Subject to the *Lippert* Orders Barring Production.**

The jurisprudence cited by the Reeds does not support ordering production of the documents underlying the *Lippert* reports, in light of the *Lippert* Protective Order. Additionally, as discussed below, the U.S. Court of Appeals for the Seventh Circuit in *Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, __ F.4th __, 2021 WL 5230855 (7th Cir., Nov. 10, 2021), and *Wilson v. Wexford*, 932 F.3d 513, 522 (7th Cir. 2019), has held that the *Lippert* reports are hearsay; that a party seeking to use them must show that they are properly submitted for a non-hearsay purpose; and that the non-hearsay purpose of providing notice to Wexford of the reports' contents is not satisfied in cases (at least) where the plaintiff alleges violations at a facility not covered by the reports. The facility where the Reeds allege constitutional violations, Lawrence Correctional Center, was not addressed in the *Lippert* reports. Accordingly, under

*Dean*, the Reeds cannot use the *Lippert* reports as evidence of notice of the reports' contents, and the Reeds cannot show good cause for this Court to order the production of materials obtained for use by the *Lippert* experts and thereby stripping of anonymity from inmate patients discussed in the *Lippert* reports.

The Reeds cite *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985 (N.D. Ill. Nov. 24, 2020), for the proposition that documents underlying the *Lippert* expert reports should be produced in discovery despite the Orders entered by the *Lippert* court addressed above. When addressing the Stipulated Protective Order, the court in *Lymon* stated the following:

> However, as Plaintiff points out, the protective order entered in Lippert states that "[n]othing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate." Lippert, No. 1:10-cv-04603, Dkt. 111 at 8. Additionally, the court in Lippert acknowledged that an intervening party was able to request the underlying documents from the IDOC and Wexford directly for his case. See Lippert, No. 1:10-cv-04603, Dkt. 653 at 3 n.3 ("The originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim."). As such, ordering Defendant Wexford or the IDOC to produce the underlying documents does not violate these court orders.

*Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at *19.

The reasons provided by the *Lymon* court for overruling the Stipulated Protective Order to compel production of materials underlying the expert reports were that (1) the Stipulated Protective Order permits parties to produce their own documents; and (2) the *Lippert* Court's statement in a footnote to the Court's Order denying Burks's request for a deposition of Dr. Shansky that, "[t]he originals of the documents relied on by Dr. Shansky remain with IDOC or Wexford. Mr. Burks could have pursued their production directly in his case if they were essential to his claim." *Lymon v. Chamberlain*, No. 17-cv-50093, 2020 WL 6940985, at *19; *Lippert*, Doc. 653, (Doc. 44-4 in this matter) at page 3, fn 3.

11

The *Lippert* Court apparently did not believe the provision that permitted a party to produce its own documents vitiated the other portions of the Stipulated Protective Order and Orders appointing experts—it entered each of those orders and presumably did not consider them moot.

Neither does the *Lymon* court's reading of footnote 3 of the Court's Order on Burks's Motion to Intervene support the Reeds' request for modification of the Stipulated Protective Order. *See* Doc. 44-3, p. 3. In that portion of the Court's Order on Burks's Motion, the Court was disagreeing with Burks that he was entitled to a deposition of Dr. Shansky because Dr. Shansky's disposal of the documents that informed his opinions made his testimony the only available evidence. *See id*. In denying Burks's request to amend the Protective Orders to compel Dr. Shansky's testimony, the Court noted that Burks could have sought discovery from Wexford or IDOC instead of Shansky. The *Lippert* Court did not modify its Stipulated Protective Order or Orders appointing experts, or otherwise state that Burks could have obtained confidential documents underlying the Shansky report that the parties and their counsel (like UPLC and IDOC) are expressly forbidden to produce.

Although the *Lymon* court held that the *Lippert* reports and the underlying documents could potentially be used for non-hearsay purposes, such as notice to Wexford of the conclusions reached in the Shansky report, the U.S. Seventh Circuit has limited that use of the *Lippert* reports in *Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, __ F.4th __, 2021 WL 5230855 (7th Cir., Nov. 10, 2021). Per *Dean*, the Reeds cannot use the *Lippert* reports as evidence in support of their *Monell* claim because, *inter alia*, they cannot show that the reports provided notice of conditions at Lawrence Correctional Center.

As recognized by the U.S. Seventh Circuit, the *Lippert* reports are hearsay and cannot be submitted as evidence for the truth of the matters asserted therein. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *33, __ F.4th __, 2021 WL 5230855; *Wilson v. Wexford*, 932 F.3d 513, 522 (7th Cir. 2019). Nevertheless, the Reeds state that they seek to use the *Lippert* reports and the underlying documents as evidence of the truth of the matters asserted in the reports. To quote the Reeds in their pending motion before the *Lippert* court:

> In support of its *Monell* allegations, the *Reed* complaint points to two expert reports submitted in this case (i.e., Lippert), see id. ¶¶ 41-45, that had been filed in 2014 and 2018 (these are also referred to as the "Shansky" and "Puisis" reports). In these reports, experts appointed by this Court pursuant to Fed. R. Evid. 706 identified numerous cases where Wexford medical personnel were slow to diagnose and slow to treat cancer, resulting in multiple unnecessary deaths. *Id*.

