IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LENNISHA REED,** *Co-Administrator of the Estate of Lenn Reed,* **and** **LENN REED JR.,** *Co-Administrator of the Estate of Lenn Reed,* **Plaintiff,** **v.** **WEXFORD HEALTH SOUCES, INC.,** *et al.,* **Defendants.** | **Case No. 20-cv-01139-SPM** |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion to compel response to subpoena filed by Plaintiffs. (Doc. 44). Defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Shah, Dr. Ahmed, and Dr. Ritz filed a response in opposition. (Doc. 47). The Illinois Department of Corrections, who is the subject of the subpoena, has entered this case as an interested part and joined in the response. (Doc. 45, 48, 49, 53).[1]

### BACKGROUND

Plaintiffs Lennisha Reed and Lenn Reed Jr., Co-Administrators of the Estate of Lenn Reed Sr., commenced this action on October 28, 2020, claiming constitutional violations pursuant to 42 U.S.C. § 1983 and violations of Illinois state laws. (Doc. 1). Plaintiffs allege that while Lenn Reed Sr. ("Reed") was incarcerated with the Illinois Department of Corrections, medical staff continued

---

[1] The Clerk of Court is **DIRECTED** to modify Doc. 48 and 53 to reflect that the motions were filed by "the Illinois Department of Corrections as an interested party," not as a defendant.

to mistreat his complaints of digestive problems and ignore signs of colon cancer. Once tests were performed and Reed was diagnosed with cancer, medical staff proceeded treating and caring for Reed in an unhurried manner. As a result, it became too late for Reed to receive effective treatment, and he died of cancer in January 2019. Plaintiffs are proceeding with constitutional and state law claims against Defendants.

Relevant to the motion to compel is the claim that Defendant Wexford, the company contracted with the Illinois Department of Corrections ("IDOC") to provide healthcare to inmates, had widespread policies across IDOC facilities of failing to diagnose and failing to adequately treat patients under its care who were suffering from cancer ("*Monell* claim"). (Doc. 63, p. 15-16). Plaintiffs state that in order to identify other cases of potentially inadequate cancer care in support of their *Monell* claim against Wexford, they have looked to two reports prepared by court appointed experts in case *Lippert v. Ghosh*, No. 10-cv-04603 (N.D. Ill. *filed on* July 23, 2010). *Lippert* was a class action lawsuit filed in the Northern District of Illinois alleging inadequate healthcare on behalf of all prisoners in the custody of IDOC. The two *Lippert* reports, which were submitted in 2014 and 2018, describe numerous instances of inappropriate medical care provided to IDOC prisoners, including multiple examples of inappropriate care provided to cancer patients. The publicly available *Lippert* reports, however, do not identify any of the patients by name, and so, Plaintiffs could not name and ask for these individuals' medical records.

Plaintiffs served a subpoena on IDOC, who is not a party to this action, asking for the medical information of certain individuals described in the reports and seeking various internal communications discussing the inadequate care as identified in the two *Lippert* reports. IDOC answered the subpoena and agreed to produce certain records but objected to producing any documents in response to Plaintiff's subpoena requests that connect with the *Lippert* reports—the requests for medical records and the various communications and other documents that discuss or

Page 2 of 12

relate to the *Lippert* reports' findings. IDOC claims that the documents sought in each of the requests are "confidential pursuant to the Court Orders" that have been entered in *Lippert.* IDOC also objects to requests based on burden and overbreadth.

Plaintiffs state that after multiple calls and emails, they have reached an impasse with IDOC, and they filed the motion to compel currently before the Court. Defendants and IDOC, as an interest party, filed a response in opposition. (Doc. 47, 49).

