UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LENNISHA REED and LENN REED JR., as Co-Administrators of the Estate of LENN REED, SR., #B28789, | |
| Plaintiff, | Case Number 3:20-cv-01139-SPM |
| v. | Judge Stephen P. McGlynn |
| WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, STEPHEN RITZ, and FAIYAZ AHMED, | |
| Defendants. | |

## **RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

COMES NOW Defendant WEXFORD HEALTH SOURCES, INC., by and through its attorneys, CASSIDAY SCHADE LLP, and for its Response to Plaintiffs LENNISHA REED and LENN REED JR., as Co-Administrators of the Estate of LENN REED, SR., #B28789's Motion to Compel (Doc. 81), states as follows:

### INTRODUCTION

Plaintiff filed this case on October 28, 2020. (Doc. 1). After several extensions of time, the current close of discovery is January 27, 2023, in seven weeks. (Doc. 78). As Defendant has previously briefed, Plaintiffs are proceeding on a claim for a delay in cancer diagnosis based on facts they know to be false and without evidence in support.[1] In addition to the concerns previously raised, Plaintiffs' expert disclosure deadline passed a month ago and no such disclosure was made. For a delay in diagnosis claim, this makes Plaintiffs' claims futile. Yet, Plaintiffs now seek voluminous records spanning more than a decade. In addition to the objections below, Defendant will be filing a Motion for Protective Order or Bifurcation given that discovery is in its final weeks

---

[1] The Court previously advised Defendant to file a motion on this issue, which will be filed in short order.

and Plaintiffs only seek far-reaching *Monell* discovery that could not be completed within the discovery timeline.[2]  As Plaintiffs' *Monell* claim is dependent on Plaintiffs' underlying claim, it would prejudice Defendant to further delay this case and incur unnecessary and significant expense when the underlying claim is legally and factually unsupported.

As it relates to the Motion to Compel, prior to filing it, the parties last met and conferred on discovery responses in December 2021.  At that time, Defendant informed Plaintiffs' counsel of material errors in their Complaint, and Plaintiffs' counsel requested to stay the discussions to cure the Complaint.  Plaintiffs cured one of the errors by filing the Amended Complaint.  Since then, however, Plaintiffs' counsel did not request a meet and confer.

Nearly a year later, on November 18, 2022, Plaintiffs filed a 21-page Motion to Compel raising several *Monell* discovery disputes.  (Doc. 81).  Undersigned counsel then requested a call with Plaintiffs' counsel as no Rule 37 conference had occurred for nearly a year.  Plaintiffs' counsel indicated that the multiple calls and written correspondence he referred to in the motion was a phone call on August 22, 2022, concerning a different case altogether, 3:21-cv-00599-JPG *Wiley v. Wexford Health Sources, Inc. et al.*  Plaintiffs' counsel mistakenly believed that because the claims are similar in both cases that it constituted a meet and confer for both cases.  However, setting aside this confusion, Plaintiffs' Motion to Compel raises issues for the first time that were not discussed by counsel in either case.  Accordingly, Plaintiffs' Motion to Compel should be denied as Plaintiffs did not properly confer under Rule 37 ***before*** filing their motion.

Nonetheless, Plaintiffs now seek to compel documentation from another matter altogether, documentation of unwritten practices, privileged quality improvement records, and virtually

---

[2]  Of note, the Committee Notes on Rule 16 state, "[t]he amendment to Rule 16(b) is designed to alert the court to the possible need to address the handling of discovery of electronically stored information early in the litigation if such discovery is expected to occur."

unrestrained third-party PHI. Defendant lodged numerous objections, including but not limited to attorney client privilege, attorney work product, quality improvement privilege, overbreadth, and undue burden and expense disproportionate to the needs of this case.[3] In fact, Plaintiffs seek a broad order so unrestrained by any boundaries or guidelines that it would essentially constitute a request for any and all documents, not reasonably accessible because of undue burden or cost. FRCP 26(b)(2)(B).

Furthermore, if Plaintiffs' Motion to Compel is granted, Defendant could not comply with the current scheduling order and would require a significant alteration in the discovery deadlines in this case, likely by more than a year. There is no indication that these immense efforts would yield anything material in this case or justify such delay. Thus, if Plaintiffs' motion is granted over Defendant's strenuous objections, Defendant would seek a fee splitting plan proportional to the percentage of records reviewed that the Court deems material to this matter.

