IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LENNISHA REED,** *Co-Administrator of the Estate of Lenn Reed,* **and** **LENN REED, JR.,** *Co-Administrator of the Estate of Lenn Reed,* <br><br> **Plaintiffs,** <br><br> v. <br><br> **WEXFORD HEALTH SOURCES, INC.,** *et al.,* <br><br> **Defendants.** | Case No. 20-cv-1139-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Protective Order or to Bifurcate Plaintiffs' *Monell* Claim filed by Defendants Wexford Health Sources, Inc., Vipin Shah, and Stephen Ritz. (Doc. 94). Plaintiffs filed a response in opposition to the motion, and Defendants filed a reply. (Doc. 110, 113). A hearing on the motion was held on April 24, 2023. (Doc. 124). For the following reasons, the motion is denied.

### BACKGROUND

Plaintiffs Lennisha Reed and Lenn Reed Jr., Co-Administrators of the Estate of Lenn Reed Sr., commenced this action on October 28, 2020, claiming constitutional violations pursuant to 42 U.S.C. § 1983 and violations of Illinois state laws. (Doc. 1, 63). Plaintiffs allege that while Lenn Reed Sr. ("Reed") was incarcerated with the Illinois Department of Corrections, medical staff continued to mistreat his complaints of digestive problems and ignore signs of colon cancer. Once tests were performed and Reed was diagnosed with cancer, medical staff proceeded treating and caring for Reed in an unhurried manner. As a result, it became too late for Reed to receive effective

treatment, and he died of cancer in January 2019. Plaintiffs are proceeding with constitutional and state law claims against Defendants. Relevant to Defendants' motion currently before the Court is Plaintiffs' *Monell* claim that Reed's injuries were proximately caused by the policies and practices of Wexford Health Sources, Inc. ("Wexford"). (Doc. 63, p. 15-16).

Disputes regarding *Monell* discovery have been on going in this case. First, Defendants Wexford, Shah, and Ritz objected to Plaintiffs' proposed HIPAA protective order that would protect not only Reed's medical information, but any third-party medical information obtained through discovery. (Doc. 35, 37). The Court found that Plaintiffs demonstrated good cause to enter the new protective order ruling that because Plaintiffs have "asserted a *Monell* claim against Wexford for widespread practice of providing inadequate care, discovery in this case will not be limited to only the protected health information of Reed." (Doc. 40, at p. 4).

Next, Plaintiffs filed a motion to compel responses to a subpoena against the Illinois Department of Corrections ("IDOC"), who is not a party in this case. (Doc. 44). Plaintiffs sought from IDOC the medical information of certain individuals described in the *Lippert* Reports from 2014 and 2018.[1] Plaintiffs argued that the underlying documents they were seeking were appropriate under *Monell* discovery. (*Id.* at p. 7). Defendants Wexford, Shah, and Ritz filed a response in opposition. IDOC entered the case as an interested party and joined in the response. (Doc. 47, 49, 53). Defendants objected to producing any documents in response to requests that pertain to the *Lippert* Reports – medical records and various communications and other documents that discuss or relate to the *Lippert* reports' findings. Defendants and IDOC argued that disclosing the requested documents would violate the orders issued by the *Lippert* court. Defendants and IDOC also argued that the *Lippert* reports themselves are inadmissible hearsay for the purpose of

---

[1] *Lippert v. Ghosh,* No. 10-cv-04603 (N.D. Ill. filed on July 23, 2021), was a class action lawsuit filed in the Northern District of Illinois alleging inadequate healthcare on behalf of all prisoners in the custody of IDOC.

trial and have limited use. IDOC objected to the requests as burdensome and overly broad.

The Court granted the motion to compel. The Court found that producing the documents was not prohibited by orders in the *Lippert* case. (*See discussion at* Doc. 77, p. 7-8).[2] Furthermore, as the *Lippert* court and this Court have repeated, the HIPAA protective order entered in this case adequately protects third party medical information from public exposure. The Court also found the argument that the motion to compel should be denied because the *Lippert* reports are inadmissible hearsay and have limited value at trial not well taken. The Court was "not ruling on whether the *Lippert* reports themselves are admissible" but whether information was relevant for the purposes of discovery. (*Id.* at p. 9) (citations omitted). IDOC had not provided any information to support its contentions that the requests were overly broad and producing the subpoenaed documents would be burdensome. The Court, therefore, could not make a determination on whether the burden imposed by the subpoena was undue.

Finally, to the extent Defendants opposed the motion to compel based on the argument that Plaintiffs' allegations in this lawsuit were not supported by the evidence, the Court observed that it was not "appropriate to argue the merits of a case through motions to compel." (Doc. 77, p. 6) (quoting *NEXT Payment Solutions, Inc., v. CLEAResult Consulting, Inc*., No. 17 C 8829, 2018 WL 3637356, at *17 (N.D. Ill. July 31, 2018)). The Court would not make "findings about whether certain facts have been established or not established to justify *Monell*-related discovery." (*Id.*) (quoting *Prince v. Kato,* No. 18 C 2952, 2020 WL 1874099, at *2 (N.D. Ill. Apr. 15, 2020)).

