IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Lennisha Reed, *et al.*,<br><br>    Plaintiff,<br><br>    v.<br><br>Wexford Health Sources, Inc., *et al.*,<br><br>    Defendants. | Case No. 3:20-cv-1139-SPM |

**PLAINTIFF'S MOTION TO COMPEL**

Pursuant to Federal Rule of Civil Procedure 37, plaintiff Plaintiffs in this matter, through their undersigned counsel, move the Court to compel defendant Wexford Health Sources, Inc. to comply with the rules of discovery in responding to Plaintiff's discovery requests. A Rule 37 motion substantively identical to this one is being filed in *Wiley v. Wexford Health Sources, Inc.*, Case No. 3:21-cv-00599-DWD (S.D. Ill.).[1]

This dispute arises from three basic problems arising from the gathering and review of documents pursuant to the parties' agreed ESI search protocol.

*First*, though Wexford gathered *Lippert*-related documents using ESI search terms, it put on blinders on in reviewing the documents for responsiveness. The parties' "*Lippert*" search terms returned approximately 2,000 non-privileged documents. When reviewing these documents for responsiveness to Plaintiff's discovery, Wexford, without telling Plaintiffs, ignored nearly every one of Plaintiffs' discovery requests, confining its responsiveness review to a single topic that was guaranteed to return virtually no responsive documents. As a result, of

---

[1] As this Court is aware, *Monell* discovery has effectively been consolidated in this case and in *Wiley*, as both cases involve essentially identical *Monell* claims; policy-and-practice discovery has been sought through essentially identical discovery requests; and the parties have agreed to a single search protocol to gather *Monell* documents in both cases.

1

the 2,000 documents it reviewed, Wexford identified *only 18* as responsive to Plaintiffs' discovery. When Plaintiff counsel confronted Wexford with this lapse, Wexford's counsel refused to review the production for responsiveness to any of the other requests.

*Second*, during the parties' meet-and-confer process regarding the *Lippert* documents, Wexford revealed to Plaintiff counsel, for the first time, that Wexford's executives had avoided the use of email to communicate about the information in the *Lippert* reports, and instead had communicated about the *Lippert* reports by holding meetings.

Upon learning that Wexford executives used meetings to avoid communicating about the *Lippert* reports via email, Plaintiff counsel asked Wexford to search for and produce any notes that the executives had taken at the meetings. Wexford has refused, claiming that by agreeing to ESI search terms, Plaintiffs had voluntarily confined the scope of document collection in this case. But when the parties were designing the search protocol, Wexford never revealed that its executives had avoided the use of email in favor of meetings. Had Plaintiffs been told that Wexford executives had avoided the use of email to talk about the *Lippert* reports, Plaintiff counsel would have insisted on a different search protocol to gather responsive documents.

*Third*, as part of her revelation that Wexford executives had used meetings to avoid communicating via email, Wexford's counsel revealed that the *Lippert* search terms had hit on numerous computerized "invitations" for those meetings. Plaintiff counsel asked Wexford to produce those invitations, but Wexford refused.

***

Wexford continues to evade *Monell* discovery. The Court should put an end to this and order Wexford to respond to Plaintiffs' discovery in an orderly manner.

**BACKGROUND**

At the outset of this case, Plaintiffs served multiple discovery requests on Wexford to gather information relating to their *Monell* claims. Broadly speaking, this *Monell* discovery fell into two categories: **(1)** Wexford's response to the expert reports submitted in the *Lippert* case, which were highly critical of the care Wexford provided; and **(2)** Wexford's efforts generally to identify deficiencies or problems in certain aspects of its delivery of medical care.

Plaintiff counsel attempted Rule 37 enforcement of this discovery, in both cases, for months.  Eventually, Plaintiff counsel brought motions to compel responses to the requests in both *Wiley* (*Wiley* ECF 86) and in *Reed* (*Reed* ECF 81).  On February 13, 2023, Judge Daly, in *Wiley*, issued an order granting in part Plaintiff's motion to compel on certain discovery requests, and ordered Wexford to produce documents going to Wexford's response to the *Lippert* reports and to Wexford's efforts to identify problems with its medical care generally.  *Wiley* ECF 107 at 11.  In light of this ruling, the *Reed* court stayed a ruling on the motions to compel in that case while the parties worked to comply with Judge Daly's order.  *See Reed* ECF 126 at 9:18-10:3 (Apr. 24, 2023 Hrg. Tr.).

To comply with Judge Daly's order, Plaintiff counsel proposed an ESI protocol to Wexford.  In doing so, Plaintiff counsel repeatedly invited Wexford to identify likely custodians, repositories, and search terms in order to target the discovery.  Wexford repeatedly declined to do so.  As Plaintiff explained during the April 24 hearing in *Reed*:

> We are perfectly willing to talk custodians, search terms, document repositories, dates of where these communications likely occurred. We've never had the discussion and we've offered repeatedly to do so.
> . . . .
> We stand on the outside as the Plaintiffs and we are looking at a corporation that we don't understand, and we have invited Wexford over and over again to talk about these basic things . . . .