*Lippert v. Ghosh*, No. 10-cv-4603, Doc. 1484, p. 2 (N.D. Ill. Nov. 29, 2021). The Reeds expressly state that they will use the *Lippert* reports to support their *Monell* allegations. They suggest that they will submit the reports – and the documents consulted in creation of the reports – as evidence that Wexford personnel were slow to diagnose and treat cancer, causing deaths.

The Reeds have not offered any reason why the *Lippert* reports would not be hearsay in this matter. In *Dean v. Wexford* the plaintiff attempted to justify their use of the reports despite their status as hearsay by stating that they did so for the non-hearsay purpose of providing notice of their contents. The Seventh Circuit held that the 2018 Puisis report cannot be used for that purpose for events preceding the report, as it could not have provided notice before it existed. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *34. The Seventh Circuit further indicated that a trial court could commit error in admitting the 2014 Shansky report as evidence of notice of its contents where the report did not address the facility where the plaintiff was incarcerated, and admission of the reports raised the possibility of causing undue

13

prejudice to Wexford. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *38-*40.[1]

The Reeds have not attempted to show that the *Lippert* reports could have provided notice to Wexford of an issue that was present in their case. The Reeds do not mention hearsay, and do not address the *Dean* decision in their brief. The Reeds do not acknowledge that the Decedent at issue in the instant matter was an inmate at Lawrence Correctional Center. Neither the 2014 Shansky report nor the 2018 Puisis report addressed Lawrence Correctional Center, or its staff, or its history of medical services. The reports offered different findings about different facilities: it would be purely speculative to assert that the experts would have found certain unsatisfactory conditions at Lawrence Correctional Center. The Seventh Circuit in *Dean* held that the Shansky report could not provide notice of conditions at a facility not covered in the report:

> Even assuming, moreover, that notice-only evidence can prove deliberate indifference for *Monell* liability, the 2014 report nonetheless falls short. The 2014 report provides notice—but notice of what? Taylorville was not one of the facilities reviewed in the 2014 report, so the report could not have given Wexford notice of any specific problems occurring there.

*Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *49.

Lawrence Correctional Center is where Decedent in *Reed* was incarcerated, and, like Taylorville Correctional Center, that facility was not addressed in the *Lippert* reports. Even if the facility where Decedent had been incarcerated during the events alleged in his Complaint *had* been addressed in the *Lippert* expert reports, per the U.S. Seventh Circuit, that would not be sufficient

---

[1] The Seventh Circuit stated that it did not need to decide whether the trial court was in error in admitting the 2014 Shansky report, because the evidence admitted at trial—including the Shansky report—did not support the plaintiff's *Monell* claim by showing a pattern or practice of violations of constitutional rights similar to those alleged by the *Dean* plaintiff. One reason for this was that the facility where the plaintiff was incarcerated was not addressed in the Shansky report. *See Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, *40, 49.

14

basis for him to use the reports as evidence during his trial "without linking those problems to [the plaintiff's] personal experience." *See Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019). There is no factual basis—at least none identified by the Reeds—on which the *Lippert* reports could be used as evidence that Wexford received notice of conditions at Lawrence Correctional Center.

Wexford acknowledges that the *Dean* court addressed whether the trial court was in error to have admitted the *Lippert* reports at trial, and that the scope of what is admissible at trial is narrower than the scope of what may be obtained in discovery. However, in this matter, the fact that the *Lippert* reports are inadmissible hearsay for the Reeds should weigh against their argument that they need the materials underlying the report. Because the Reeds cannot submit the reports as evidence, the reports cannot support their *Monell* claim. For this reason and others addressed above, such as prejudice to the parties, the Reeds do not present good cause for this Court to order production of documents subject to Orders barring their production in *Lippert*, and thereby to strip the anonymity from the inmates discussed in the *Lippert* reports.

The Reeds also cite *Wilkerson v. Chamberlain*, No. 3:17-cv-50046, ECF 206, Doc. 44-5 (N.D. Ill. Mar. 29, 2021), on the basis that it ordered a similar outcome as the *Lymon* court. The court in *Wilkerson* relies upon the *Lymon* decision, and it summarily repeats some of the same reasoning stated in *Lymon* when addressing the Protective Orders:

> The argument that the reports themselves were inadmissible hearsay failed because the reports and/or underlying documents could be used for non-hearsay purposes, and the argument that the production of the documents underlying the report would violate orders in the Lippert case failed because the Lippert court specifically acknowledged that an intervening party could request those underlying documents.
> [*Lymon*] at *16, 19.

*Wilkerson v. Chamberlain,* No. 3:17-cv-50046, ECF 206, Doc. 44-5, at 2.