The Court takes notes of the events that transpired in *Lippert* since the filing of the motion to compel. After serving IDOC the subpoena, Plaintiffs also served a subpoena on counsel for the class in *Lippert,* Uptown People's Law Center ("UPLC"), asking UPLC to produce "documents sufficient to identify the patients discussed in the" 2014 and 2018 reports. *Lippert v. Ghosh,* Doc. 1484, p. 2. UPLC responded to the subpoena confirming that it possessed documents responsive to the subpoena, but it considered the information requested to be covered by the *Lippert* court's protective order. *Id.* at p. 3-4. Plaintiffs successfully intervened in the *Lippert* case, and the *Lippert* court granted their motion to modify the protective order allowing them to access the non-redacted versions of the *Lippert* reports. *Id.* at Doc. 1534. In granting the motion, the *Lippert* court noted that because of the HIPAA qualified protective order in this case, it had "no concerns that [the protective order] will not adequately protect the privacy interests of the inmates listed by description in the public versions of the" reports. *Id.*

### REQUESTED DOCUMENTS

Plaintiffs' subpoena requests fall in to two categories: (1) the medical information for twenty-four non-party inmates, including medical records and documents and communications relating to the medical care for each person; and (2) documents and internal communications that discuss inadequate care identified in the *Lippert* reports.

Specifically, in production requests #21 and #28, Plaintiffs ask for all documents pertaining

to twenty-four individuals identified in both *Lippert* reports, including their entire medical file, any documents or communications relating to medical care for each individual, and any documents or communications relating to complaints regarding medical care for each individual. (Doc. 44-1, p. 8-10).

In document production requests #10, #11, #12, #16, #17, and #19, Plaintiffs seek production of all communications between Wexford personnel or with IDOC personnel relating to descriptions in the *Lippert* reports relating to (1) diagnosis or care of cancer; (2) delay in or failure to diagnose serious medical conditions; and (3) improper or inadequate medical care.

In production requests #15 and #18, Plaintiffs seek production of all communications with Wexford personnel or with IDOC personal relating to the descriptions in the 2018 *Lippert* report relating to referral for off-site medical care, including but not limited to diagnostic services and treatment for cancer.

Finally, in production requests #22-26, and #29-33, Plaintiffs seek all documents and communications discussing or related to both *Lippert* reports descriptions of (1) the medical care provided to each person identified in requests #21 and #28; (2) the medical care provided to persons with cancer; (3) purported delay in providing medical care; and (4) the medical care provided to IDOC prisoners. They also seek production of all documents and communications discussing or relating to any actual or potential changes in policies, practices, rules, directives, protocols, procedures, budgeting, recruiting, training, retention, or discipline, in light of the information contained in the *Lippert* reports.

### DISCUSSION

"Liberal discover is permitted in federal courts to encourage full disclosure before trial." *White v. Kenneth Warren & Son, Ltd.,* 203 F. R.D. 364, 366 (N.D. Ill. Oct. 17, 2001). Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *N.W. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir.2004) (quoting FED. R. CIV. P. 26(b)(1)). Although the disputed discovery in this case is being sought pursuant to a subpoena served on a non-party, "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Graham v. Casey's General Stores,* 206 F. R.D. 251, 253 (S.D. Ind. Mar. 18, 2002). *See also Teed v. JT Packard & Assoc., Inc.,* No. 10-MISC-23, 2010 WL 29259002, at *1 (E.D. Wisc. July 20, 2010) (citing FED. R. CIV. P. 45 Advisory Committee Note to the 1991 Amend.).

Here, in the response in opposition, Defendants and IDOC do not argue that the requested material is irrelevant or unlikely to lead to admissible evidence. Rather, they contend that the Court should deny the motion to compel because the *Lippert* reports themselves are inadmissible hearsay for the purpose of trial and have limited use. They also assert that the discovery sought is based on false allegations in the Complaint, ruling on the motion to compel is likely to create conflicting case law, and production of the subpoenaed material is prohibited by orders in *Lippert.* The Court does not find any of these arguments convincing and will take each one in turn.