Yet, no justification exists for such delays and facially overbroad requests. Instead, Rule 26 requires a scope of discovery be set in this matter. Not only should that scope consider the facts and allegations pled in this case, but also should consider the known evidence at this stage of the case, more than two years into litigation, with seven weeks remaining in discovery. Defendant respectfully requests the Court consider the undue burden and prejudice to Defendant in Plaintiffs' request given the needs of this case at this time, including Plaintiffs' inability to obtain any expert opinion in support. Accordingly, the Court should deny Plaintiffs' Motion to Compel or grant Defendant's forthcoming Motion for Protective Order or Bifurcation and defer ruling on this motion until after a ruling is made on the dispositive motion for the underlying claims.

---

[3] *Buckman v. Columbus-Cabrini Med. Ctr.*, 272 Ill.App.3d 1060, 1066, 651 N.E.2d 767, 771 (1st Dist. 1995); *Consolidation Coal Co. v. Bucyrus-Eric Co.*, 89 Ill. 2d 103, 120 (Ill. 1983); *People v. Ryan*, 30 Ill.2d 456, 461, 197 N.E.2d 15, 17-18 (Ill. 1960); *Claxton v. Thackston*, 201 Ill.App.3d 232, 235, 559 N.E.2d 82, 85 (1st Dist. 1990); 735 ILCS 5/8-2101 et seq; 745 ILCS 55/1 et seq.

**LEGAL STANDARD**

A request for production "***must*** describe with reasonable particularity each item or category of items to be inspected."  FRCP 34(b)(1)(A)(emphasis added).

> the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and ***whether the burden or expense of the proposed discovery outweighs its likely benefit.***

FRCP 26(b)(1)(emphasis added).  "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."  FRCP 26(b)(2)(B).  "The court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive… or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  FRCP 26(b)(2)(C).

**ARGUMENT**

I.    *Lippert* **discovery should not be permitted in this matter.**

A.    **Plaintiff's requests are outside the scope of this case and unduly burdensome.**

*Lippert* is a decade's long class action lawsuit against the Illinois Department of Corrections regarding medical and dental care, where the court ordered an expert under Federal Rule of Evidence 706 to address certain allegations in the case.  Significantly, the Order appointing an expert to complete the report expressly provides "[t]he Expert, his consultants and assistants shall not provide opinion and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing their services in this matter."  NDIL 10-4603, (Doc. 244, p. 2).  Therefore, any mention of or reference to the *Lippert* reports would constitute

inadmissible hearsay and would lack proper foundation. FRE 602; FRE 802; *Shawn Lucas v. Dr. Fenolgia and Wexford Health Source, Inc.*, SDIL, 14-1008, (Doc. 123); See *Diaz v. Chandler,* 2016 U.S. Dist. LEXIS 35450 (N.D. Ill. Mar. 18, 2016); *Armbruster v. Illinois Department of Corrections et al.,* 3:16-cv-00544-SMY-MAB, SDIL (Doc. 230); *Thornton v. Lashbrook et al,* 3:17-cv-00761-SMY-RJD, SDIL (Doc. 235).

As Plaintiffs have the reports and as the authors are prohibited from testifying in this matter, it is unclear what documentation Plaintiffs seeks regarding *Lippert*.[4]  Wexford is not the custodian of records for IDOC prisoners' medical records.  Plaintiffs previously were granted discovery from the IDOC for the medical records of certain prisoners that were the subject to *Lippert*.  (Doc. 77). It appears from recent filings that the IDOC and Plaintiffs' counsel are coordinating production of such documents.  For Wexford, Plaintiffs fail to state with reasonable particularity what it is they seek and fail to even attempt to identify a scope of records within the confines of Rule 26.[5]

Instead, Plaintiffs claim they are entitled to know "what information Wexford knew about the information contained in the 2014 and [October] 2018 *Lippert* reports" and what changes it made in response.  Instead of asking these direct questions or tailoring the requests to opinions within the scope of this case, Plaintiffs request a search of all communication and documents to obtain this information.  Plaintiffs' requests are overbroad, unduly burdensome, and disproportional to the needs of this case.  Plaintiffs expressly target documentation and

---

[4] Of note, Plaintiffs cannot argue that, as it relates to *Lippert*, they are ignorant of types of records that exist as Plaintiffs have both intervened in *Lippert* and sought extensive discovery from the IDOC.
[5] Instead, Plaintiffs are arguing that because they bring a deliberate indifference claim against Wexford that they are entitled to any and all discovery for any condition, at any time, at any location, without restriction.  Yet, well-settled law prohibits a plaintiff from introducing evidence on other similar incidents absent a clear demonstration of substantially similarity between plaintiff's claims and such claims or incidents. *See, e.g., Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1185 (7th Cir. 1993) (internal citations omitted).  Merely showing two cases involving complaints of inadequate medical care does not represent a clear demonstration of substantially similarity between Plaintiff's claims and other claims or incidents. *Id.*

communication of another lawsuit, which would constitute largely, if not wholly, privileged documents and emails.  Further, Plaintiffs' requests are not reasonably calculated for these purported purposes, but instead seek an overbreadth of records and communication that is not reasonably available due to costs.  Defendant's objections should be sustained.  Alternatively, should the Court determine that Plaintiffs are entitled to ask these questions of Wexford, there are other discovery tools by which Plaintiffs can inquire other than asking for a search of all records and Plaintiffs' Motion to Compel production should be denied.