---

[2] After serving IDOC the subpoena, Plaintiffs also served a subpoena on counsel for the class in *Lippert v. Ghosh*, Uptown People's Law Center ("UPLC"), asking UPLC to produce "documents sufficient to identify the patients discussed in the" 2014 and 2018 reports. *Lippert v. Ghosh*, Doc. 1484, p. 2. UPLC responded to the subpoena confirming that it possessed documents responsive to the subpoena, but it considered the information requested to be covered by the *Lippert* court's protective order. *Id.* at p. 3-4. Plaintiffs successfully intervened in the *Lippert* case, and the *Lippert* court granted their motion to modify the protective order allowing them to access the non-redacted versions of the *Lippert* reports. *Id.* at Doc. 1534. In granting the motion, the *Lippert* court noted that because of the HIPAA qualified protective order in this case, it had "no concerns that [the protective order] will not adequately protect the privacy interests of the inmates listed by description in the public versions of the" reports. *Id.*

Plaintiffs then filed additional motions to compel discovery, which are pending before the Court. (Doc. 81, 92). Defendants Wexford, Shah, and Ritz filed a motion seeking a protective order preventing further *Monell* discovery. (Doc. 94). After the issues were fully briefed, the Court held a hearing on the motions on April 24, 2023. The Court has stayed the discovery deadlines and deferred ruling on the motions to compel. (*See* Doc. 129, 133). The parties were directed to meet and confer and continue to engage in meaningful discovery. Although the motions to compel remaining pending, the Court will now rule on the Motion for Protective or to Bifurcate.

### MOTION FOR PROTECTIVE ORDER OR TO BIFURCATE

In the Motion for Protective Order or to Bifurcate, Defendants argue that Plaintiffs should be prevented from conducting additional discovery regarding their *Monell* claim, as there is no good faith basis to proceed on this claim against Defendant Wexford. Defendants contend that discovery is complete as to the claims against Shah and Ritz, and the evidence is wholly unsupportive of Plaintiffs' allegations regarding these individual defendants. Citing to the Amended Complaint, expert witness disclosures, and deposition testimony, Defendants argue that Plaintiffs have produced no evidence that the care of Reed's colorectal cancer by Shah or Ritz was inappropriate, let alone that no minimally competent provider would have acted similarly. In light of these facts, there is no justification for Plaintiff's pending motion to compel and to continue allowing broad *Monell* discovery spanning over a decade of privilege communication and documentation. Thus, the claims against Defendants are frivolous and further *Monell* discovery should not be allowed.

In the alternative, Defendants ask the Court to bifurcate the *Monell* claim. Wexford argues that Plaintiffs' claims that certain policies and practices caused Reed's death are essentially that the individual providers delayed care to Reed. Plaintiffs' claim against Wexford is dependent on the claims against the individual providers. Absent a finding that Reed's cancer care was

unreasonably delayed on the part of those providing treatment, the claim against Wexford for policies is futile. Therefore, it would preserve judicial economy to address the dispositive motions for the individual claims as an initial matter and sever the *Monell* claim until after a ruling is made on the underlying claims against the individual doctors.

The Federal Rules of Civil Procedure provide for liberal discovery. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." A court, however, must limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative…[,] the party seeking the discovery has had ample opportunity to obtain the information…[,]" or if it is outside the scope permitted by Rule 26(b)(1). *See* FED. R. CIV. P. 26(b)(2). Upon showing of good cause, the Court may also issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…" *See* FED. R. CIV. P. 26(c)(1). "The burden to show good cause is on the party seeking the order." *Autotech Techs. L.P. v. Automationdirect.com, Inc.,* 235 F.R.D. 435, 440 (N.D. Ill., 2006) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)). "To establish good cause, the moving party must provide specific supporting facts, rather than mere allegations or conclusory assertions." *Carolina Cas. Ins. Co. V. Merge Healthcare, Inc.,* No. 11 C 3844, 2011 WL 5589291, at *1 (N.D. Ill. Nov. 16, 2011) (citations omitted).

As for bifurcation, the Federal Rule of Civil Procedure 42(b) provides "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). A district court has broad discretion to bifurcate claims for trial and whether to bifurcate claims is "committed to the discretion of the district court" and "made on a case by case basis."