3

*Reed* Hearing Tr. 32:19-22; 33:2-5 (Apr. 24, 2023) (ECF 126).[2]

With no information from Wexford about likely repositories of responsive information, Plaintiff counsel set about creating search terms for the gathering of documents from Wexford's email system. Plaintiff counsel provided the terms to Wexford, which would run the searches on the email system, and then report a hit count to Plaintiff counsel, who would then narrow the terms. Over several iterations of narrowing the terms, the parties agreed on a final set of search terms: three searches containing terms relating to the *Lippert* reports, and several others regarding the remainder of the *Monell* discovery.

**Wexford's selective responsiveness review.** On September 14, 2023, the parties held a telephone conference to go over the results of the three *Lippert* searches, which Wexford had agreed to review first. Wexford counsel reported that the three *Lippert* searches had resulted in 3,815 documents, a "majority" of which did not include attorneys and thus were not exempted from review (Wexford declined to specify the exact number; Plaintiff thus estimates the number at 2,000). Wexford counsel reported that of these documents, **only 18** were responsive to Plaintiffs' discovery. Confused at how this could be so, Plaintiffs asked what discovery requests Wexford was considering for responsiveness. Wexford revealed, for the first time, that it had confined its responsiveness analysis to a single topic: Judge Daly's order that Wexford produce

> documents and/or communications that memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates.

*Wiley* ECF 107 at 11. No wonder Wexford had identified so few responsive documents: Wexford disputes that the *Lippert* reports identified any real problems at all, and thus claims

---

[2] After this hearing, Wexford did suggest four custodians. It made no suggestions regarding document repositories or search terms, however.

there is nothing to fix in the first place. A review limited only to documents showing Wexford fixing problems identified in the *Lippert* reports was bound to return almost nothing.

Plaintiffs pointed out to Wexford that Plaintiff's actual *Lippert* discovery includes basic requests like:

> 49. Produce all Documents or Communications discussing or relating to the 2014 *Lippert* Report's descriptions of medical care provided to persons with cancer.
>
> 50. Produce all Documents or Communications discussing or relating to the 2014 *Lippert* Report's descriptions of purported delay in providing medical care.
>
> 51. Produce all Documents or Communications discussing or relating to the 2014 *Lippert* Report's descriptions of the medical care provided to IDOC prisoners.
>
> 52. Produce all Documents and Communications discussing or relating to any actual or potential changes in policies, practices, rules, protocols, procedures, budgeting, recruiting, training, retention, or discipline, in light of the information contained in the 2014 *Lippert* Report.
>
> 53. Produce all documents relating to any reprimands, sanctions, discipline, demotion, or any other sanction imposed on any person in whole or in part because of medical care described in the 2014 *Lippert* Report . . . .

*See Reed* ECF 82-1 ¶¶ 49-53.[3]  These are examples only; the documents reviewed should have been considered against all of Plaintiffs' *Monell* discovery in *Wiley* and *Reed*.  Wexford's counsel, however, refused to conduct a relevance review of the 2,000 documents for these requests, or any others, saying Wexford's review of the *Lippert* documents was over.

***Failure to disclose Lippert meetings.***  During the parties' September 14, 2023 telephone conference, Wexford's counsel also told Plaintiffs that the ESI search terms were unlikely to turn up many responsive emails, because Wexford's executives had used meetings to avoid

---

[3] Plaintiffs made identical requests for the 2018 *Lippert* Report. *See Reed* ECF 82-1 ¶¶ 56-60.

communicating about the *Lippert* reports via email. This was the first time that Wexford had revealed this information to Plaintiff counsel.

In light of this revelation, Plaintiff counsel asked Wexford's counsel to locate and produce notes taken by participants at the meetings. Wexford's counsel refused, claiming that by agreeing to an ESI protocol, Plaintiffs had agreed to limit the scope of documents to be searched.

Additionally, Wexford counsel noted that the "*Lippert*" search terms had hit on a number of computerized meeting invitations (presumably, the meetings Wexford executives used to avoid communicating by email). Plaintiff counsel asked that these invitations be produced, as they were responsive to Plaintiffs' discovery requests. Wexford counsel refused.

The parties determined that they were at issue, and this motion follows.

## ARGUMENT

Plaintiff served the *Lippert* discovery in *Reed* in April 2021. It served the same discovery in *Wiley* in March 2022. So far, Wexford has not produced a single document in response, despite years of enforcement efforts. That frustrating trend continues.