15

Therefore, the court in *Wilkerson* echoed the *Lymon* court's finding that this Court had overruled its Stipulated Protective Order in footnote 3 of the Order denying Burks leave to depose Dr. Shansky. As noted above, these cases interpret that footnote to state much more than it states on its face, and in doing so, they contradict the express meaning of this Court's Stipulated Protective Order.

The Reeds also cite an order in *Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-cv-50044, 2021 WL 5232733 (N.D. Ill. Nov. 10, 2021). However, that order does not address the Orders at issue in this case. Additionally, that court only permitted documents related to specialty offsite treatment at Dixon Correctional Center from 2012-2018, and, notably, the identification of all people in the report was to be redacted in the documents produced. *See Arsberry*, No. 3:17-cv-50044, 2021 WL 5232733, at \*17-\*19. The relief requested in that case is so different from that requested by the Reeds in how it impacts the Orders of this Court and the parties that the *Arsberry* decision is irrelevant here.

### III.    CONCLUSION

The scope of proper discovery is limited to that information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs' claims are those defined at least initially by Plaintiffs' Complaint, and Plaintiffs' Complaint is based on false allegations of material facts regarding Decedent's medical care. Accordingly, Plaintiffs' Complaint in its current state should not be used to define the scope of discovery, and the instant motion should be denied. Alternatively, it should be suspended until after Plaintiffs' amend their Complaint to correct it.

Additionally, the instant motion seeks an order from this Court that could conflict with one issued by the *Lippert* court on the interpretation of its orders. The Reeds ask this Court to

16

compel production of documents and information that are subject to Orders issued by the *Lippert* court limiting their production, and Plaintiffs have a currently pending motion asking that court to modify the Orders on that very issue. Accordingly, the Reeds motion in this case should be denied to avoid the risk of conflicting orders.

Further, the recent Seventh Circuit decision in *Dean v. Wexford Health Sources, Inc.*, 2021 U.S. App. LEXIS 33423, __ F.4th __, 2021 WL 5230855 (7th Cir., Nov. 10, 2021), reaffirmed that the *Lippert* reports are hearsay; that a party seeking to use them must show that they are properly submitted for a non-hearsay purpose; and held that the non-hearsay purpose of providing notice to Wexford of the reports' contents is not satisfied in cases (at least) where the plaintiff alleges violations at a facility not covered by the reports. The facility where the Reeds allege constitutional violations, Lawrence Correctional Center, was not addressed in the *Lippert* reports. Under *Dean*, the Reeds cannot use the *Lippert* reports as evidence of notice of the reports' contents, and the Reeds cannot show good cause for this Court to order the production of materials obtained for use by the *Lippert* experts and thereby stripping of anonymity from inmate patients discussed in the *Lippert* reports.

And finally, Plaintiffs cited jurisprudence is non-binding on this Court, and is based on a finding by a Northern District court in *Lymon* that the *Lippert* court overruled five years of its own procedure and at least three of its orders (those appointing the experts and the Stipulated Protective Order), in part, in a footnote to an order issued in 2018. This is an improper interpretation of the *Lippert* orders and the jurisprudence cited includes very little analysis that could support the outcome the Reeds request. If the *Lippert* court intends to modify its Orders in the manner speculated by the *Lymon* court, the Reeds have given the *Lippert* court the opportunity to do so by filing their currently-pending Motion to Modify the Protective Order.

WHEREFORE, Defendants, WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O., respectfully request that this Honorable Court deny LENN REED JR.'s and LENNISHA REED's, Motion to Compel Response to Subpoena, or alternatively defer ruling upon it until after Plaintiffs have amended their Complaint, and for whatever further relief it deems fair and just.

        CASSIDAY SCHADE LLP

        By: /s/ Ryan C. Wallis
        One of the Attorneys for Defendant, WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O.

Ryan C. Wallis
ARDC No. 6288689
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
rwallis@cassiday.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2022, I electronically filed the foregoing Response to Plaintiff's Motion to Compel Response to Subpoena with the Clerk of the Court for the Southern District of Illinois using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

ATTORNEYS FOR DEFENDANT, FAIYAZ AHMED, M.D.:
Keith Hill
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia, Suite 100
Edwardsville IL 62025
Telephone 618.656.4646
Facsimile 618.656.7940
khill@heylroyster.com

ATTORNEY FOR DEFENDANT, ILLINOIS DEPARTMENT OF CORRECTIONS:
Tara Barnett
Assistant Attorney General
201 West Pointe Dr., Ste. 7
Swansea IL 62226
(618) 236-8781
tara.barnett@ilag.gov


ATTORNEYS FOR PLAINTIFFS:
Sarah Copeland Grady, Esq.
Jon I. Loevy
Stephen H. Weil
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago IL 60607
sarah@loevy.com
jon@loevy.com
weil@loevy.com

/s/ Ryan C. Wallis

10099351 RWALLIS;RWALLIS