## I.    *Arguments advanced by Defendants and IDOC*

### a.   *False allegations in the Complaint*

In their response, Defendants first argue that the Court should deny the motion to compel because the discovery requested lacks proper foundation, as Plaintiffs are pursuing disclosure of documents to support claims falsely pled in the Complaint. (Doc. 47). They ask the Court to defer ruling on the motion to compel until Plaintiffs have taken curative measures to correct allegations that are contradicted by the medical records. Plaintiffs disagree with Defendants' characterization

Page 5 of 12

of the Complaint and argue Defendants have glossed over the facts in order to fit their narrative of the case. Plaintiffs dispute Defendants' claims that certain portions of the Complaint are false with their own factual allegations that they claim are supported by the medical record.[2]

The Court will not assess the merits of Plaintiffs' claims through briefings on a motion to compel. *See NEXT Payment Solutions, Inc., v. CLEAResult Consulting, Inc.,* No. 17 C 8829, 2018 WL 3637356, at *17 (N.D. Ill. July 31, 2018) ("it is not appropriate to argue the merits of a case through motions to compel") (citations omitted.). Neither will the Court make "findings about whether certain facts have been established or not established to justify *Monell*-related discovery." *Prince v. Kato,* No. 18 C 2952, 2020 WL 1874099, at *2 (N.D. Ill. Apr. 15, 2020). If Defendants believe that Plaintiffs' allegations of how Reed's treatment progressed is false or not supported by the evidence, then they should file the appropriate motion. The Court denies the request to defer ruling on the motion to compel until Plaintiffs correct the Complaint.

### b.  *Ruling on the motion to compel risks contrary rulings*

Next, Defendants assert that because of Plaintiffs' pending motion in *Lippert* requesting modification of the protective order, an order on the motion to compel filed in this action could result in inconsistent rulings.

This argument is now moot, as discussed above, the *Lippert* court granted Plaintiffs' motion to intervene and modify the protective order. Pursuant to the amended protective order, UPLC is allowed to produce to Plaintiffs unredacted reports and any keys or cyphers which identify the names and identification numbers of the individuals discussed in the *Lippert* reports. *Lippert,* Doc. 1543, p. 1. Furthermore, because of this ruling, some of Plaintiffs document requests

---

[2] Since Defendants have filed their response, Plaintiffs have filed an Amended Complaint, in which they remove language from paragraph 31 asserting that after November 14, 2018, Dr. Shah and Dr. Ahmed did not arrange for Reed to see Dr. Saba for more than a month. (Doc. 59, 63). Plaintiffs agree that, as to this specific allegation, they may have misinterpreted some of the medical record during that period and have corrected the error. (Doc. 54, p. 4-5).

regarding identification may be moot. (*See* Doc. 44-1, p. 7-8, #8, #9, #13, and #14).

         **c.  *Documents requested are barred by the orders appointing experts and the protective order in Lippert***

Defendants argue that disclosing the information would violate the orders appointing the experts and the protective order issued by the *Lippert* court. Some of the documents subpoenaed can be classified as "underlying documents," which the Court takes to mean material obtained, reviewed, or relied upon when creating the expert reports. In the orders appointing the experts, the *Lippert* court provided:

> The Expert and his consultants and assistants, and counsel for any party, shall maintain the confidentiality of all material obtained and reviewed pursuant to this Order, as if all material was marked "Attorneys Eyes Only," as set forth in the Protective Order entered by this Court on April 11, 2012.

*Lippert,* Doc. 244, p. 5; Doc. 593, p. 5. Defendants argue that the primary function of the orders appointing experts was to ensure that inmate' anonymity would not be lost. Therefore, requiring IDOC to produce the requested documents would "strip the confidentiality away" from the inmates who were identified in the report. (Doc. 47, p. 8). The "inmates would then become subject to public scrutiny and involvement in any case in which parties may seek to use the *Lippert* reports currently or in the future." (*Id.*).

First, as the *Lippert* court recently noted, this Court is not concerned that allowing production of the requested information would open third party medical information up to public exposure. *Lippert,* Doc. 1534, p. 8. This case has a HIPAA protective order in place to "prevent unauthorized disclosure and to direct the use of protected health information during the course of litigation." (Doc. 41, p. 1). Defendants have not offered any arguments for why the Protective Order in this case, which designates all protected health information as "Attorneys' Eyes Only," is insufficient to protect the privacy interests of inmates who are not parties to this action. (Doc. 41, p. 2).

Second, it is not clear how this provision in the order appointing experts, which applies to the experts and their consultants and assistants, as well as to counsel for the parties, is applicable to IDOC. IDOC did not "obtain the material" pursuant to the order but had possession of the requested documents all along. Thus, the underlying documents requested are not prohibited by the *Lippert* orders appointing experts.