### A.    Wexford's Knowledge

As it relates to the October 2018 report, Wexford's knowledge is outside the scope of this case as the report was issued after Mr. Reed was diagnosed.  The October 2018 report was filed on November 14, 2018, months after Mr. Reed was diagnosed, when he was under the care of an oncologist, and when he was inpatient at the hospital.  *Lippert v. Ghosh, et al*, 1:10-cv-04603 (Doc. 767).  The Seventh Circuit has already determined that the 2018 report cannot show notice of alleged violations for claims that occurred before 2018.  *Dean v. Wexford Health Sources, Inc.,* Nos. 20-3058, 20-3139, 2021 U.S. App. LEXIS 33423, at *24-25 (7th Cir. Nov. 10, 2021).

Concerning the 2014 report, Plaintiffs' argument implies that they can use *Lippert* to establish an underlying violation occurred in this case and Defendant should have acted in a particular way.  The Seventh Circuit explained that *Lippert* cannot be used in this matter.  *Id*. Plaintiffs are putting the cart before the horse.  Wexford's knowledge only becomes relevant if Plaintiffs establish that an underlying violation occurred in this case that was caused by a Wexford policy.  However, Plaintiffs have not produced any evidence of an underlying violation or any evidence that Mr. Reed's care was inadequate due to a Wexford policy.  For example, Plaintiffs argue that Wexford has policies that constitute a failure to send patients offsite for evaluation and

treatment, yet Mr. Reed was referred to specialty care by Dr. Shah at first presentation. Similarly, Plaintiffs argue a failure to diagnose and treat. Not only does this sound in *respondeat superior*, which is not a viable *Monell* claim, but also Plaintiffs produce no medical or opinion evidence that there was a failure to diagnose or treat Mr. Reed, let alone that it was due to a Wexford policy. While admissibility at trial is not a prerequisite for discovery, Plaintiffs' requests must be relevant to the claims/defense and proportionate to the needs of this case. As Plaintiffs' express purpose is an improper one, Defendant's objections should be sustained.

Nonetheless, Plaintiffs' requests seek much more than Wexford's knowledge as it relates to the claims in this case. Request 47 seeks information about prisoners at different facilities, all for different conditions, including hypertension and GERD. Request 53 seeks all disciplinary information for the providers involved in these prisoners' care. Requests 54-60 more than doubles these efforts by seeking the information from the 2018 report, which again post-dates the allegations. None of Plaintiffs' requests are reasonably calculated to lead to the discovery of admissible evidence. *See, generally, Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-cv-50044, 2021 U.S. Dist. LEXIS 217636 (N.D. Ill. Nov. 10, 2021). Such broad requests, irrespective of condition or location, will encompass mostly, if not entirely, irrelevant materials, including medical care wholly unrelated to the allegations.

Plaintiffs' take great issue with Defendant's reliance on *Dean* and focus their argument on whether care at other facilities can be used to establish a *Monell* claim, citing stale district court cases and cases in other circuits. However, the Seventh Circuit's 2021 decision in *Dean* is authoritative. The court explained that, "[r]ather than offer substantive evidence of deliberate indifference, Dean relies solely on the *Lippert* reports. His theory is that the *Lippert* reports put Wexford on notice that independent experts in another case had found that collegial review was

causing systemic delays in medical care and that Wexford consciously disregarded that risk in adhering to collegial review at the Taylorville facility." *Dean,* Nos. 20-3058, 20-3139, 2021 U.S. App. LEXIS 33423, at *35. This is the precise argument Plaintiffs make here. Yet, the Seventh Circuit explained, "[b]ecause the 2014 report did not link any problems to Taylorville specifically, it gave Wexford no particular insight into whether Taylorville was one of the facilities where collegial review was causing problems, nor did Dean introduce any evidence that it was." *Id.* at *37. Plaintiffs argue that they are attempting to obtain evidence that there was a problem at Lawrence, except that is not what Plaintiffs seek. As noted above, Plaintiffs seek information about prisoners at a range of facilities for a range of medical conditions not relevant in this case.

Again, Defendant appreciates that the issue at this stage is not admissibility, but relevance and proportionality are the measure for discovery. *Dean* highlights that Plaintiffs' requests are not so related or proportionate but are overbroad and unduly burdensome. However, the issue with Plaintiffs' requests is not just that they seek information about other facilities.[6] Plaintiffs' requests are about different medical conditions altogether. There has been no effort made to seek information within the scope of the allegations in this case.