Defendants have failed to show the existence of good cause necessitating a protective order

to prevent further *Monell* discovery. They have not presented any relevancy arguments or asserted specific facts showing that a protective order should be issued to protect them from "annoyance, embarrassment, oppression, or unduly burden or expense." FED. R. CIV. P. 26(c)(1). *See Heraeus Kulzer, GmbH, v. Biomet, Inc.,* 633 F.3d 591, 598 (7th Cir. 2011). Rather, Defendants have again attempted to argue the merits of Plaintiffs claims in order to prevent discovery. Arguments concerning the merits of this lawsuit are only properly addressed at summary judgment. The Court does not find that *Monell* discovery is irrelevant to Plaintiffs' claims that a Wexford policy or practice caused his injuries and will not enter a enter a blanket order forbidding such discovery.

The Court also does not find that bifurcating the *Monell* claim would promote judicial economy or avoid prejudice. This case is not like *Kitchen v. Burge*, as Defendants argue. *See Kitchen v. Burge*, No. 10 CV 4093, 2012 U.S. Dist. LEXIS 158088, at *11 (N.D. Ill. Nov. 2, 2012). In *Kitchen*, the plaintiff alleged he was beaten and tortured by police officers and that the City of Chicago had a practice "of promoting and concealing beatings and torture." *Id.* Thus, as the court in the Northern District observed, "if the named individual defendants did not coerce a confession from plaintiff through the use of torture, a City policy of encouraging/concealing the use of torture to coerce confessions is…beside the point." *Id.* (internal quotations and citations omitted).

That is not the case here. Plaintiffs do not have to succeed in this action on their claims against Ritz and Shah to obtain a judgment against Wexford pursuant to their *Monell* claims. Although Plaintiffs argue that Ritz and Shah took an "unhurried approach" in treating Reed, a jury may conclude that Ritz and Shah did not act with deliberate indifference in diagnosing and treating Reed's cancer.[3] The jury could still find that Wexford policies and practices caused delay in his diagnosis and treatment, which began before his appointment with Shah in July. As the Seventh Circuit held in *Thomas v. Cook County*

---

[3] Defendants argue that Plaintiff's cancer was already terminal at the time of the first appointment with Dr. Shah in July 2018. (Doc. 94, p. 8).

*Sheriff's Department,* it is possible for a jury to find "that [the individual defendants] were not deliberately indifferent to [the plaintiff's] medical needs, but simply could not respond adequately because of the well-documented breakdowns in the [corporate entity's] policies…" 604 F. 3d 293, 305 (7th Cir. 2010). *See also Glisson v. Ind. Dep't of Corr.,* 849 F. 3d 372, 378 (7th Cir. 2017) ("an organization might be liable even if its individual agents are not"); *Hall v. Funk,* No. 14 C 6308, 2019 WL 1239707, at *3 (N.D. Ill. Mar. 18, 2019) (upholding the jury's finding that the defendant lack the "requisite mental state for liability but that Wexford's policies were nonetheless responsible for a violation of [Plaintiff's] constitutional rights"). Since "individual liability is not a prerequisite to corporate liability in this case," the Court finds that "bifurcating the individual and *Monell* claims will not result in judicial economy." *Arsberry v. Wexford Health Sources, Inc.,* No. 17 CV 50044, 2021 WL 4942039, at *2 (N.D. Ill. Oct. 22, 201).

The Court also does not find that bifurcation would prevent prejudice to any party. Defendants argue that they will "be prejudiced by continuing 'broad' and extensive discovery on Plaintiffs' *Monell* claim when the underlying claims lack merit and are futile." (Doc. 94, p. 2). But, as discussed above, the claim against "Wexford is in no way contingent upon the claims against individual defendants." *Asberry v. Wexford Health Sources, Inc.,* 2021 WL 4942039, at *3. In ruling on a similar motion to bifurcate, the Northern District in *Asberry* held:

> This means that Defendant Wexford would either proceed with discovery concurrently with the other claims or wait until the individual claims have been decided and then move on to *Monell* discovery; there is no situation in which they do not conduct *Monell* discovery. Thus, because bifurcation of the *Monell* claim in this case would decidedly result in two rounds of litigation, it is more likely to frustrate the purposes that Rule 42(b) is meant to promote.

*Id.* Like the *Asberry* court ruled, the Court finds that "any argument relating to the burdensome nature of *Monell* nature of *Monell* discovery is unavailing." *Id.* Because bifurcating would not promote judicial economy or avoid prejudice at this stage in the case, the Court will not bifurcate the claims at this time.

**DISPOSITION**

Accordingly, the Motion for Protective Order or to Bifurcate Plaintiffs' *Monell* Claim is **DENIED.** (Doc. 94).

The parties are **ORDERED** to continue engaging in meaningful discovery. If Defendant Wexford has not done so already, Wexford is **DIRECTED** to produce to Plaintiffs estimates for the cost associated with obtaining and using an electronic discovery platform, as discussed at the status conference on July 26, 2023, by **August 4, 2023.** This matter will be set for status conference in a separate order.

**IT IS SO ORDERED.**

**DATED:   August 1, 2023**

                                                   *s/Stephen P. McGlynn*
                                                   **STEPHEN P. MCGLYNN**
                                                   **United States District Judge**