***Wexford's selective responsiveness review***. The *Lippert* hit counts returned 3,815 documents—a universe of documents that Wexford and Plaintiffs both agreed was reasonable to review. Wexford needed to review only approximately 2,000 of those documents for responsiveness.

In conducting that review, however, Wexford unilaterally confined its responsiveness review to the four corners of the Feb. 13 Order, *see Wiley* ECF 107 at 11, such that Wexford's counsel only considered responsive documents that would reflect Wexford's efforts to "address" problems identified in the *Lippert* reports. Wexford had to know that this would return a negligible number of "responsive" documents: Wexford's position is that the *Lippert* experts are

6

wrong, so there was nothing to fix.  That this review returned **only 18** responsive documents is no accident.

Wexford's selective review allowed it to ignore discovery going to core questions in in both *Wiley* and *Reed*: what did Wexford executives know about the problems identified in the *Lippert* reports, and when did they know it?  And, did Wexford make a serious effort to figure out whether or not criticisms in the *Lippert* reports were valid?  Reviewing the 2,000-odd *Lippert* documents for responsiveness to these requests cannot possibly be unduly burdensome.  Wexford's selective elimination of these requests from its responsiveness review serves no purpose except to shield relevant and easily gathered information from the truth-seeking process.  Wexford should not be permitted to do this.  The Court should order it to review the 2,000 *Lippert* documents for responsiveness to all of Plaintiffs' discovery requests.

***Wexford's refusal to search for meeting notes.***  Wexford has refused to search for meeting notes on grounds that in creating the ESI protocol, Plaintiff counsel voluntarily agreed to limit the scope of discovery in this case.  That argument is untenable.   Parties are expected to cooperate in discovery.  *Cary v. Ne. Illinois Reg'l Commuter R.R. Corp.*, No. 19-cv-3014, 2021 WL 678872, at *1 (N.D. Ill. Feb. 22, 2021).  In the context of developing a search protocol, "[i]nput from the producing party is particularly important, as that party is most familiar with its own records and thus has insight" on the likely locations of responsive documents.  *Cohen v. Allegiance Administrators, LLC*, No. 2:20-CV-3411, 2022 WL 325027, at *2 (S.D. Ohio Feb. 3, 2022).  That means that "[i]f asked, [responding parties] must offer specific suggestions" for adjusting search protocols to "retriev[e] as many of the relevant documents . . . as possible." *L–3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015).

This, of course, makes sense. As the party responding to discovery, it is **Wexford** that has the obligation to locate, gather, and produce documents responsive to Plaintiff's Rule 34 discovery requests. A search protocol like the one the parties negotiated in this case is only a negotiated means of doing so. But in working out such a search protocol, Wexford cannot hide the ball by failing to disclose the likely location of responsive documents, particularly if it is asked. And here, Plaintiff counsel asked Wexford, repeatedly, to provide information about likely repositories of responsive documents so that an effective search protocol could be created. Wexford never did so, allowing Plaintiffs to proceed with a search protocol aimed at the wrong target—email—when all along Wexford knew its executives avoided communicating that way.

In failing to cooperate in developing a search protocol that was targeted at potentially responsive documents, Wexford has failed to comply with its obligations under Rule 34. It should be compelled to gather any written materials from the meetings in question. Given that Wexford executives avoided communicating on company email, moreover, Plaintiffs should also be permitted to gather other documents, like voicemails, personal emails, and paper communications created by Wexford policymakers regarding the criticisms contained in the *Lippert* reports and Plaintiff's *Monell* discovery generally.

**Wexford's refusal to produce *Lippert* meeting invitations**. Electronic invitations to meetings about the *Lippert* reports are responsive to Plaintiffs' discovery, which states that the term "'Communications' . . . includes but is not limited to letters, memoranda, e-mail, notes, audio recordings, video recordings, SMS or text messages, Tweets, and other exchanges on social media." The meeting invitations may prove to be important evidence in the case, as they may constitute the only means of giving context to show when Wexford executives communicated with each other about the *Lippert* reports, and who was at the meetings when

discussions about *Lippert* occurred.  Wexford has identified no grounds for refusing to produce these documents, and its refusal to do so appears to be nothing more than an effort to execute on its plan to prevent people harmed by its medical practices to learn anything about how its executives developed those practices at the corporate level.

## CONCLUSION

Wexford must stop evading *Monell* discovery.  Plaintiffs respectfully request that the Court Wexford to (1) review the *Lippert* searches for responsiveness to all Plaintiff discovery requests; (2) search for and produce responsive meeting notes, minutes, and other documents responsive to Plaintiffs' *Monell* discovery; and (3) search for and produce responsive meeting invitations.

Respectfully submitted,

By: /s/ *Stephen H. Weil*

*One of Plaintiffs' Attorneys*

Stephen Weil
Maria Makar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
weil@loevy.com