The Court also finds that the production of underlying documents is not prohibited by the protective order in *Lippert.* As pointed out by Plaintiffs, the protective order entered in *Lippert* on April 11, 2012, specifically states, "Nothing in this Order shall prevent a Party from disclosing or using any of its own documents, information or things as it deems appropriate…" *Lippert,* Doc. 111, p. 8. Other district courts, specifically in the Northern District, who have addressed this discovery issue agree that ordering "IDOC to produce the underlying documents does not violate these court orders." *Lymon v. Chamberlain,* No. 17 CV 50093, 2020 WL 6940985, at *6 (N.D. Ill. Nov. 24, 2020). *See also Wilkerson v. Chovinard,* No. 17-cv-50046 (N.D. Ill. Mar. 29, 2021); *Arsberry v. Wexford Health Sources, In.,* No. 17-cv-50044, 2020 WL 5232733, at *7 (N.D. Ill. Nov. 10, 2021). The *Lippert* court itself has also acknowledged that while the orders in *Lippert* prevent deposition of an expert, the documents underlying the expert reports could be requested from IDOC or Wexford directly. *See Lippert,* Doc. 653, p. 3 n. 3; Doc. 1534, p. 5 n. 3, 4. Therefore, the protective order does not prohibit IDOC from producing its own documents that may have also been produced in correlation with the creation of the *Lippert* reports.

As to the documents subpoenaed that are not considered "underlying," there is nothing to prevent disclosure of material that was never produced as discovery in *Lippert* in the first place or was not produced as documents underlying the expert reports. The protective order applies to "documents and things produced during the course of discovery" and as discussed above, the order appointing experts prohibits disclosure of "all material obtained and reviewed" in furtherance of

Page 8 of 12

the expert's assigned duties. *Lippert,* Doc. 111, 244, 593. Documents that may relate to the *Lippert* case or communications that mention, were sent in response to, or that discuss *Lippert* and were not produced in discovery or disclosed to the experts are not covered by the orders in *Lippert.* Accordingly, the orders in *Lippert* also do not prevent the production of documents that are not underlying documents and simply related to or mention *Lippert*.

### d.   *Lippert reports have limited use at trial*

Defendants next argue that the fact that the *Lippert* reports are inadmissible hearsay and have limited value at trial should weigh against Plaintiffs' argument that they need the materials underlying the report. (Doc. 47, p. 15). In support of this argument, Defendants cite to *Dean v. Wexford Health Sources, Inc.,* in which the Seventh Circuit reviewed whether a trial court abused its discretion in admitting the *Lippert* reports in order to prove that the opposing party had notice of the reports' contents. 18 F. 4th 214, 232 (7th Cir. 2021). Ultimately*,* the Seventh Circuit did not reach on a decision on whether the trial court abused its discretion in admitting the reports but warned that "[b]efore admitting them, a court should carefully balance their probative value against" the dangers of unfair prejudice and confusing the jury. *Id.* at 234.

This argument has also been addressed by courts in the Northern District. In *Lymon* and *Arsberry,* the courts dismissed arguments that documents concerning or underlying the *Lippert* reports should not be produced in discovery because the reports themselves are inadmissible at trial. Both courts noted that they were "not ruling on whether the *Lippert* reports themselves are admissible where Plaintiff is only requesting documents underlying those reports." *Arsberry*, 2020 WL 5232733, at *7 (citing *Lymon,* 2020 WL 6940985, at *6). *See also N.W. Mem'l Hosp.,* 362 F.3d at 925–926 (noting whether medical records are admissible in evidence is dependent upon separate evidentiary consideration). This Court agrees. Discovery "is concerned with relevant information not relevant evidence." *Doe v. Loyola Univ. Chi.* 2020 WL 406771, at *3 (N.D. Ill.

Page 9 of 12

Jan. 24, 2020) (internal citations and quotations omitted). In order to obtain discovery, Plaintiffs must show that the information sought is relevant and proportional to a claim. *See* FED. R. CIV. P. 26(b)(1). The Court will not impose a higher burden and demand that Plaintiffs also show admissibility.