As it relates to the issue of Wexford's knowledge of opinions offered in *Lippert*, Plaintiffs make no such request, but instead request a fishing expedition through a sea of emails and documents spanning more than a decade and looking for nothing. More simply, Plaintiffs do not need all documents and emails concerning *Lippert* to argue notice of a publicly filed report. Plaintiffs' requests are not relevant the claim or defenses, proportional to the needs of the case, importance in resolving the issues, but are more burdensome than the likely benefit and Plaintiffs' Motion to Compel should be denied. FRCP 26.

---

[6] It is telling that Plaintiffs claim *Lippert* is relevant to the claims in this case but cannot cite to one substantially similar case from Lawrence in a decade's time from the monitor's reports.

### B.    Wexford's Response

Plaintiffs also argue that they need responses to its *Lippert* requests to know whether Wexford made any changes to its practices in light of the reports.  In addition to the issues identified above, this also assumes that the *Lippert* monitor's reports were beyond reproach.  Far from it, from the filings in *Lippert,* it is clear that the defense did not agree with the *Lippert* monitor's reports and submitted expert testimony on the matter, including substantial criticism of the reports, a fact that Plaintiffs acknowledge in their motion.  If Plaintiffs want to know the response, they can continue to read the filings in *Lippert*.  Thus, here again, Plaintiffs' proffered purpose of the report goes outside the issue of notice and Plaintiffs are improperly attempting to argue the *Lippert* reports establish unconstitutional practices in this case.  *Dean v. Wexford Health Sources, Inc.,* Nos. 20-3058, 20-3139, 2021 U.S. App. LEXIS 33423, at *24; 35-36 (7th Cir. Nov. 10, 2021); citing *Wilson v. Wexford Health Sources, Inc.,* 932 F.3d 513, 522 (7th Cir. 2019).

Furthermore, as Plaintiffs are seeking discovery on a disputed lawsuit, such discovery would be tantamount to re-litigating *Lippert* and arguing dueling expert reports that are inadmissible here.  Although the question as to admissibility is not yet directly before the Court, again the fact that Plaintiffs' express purpose is for inadmissible reasons should weigh against production as their requests are not reasonably calculated to lead to the discovery of admissible information.  Additionally, to the extent Plaintiffs seek quality improvement documentation and communication for areas that Wexford identified improvement or advances in client care, these records are privileged as discussed in detail below.

Nonetheless, Plaintiffs' requests are much broader than Plaintiffs' purported purpose.  The only request so related is Request 52; however, it again is unrestrained in scope and seeks all action by Wexford in over a decade related to the opinions of individuals that cannot testify in this case.

No attempt has been made to limit this request to the scope of this case and again searching all documents and emails for a decade is not the proper way to identify such information.

Most notably, Requests 48-52 seek all communication about the *Lippert* reports. Plaintiffs' request for unrestrained *Lippert* discovery is unavailable due to excess cost with no good faith basis to believe it will produce anything as it directly seeks attorney client communication and work product. To provide the Court with context as to the nature of the overbreadth, Defendant Wexford ran an initial search for all email and documentation containing the word *Lippert* and it generated **over 20 GB of emails and 27 GB of documents, with over 50,000 hits**. Extracting this volume of emails will interrupt the course of business and extracting the documents will take at least a week. It is impossible to calculate the number of hours it would take to review such documents. However, for reference, Wexford performed an ESI in another case with approximately 20% of the amount of documents and the process took approximately 9 months, with the review of records alone (not counting substantial communication with counsel) taking over 40 hours, for the benefit of producing 16 pages of non-privileged (non-*Lippert*), responses.

Significantly, given the nature of *Lippert* being a decade's long class-action, the documents and communication, including their response to the monitor's reports are privileged. Plaintiffs' only response is that Defendant can create a privilege log, yet this misses the issue entirely. Review for attorney-client privilege is not a search function that can be conducted without detailed review of each hit. Such review alone, not included logging thousands of emails and documents, is disproportionate to the needs of this case, a grossly ineffective means to identify information, and can only serve to increase the cost of litigation and delay this case. Thus, discovery into *Lippert* will be exponentially more time and cost intensive to the extent that it is not reasonably

accessible and would likely result in a delay in this case of a year or more for Defendant to prepare a privilege log and very likely nothing else.  FRCP 26(b)(2)(B).

Interestingly, with only seven weeks remaining in discovery, Plaintiffs have not sought a deposition of Wexford to ask the two questions they purport to need answers to.  Should the Court find that Plaintiffs can inquire into Wexford's notice and response to *Lippert*, it should be limited to the 2014 report and opinions as to cancer care at Lawrence.  If so ordered, the Court should also find that there are significantly less burdensome and prejudicial ways to provide such information and sustain Defendant's objections to Plaintiffs' Requests for Production.