## II.    *IDOC Objections*

In the response to the subpoena itself, IDOC raised additional objections not addressed in the response brief. (*See* Doc. 44-2, p. 1-2). IDOC objects to producing the subpoenaed documents on the grounds that the master record file of individuals in IDOC custody are confidential per 730 ILCS 5/3-5-1(b) and covered by attorney-client privilege. IDOC also asserts that producing the discovery would impose and undue burden, and the requests are overly broad.

### a.    *Illinois Statutory Law*

IDOC objects to the disclosure of the medical records and other documents and communications relating to the medical care of third party individuals because "the master record of individuals in IDOC custody are confidential per 730 ILCS 5/3-5-1(b)." (Doc. 44-2, p. 2). As other courts have observed, this statute "does not prohibit disclosure to a party pursuant to a court order, and documents in master files have been produced in civil and criminal cases." *Sultan v. Duncan,* 2020 WL 2542958, at *1 (S.D. Ill. May 19, 2020) (citing *McCroy v. Ill. Dep't of Corr.,* No. 02-CV-3171, 2006 WL 8077033 (C.D. Ill. May 12, 2006). Additionally, because Plaintiffs are bringing federal claims against Defendants, federal law and federal privileges control. *See N.W. Mem'l Hosp.,* 362 F.3d at 925–926 (confirming that Illinois privilege law does not govern in federal question claims). Accordingly, 730 ILCS 5/3-5-1 does not prevent production.

### c.    *Attorney-client privilege*

IDOC also objects based on the argument that "such information would include confidential attorney-client communication." (Doc. 44-2, p. 2). This argument no longer seems to

be an issue, as IDOC has agreed to the production of a privilege log for responsive documents that may be designated as privileged. (*See* Doc. 54, p. 10); Fed. R. Civ. P. 45(e)(2).

### d. Undue burden and overbreath

Lastly, IDOC objects on the grounds that the requests are unduly burdensome and overly broad. Plaintiffs state that IDOC counsel has declined to engage in negotiation regarding resolution of these issues on grounds that the prohibitions set out in the *Lippert* protective orders are a threshold bar to all production. (Doc. 44, p. 3-4).

As this Court has stated, *Monell* claims often require broad discovery. (Doc. 40, p. 6) (citations omitted). That being said, Rule 45 provides that the issuer of "a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. 45(d)(1). IDOC, however, has not provided any information to support its contentions that the requests are burdensome and broad. (Doc. 47, 49). *See Breuder v. Bd. of Tr. of Comty. Coll. Dist. No. 502,* No. 15 CV 9323, 2020 WL 4676666, at *4 (N.D. Ill. Aug. 12, 2020) (it is the respondent's "burden to show undue burden or expense). Thus, the Court is unable to determine if the burden imposed by the subpoena is undue. *See Parker v. Four Season Hotels, Ltd.,* 291 F. R. D. 181, 188 (N.D. Ill. May 6, 2013) ("in determining whether the recipient of a subpoena is being subjected to undue burden, courts consider a number of factors").

As the Court does not find that the subpoenaed documents are prohibited from production by orders in *Lippert*, and there is no evidence or factual allegations to support the argument that the requests impose an undue burden, the motion to compel is granted. IDOC shall produce all documents responsive to the subpoena within forty-five days of the date of this Order. To the extent IDOC believes any of the subpoenaed material is covered by a federally recognized privilege, IDOC shall produce a privilege log along with the responsive documents.

### DEADLINES

The Court will address the motion for extension of time (Doc. 72) and modification of the current deadlines in a separate order.

### DISPOSITION

For the reasons stated above, the motion to compel (Doc. 44) is **GRANTED**. The Illinois Department of Corrections **SHALL** produce all documents responsive to Plaintiffs' subpoena within forty-five days of the date of this Order. The Court will address the current discovery and dispositive motion deadlines in a separate order.

The Clerk of Court is **DIRECTED** to modify the docket in accordance with footnote 1.

**IT IS SO ORDERED.**

**DATED:   September 27, 2022**

 _s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**