## II.    Plaintiffs' Requests 30, 38, 39

Defendant certainly has not refused to respond to Plaintiffs' Requests 30, 38, and 39.  In fact, in the call with Plaintiffs' counsel *after* Plaintiffs filed the Motion to Compel, the parties agreed that they are not at issue with regard to written policies.   (Exhibit C, Email Correspondence).  Instead, Plaintiffs have requested documentation of unwritten policies.  By definition, this request is nonsensical.  Plaintiffs fail to identify with reasonable particularity what it is they seek.  The only category of documents that Plaintiffs were able to identify is quality improvement documentation that they believe exist because of the Kansas contract bid (an issue not addressed before the motion was filed).  There are many issues with Plaintiffs' argument that the Kansas bid is relevant to the Illinois contract, but ultimately Defendant never denied a quality improvement policy.   Instead, Defendant objected that quality improvement measures are privileged, which is addressed below.

Plaintiffs significantly mischaracterize Defendant's position on this matter.  Defendant has repeatedly asked Plaintiffs' counsel to identify what it is they are seeking.  When it comes to non-written documentation of practices of "access to medical evaluation or treatment by prisoner;

provision of medical care to prisoners, medical services provided at Lawrence; etc.," Defendant genuinely does not know what Plaintiffs seek and it appears Plaintiffs do not either. Far from a refusal, Defendant inquired multiple times what Plaintiffs are seeking and have not received a coherent response. Plaintiffs' counsel and their firm are not new to correctional litigation and should be able to articulate what they believe is outstanding. The fact that they cannot shows objections should be sustained and Plaintiffs' Motion to Compel should be denied.

### III. Privileges Provided Under the Illinois Law Should be Applied in this Case.

### A. Federal Courts are Urged to Consider State-Law Privileges.

Plaintiffs broadly argue that state-law privileges do not apply in federal question cases. Yet, it is well-settled that there is no blanket rule that prohibits a federal court from recognizing a privilege granted under state law. To the contrary, the Seventh Circuit has previously discouraged the summary denial of a party's claim of state law privilege as, "comity 'impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004) (internal citations omitted). "[W]here a state holds out the expectation of protection to its citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981).

Plaintiffs assert that in federal courts conferred with federal-question jurisdiction pursuant to 28 U.S.C. § 1331, claims of privilege are governed by federal rather than state law. (Doc. 96, pp. 5-6). Plaintiff cites to *Univ. of Pa. v. EEOC*, 493 U.S. 182, 188 (1990) and *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004), in support of this position. However, both cases cited by Plaintiff go through a merits-based analysis of whether to apply the respective privilege, discussed in more detail below. In fact, the Supreme Court in *University of Pennsylvania* stated it

12

will create and apply evidentiary privileges that promote sufficiently important interests to outweigh the need for probative evidence. *Univ. of Pa.,* 493 U.S. 182 at 188. Arguing that these cases stand for the proposition that a court should deny a privilege for the sole reason that it is based on state law is incorrect. Caselaw is clear that the Court should assess whether the state law privileges should be recognized in this case.

### B.    State Law Privileges Should Apply.

Looking specifically at the Illinois Medical Studies Act, the Act deems as privileged certain information used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care. 735 ILCS § 5/8-2101.

Plaintiffs state that in *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058 (7th Cir. 1981), the Court declined to recognize any privilege under the Illinois Medical Studies Act in a federal question case. A full reading of this case cannot support such a statement. Instead, *Shadur* is well-cited caselaw for the elements to consider when determining *whether* a state law privilege should be applied. The court explained, "in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises," and weigh the need of the information sought against the importance of the purpose of the privilege. *Shadur*, 664 F.2d at 1061-62 (7th Cir. 1981) (quoting *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 543 (7th Cir. 1977)). In *Shadur,* the court further recognized that:

> hospital review or disciplinary proceedings as privileged in the context of a malpractice action will generally have little impact upon the plaintiff's ability to prove a meritorious claim. For the crucial issue in that type of case is not what occurred at the review proceeding, but whether the defendant was in fact negligent in his care and treatment of the plaintiff. As the court in *Bredice* went on to note, "what someone … at a subsequent date thought of these acts or omissions is not relevant to the case." *Id*. at 251, *quoting Richards v. Maine Central R.,* 21 F.R.D. 590, 592 (D.Me.1957). More importantly, the

exclusion of that information will not prevent the plaintiff from otherwise establishing a valid claim.

*Id.* at 1062.  The distinction for the court in *Shadur* was the plaintiff did not allege medical malpractice, but the plaintiff's claim arose "out of the disciplinary proceedings themselves and not some event or occurrence that exists independently of those proceedings." *Id.* The court in *Shadur* expressly observed an obvious distinction between its case and a medical malpractice case.

*Shadur* stand in contradiction to Plaintiffs' assertion. As with before, *Shadur* stands for the proposition that a privilege asserted under the Act in a suit involving medical care should be afforded deference.[7]  *Shadur* also states there is no basis for denying the protections afforded by the Illinois Medical Studies Act on the grounds of investigation of claims solely related to alleged acts or omissions in a decedent's medical care.  In other words, ISMA privilege applies in cases involving alleged acts or omissions in the decedent's medical care

Here, Plaintiffs have alleged several claims, including state law survival act and medical malpractice, based on the medical care of Lenn Reed in 2018.  There are no allegations concerning the Wexford Death Notification and Review policy.  Instead, like the court reasoned in *Shadur,* "what someone … at a subsequent date thought of these acts or omissions is not relevant to the case." *Id.* at 251 (citation omitted).

Plaintiffs make conclusory allegations that, simply because they have alleged a *Monell* claim against Wexford, no further discussion is required and they are entitled to production of Wexford's quality improvement reviews without restriction.   Yet, no cases stand for this

---

[7] Plaintiff further states that, "the Seventh Circuit articulated this rule even more broadly in *Hamdan*." However, in *Hamdan v. Ind. Univ. Health Northern Hosp., Inc.,* 880 F.3d 416, the court relied on *Shadur* as the Plaintiff similarly asserted peer-review privilege in an employment discrimination case.  Thus, Plaintiff quotes *Hamdan* out of context, where the statement, "this court has declined to recognize a federal peer-review privilege, reasoning that the need for truth outweighs the state's interest in supplying the privilege," language is clearly sourced from *Shadur*, and other discrimination cases, not medical malpractice cases. *Hamdan,* 880 F.3d at 421.

proposition and a case specific analysis is required.  In fact, crucial to the Seventh Circuit's decision in *Northwestern* was that applying the claimed privilege would not interfere significantly in the federal proceedings when the information sought to be protected had, "little, if any, probative value," as it did little to figure significantly in the resolution of the issue in dispute. *Nw. Mem'l Hosp.* 362 F.3d at 927 and 932.  Plaintiffs fail to inform the Court why they could not obtain the information they need to prosecute this case by another means.  Specifically, Plaintiffs have access to the medical records of Mr. Reed and certain prisoners at issue in *Lippert*.  The exclusion of this material from disclosure will not prevent the Plaintiffs from otherwise establishing a valid claim.

Conversely, the harm of not recognizing an expected protection unquestionably outweighs any loss, if any, to the Plaintiffs if this material is not disclosed.  The court in *Sevilla* explained:

> While acknowledging *Jaffee* and *Shadur*, the plaintiff contends that the analytical framework for the instant case is *University of Pennsylvania v. Equal Employment Opportunity Commission*, 493 U.S. 182, 110 S. Ct. 577, 107 L. Ed. 2d 571 (1990). There, the Court refused to recognize an academic peer review privilege in a Title VII case where the issue was discrimination in the granting of tenure to a university professor. *Id.* at 185. Central to that holding was the fact that Congress had carefully weighed the competing and irreconcilably clashing interests and had concluded that the burdens on academic autonomy that might result from disclosure of academic peer review proceedings were outweighed by the need to expose discrimination in tenure decisions in universities through the same enforcement procedures applicable to other employment decisions under Title VII. *University of Pennsylvania*, 493 U.S. at 193…
> **In a medical malpractice case under the FTCA there is no comparable, competing national interest at stake, and thus no need to choose between the lesser of two evils.** Recognizing a peer review privilege furthers the national interest in the protection of the health of the citizenry without compromising any competing and clashing interest, and does no more than require the plaintiff to prove his case with expert evidence unconnected to the peer review materials. That occurs routinely in cases tried throughout the country. The effect on the ultimate truth seeking function of a trial is thus "modest," at worst. *Jaffee,* 518 U.S. at 11-12. **Not recognizing the privilege would inhibit the candor that is essential to effective peer review**, *Shadur* at 1062, and thus frustrate the achievement of what is indisputably a national interest of overarching significance.

*Sevilla v. United States,* 852 F. Supp. 2d 1057, 1061-62 (N.D. Ill. 2012) (emphasis added).  The court in *Sevilla* also concluded:

> **The policy interests behind the peer review privilege in medical malpractice cases, regardless of the forum in which they are tried, are as substantial as any that can be imagined: "Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations."** *Shadur*, 664 F.2d at 1062. See also *Freeman v. Fairman*, 917 F.Supp. 586, 588-589 (N.D.Ill.1996). **The only consequence in not recognizing the privilege is to require the plaintiff in this case to do what plaintiffs in medical malpractice cases are routinely required to do in all other cases, namely adduce proof independent of what occurred in the peer review process.**

*Id.* at 1068-1069 (emphasis added).

As this case concerns allegations of medical malpractice and not discrimination in the granting of tenure, Plaintiff's argument is unpersuasive. Instead, the Court should apply the well-reasoned analysis in *Sevilla* and find that the Illinois legislature created the protections afforded by the Illinois Medical Studies Act, "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of healthcare." *Roach v. Springfield Clinic,* 157 Ill. 2d 29, 623 N.E.2d 246, 251 (1993); See also *Freeman*, 917 F. Supp. at 586. Plaintiffs have not shown any prejudice that outweighs these significant public interests.

Looking specifically at Wexford's quality improvement policy, at the time of Decedent's death, Dr. Matticks was a member of the Clinical Mortality Review Group and also prepared documents to be reviewed by the Group. (Exhibit A, Dr. Matticks' Declaration). [8] Per Wexford's policy, the Clinical Mortality Review Group exists for the express purpose of identifying ways to improve patient care. (Ex. A); (Ex. B). Only medical professionals are members of the Clinical Mortality Review Group. (Ex. A). As such, there are no risk-management Group members, and risk management is not involved in the Group's work. (Ex. A). Risk management would only

---

[8] Dr. Matticks recently prepared this affidavit in response to another matter, but it is being utilized here as the process is the same.

receive reports from the Clinical Mortality Review Group after the review had been completed and subsequently approved by the Regional Medical Director. (Ex. A).

The Illinois Medical Studies Act applies to Wexford as it is a "medical organizations under contract with… other healthcare delivery entities or facility."  While the Act is silent on the definition of a "healthcare delivery facility," other definitions under Illinois law are helpful. In fact, within another portion of the Illinois Code of Civil Procedure, a healthcare facility is defined as including, "any other entity where health care services are provided to any person." 735 ILCS § 5/8-2001(a).[9] Plaintiffs cannot deny that healthcare services are provided at correctional centers, as that is the basis of the alleged claims.[10] See also 725 ILCS §205/8 ("The Director of Corrections as guardian shall provide care and treatment for the person committed to him designed to effect recovery.").  By definition, this would make the IDOC a healthcare delivery facility with which Defendant is under contract with.  Thus, the Illinois Medical Studies Act applies to Defendant.

Similarly, the Long-Term Care Peer Review and Quality Assessment and Assurance Protection Act protects "[a]ll proceedings and communications of a peer review or a quality assessment and assurance committee shall be privileged and confidential and shall not be revealed except pursuant to specific written procedures of the sponsoring organization."  745 ILCS 55/4.

Establishing that the Illinois state privileges apply to Defendant, Wexford's Death Notification and Review policy and Dr. Matticks' affidavit evidence the quality improvement measures in place and that these measures were for the sole purpose of quality improvement and clinical peer review for patient care.  As such, these documents were prepared in accordance with both the Illinois Medical Studies Act and/or Long-Term Care Act, and there is no circumstance in

---

[9] Additionally, the Illinois Statute on Civil Immunities provides a nearly identical definition. 745 ILCS § 70/03(d).

[10] Should Plaintiff dispute this fact, Defendant would owe no duty to decedent and Plaintiff and this case should be dismissed.

the review process that would disqualify these documents from protection under the Illinois Medical Studies Act.  Accordingly, Plaintiffs' Motion to Compel should be denied.

Nonetheless, Plaintiffs' Requests at issue are overbroad, unduly burdensome, and disproportionate to the needs of this case.  Request 25 seeks reviews into all cancer death, at any facility, for a decade.  Request 39 is even more nebulous as it seeks all reviews of the "policies" identified in Request 30.  However, Request 30 does not list policies but lists topics, including "access to medical evaluation or treatment by prisoner; provision of medical care to prisoners, medical services provided at Lawrence; etc."  Plaintiffs seek all documents and communication for anything reviewed for medical care for a decade.  This is everything.  Plaintiffs' requests could not be more overbroad, unduly burdensome, and disproportionate to the needs in this case.  Plaintiffs make no attempt to comply with FRP 26 and it is unavailable due to excessive cost to produce everything to Plaintiffs unrestrained in any meaningful way.  Plaintiffs' Motion to Compel should be denied.

## IV.    Third-Party PHI

Plaintiffs' Motion to Compel does not accurately reflect Defendant's position and only after Plaintiffs filed their Motion to Compel and Defendant requested a meet and confer was this issue raised.  On that call, Defendant addressed the vast overbreadth of Plaintiffs' requests.  For example, the parties discussed RFP 25 that seeks all documentation for all prisoners with cancer for a decade at any facility.  Defendant recommended coming to an agreement on a smaller scope of records and assessing the responses to determine if further production was called for.  For example, limiting to the type of cancer or to the facility with a shortened window of time.  Plaintiffs refused.  Defendant also raised practical concerns about what documents were being requested

(other than QI) since the IDOC is the custodian of medical records.  It remains unclear what Plaintiffs seek and Plaintiffs fail to identify records with reasonable particularity but instead seek:

> Request 23, "Documents relating to any Complaint of any Person alleging any kind of misconduct committed by any Individual Defendant within the scope of his or her employment at Lawrence."

> Request 27, "Documents relating to all Complaints by an IDOC prisoner, or any other Person, concerning delay in diagnosis or treatment of cancer. This request is limited to the past ten years."

> Request 29, all referrals for all prisoners at Lawrence for a decade.

> Request 31, "All Documents, including Communications, regarding Complaints by IDOC employees about the actions of Wexford employees made between January 1, 2013 through January 1, 2020."

> Request 46, all documents related to another legal matter entirely.

It is wholly incorrect that these documents are being withheld due to HIPAA concerns after the HIPAA Order was entered.  Defendant objected that these requests are overly broad and unduly burdensome, as they are not sufficiently "limited in time, scope of medical conditions, geographical location, or in any other way to ensure that it is crafted to seek information relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  FRCP 26(b)(1)."[11]  The Court previously explained that the HIPAA Protective Order is not a discovery order and one of the overarching issues with Plaintiffs' requests is there is no appropriate scope.  Plaintiffs do not even present a justification for the scope of these requests.

---

[11] Additionally, Requests 39 and 41 concern quality improvement measures addressed above and requests 47-60 concern *Lippert* with numerous objections as addressed above.

Looking at Request 27, Plaintiffs provide no justification for a request for all prisoner complaints for a delay in cancer diagnosis for a decade, unrestrained by location, or type of cancer (lungs, breast, cervical, prostate, etc.). The issue here is Mr. Reed's colon cancer where his treating oncologist opined that there was no delay. Whether a prisoner at Logan complained about diagnosis of her breast cancer in 2010 does not make Plaintiffs' claims here more likely or will otherwise lead to admissible evidence. Furthermore, Wexford is not involved in the IDOC grievance process. Plaintiffs could have sought this information from the IDOC, but, on information and belief, the IDOC does not log grievances by medical condition and Plaintiffs requests demand review of any and all. Similarly here, Plaintiffs' request is not readily accessible, especially considered the IDOC population over 40,000 yearly. This request is facially overbroad, unduly burdensome, and unavailable due to excess cost.

Request 29 seeks referrals for all prisoners for any reason at Lawrence for a decade. Whether a prison at Lawrence had dialysis on 2015, or a prisoner had a hernia repair in 2017, cannot possibly be relevant to the claims or defenses in this matter, is disproportionate to the needs of the case, and the burden and expense to review every utilization management record for all prisoners at Lawrence for a decade outweighs any likely benefit. Plaintiffs' requests all fail to comply with FRCP 26 and Plaintiffs refuse to consider a meaningful scope for their requests.

For any of the above reasons, Plaintiffs' Motion to Compel should be denied. Alternatively, as Plaintiffs seek only *Monell* discovery, and in line with Defendant's forthcoming motion, the Court should defer ruling on this motion and issue a Protective Order on *Monell* discovery until there has been a ruling on the dispositive motion for the underlying claim or the Court should bifurcate the *Monell* claim.

WHEREFORE, for the above reasons, Defendant WEXFORD HEALTH SOURCES, INC., respectfully requests this Honorable Court deny Plaintiffs' Motion to Compel or such further relief deemed appropriate.

CASSIDAY SCHADE LLP

By:  /s/ Jaclyn Kinkade
      One of the Attorneys for Defendants WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O.

Jaclyn Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2022, I electronically filed the foregoing with the Clerk of the Court for the Southern District of Illinois using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to the following:

ATTORNEYS FOR DEFENDANT, FAIYAZ AHMED, M.D.:
Keith Hill
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 618.656.7940
khill@heylroyster.com

ATTORNEY FOR DEFENDANT, ILLINOIS DEPARTMENT OF CORRECTIONS:
Tara Barnett
Assistant Attorney General
201 West Pointe Dr., Ste. 7
Swansea, IL 62226
(618) 236-8781
tara.barnett@ilag.gov

ATTORNEYS FOR PLAINTIFFS:
Jon I. Loevy
Stephen H. Weil
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
jon@loevy.com
weil@loevy.com

<u>/s/ Jaclyn Kinkade</u>