IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LENNISHA REED,** *Co-Administrator of the Estate of Lenn Reed,* and **LENN REED JR.,** *Co-Administrator of the Estate of Lenn Reed,* **Plaintiff,** v. **WEXFORD HEALTH SOUCES, INC.,** *et al.,* | **Case No. 20-cv-01139-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion to compel production of discovery filed by Plaintiffs against Defendant Wexford Health Sources, Inc. ("Wexford") and a motion to compel the Illinois Department of Corrections to respond to a subpoena also filed by Plaintiffs. (Doc. 81, 92). For the following reasons, the motions will be denied without prejudice.

### BACKGROUND

Plaintiffs Lennisha Reed and Lenn Reed Jr., Co-Administrators of the Estate of Lenn Reed Sr., commenced this action on October 28, 2020, claiming constitutional violations pursuant to 42 U.S.C. § 1983 and violations of Illinois state laws. (Doc. 1, 63). Plaintiffs allege that while Lenn Reed Sr. ("Reed") was incarcerated with the Illinois Department of Corrections, medical staff continued to mistreat his complaints of digestive problems and ignore signs of colon cancer. Once tests were performed and Reed was diagnosed with cancer, medical staff proceeded treating and caring for Reed in an unhurried manner. As a result, it became too late for Reed to receive effective treatment, and he died of cancer in January 2019. Plaintiffs are proceeding with constitutional and

state law claims against Defendants.

Prior to the filing of the current motions, the Court has addressed previous discovery disputes between the parties in this case. First, Defendants Wexford, Shah, and Ritz objected to Plaintiffs' new proposed HIPAA protective order that would protect not only Reed's medical information, but any third-party medical information obtained through discovery. (Doc. 35, 37). The Court found that Plaintiffs demonstrated good cause to enter the new protective order in this case. (Doc. 40). The Court stated that because Plaintiffs have "asserted a *Monell* claim against Wexford for widespread practice of providing inadequate care, discovery in this case will not be limited to only the protected health information of Reed." (*Id.* at p. 4).

Next, Plaintiffs filed a motion to compel responses to a subpoena against the Illinois Department of Corrections ("IDOC"), who is not a party in this case. (Doc. 44). Defendants Wexford, Shah, Ritz, and Ahmed filed a response in opposition. IDOC entered the case as an interested party and joined in the response. (Doc. 49, 53). Plaintiffs sought from IDOC the medical information of certain individuals described in the *Lippert* Reports from 2014 and 2018.[1] IDOC objected to producing any documents in response to requests that pertain to the *Lippert* Reports – the requests for medical records and the various communications and other documents that discuss or relate to the *Lippert* reports' findings. IDOC argued that the documents sought in each of the requests were "confidential pursuant to the Court Orders" that have been entered in *Lippert*. IDOC also objected to the requests as burdensome and overly broad. Defendants and IDOC also argued that the *Lippert* reports themselves are inadmissible hearsay for the purpose of trial and have limited use.[2]

---

[1] *Lipper v. Ghosh,* No. 10-cv-04603 (N.D. Ill. *filed on* July 23, 2021), was a class action lawsuit filed in the Northern District of Illinois alleging inadequate healthcare on behalf of all prisoners in the custody of IDOC.
[2] After serving IDOC the subpoena, Plaintiffs also served a subpoena on counsel for the class in *Lippert v. Ghosh*, Uptown People's Law Center ("UPLC"), asking UPLC to produce "documents sufficient to identify the patients discussed in the" 2014 and 2018 reports. *Lippert v. Ghosh*, Doc. 1484, p. 2. UPLC responded to the subpoena

The Court granted the motion to compel. (Doc. 77). The Court found that producing the documents were not prohibited by orders in the *Lippert* case. (*See discussion at* Doc. 77, p. 7-8). Furthermore, as the *Lippert* court and this Court have repeated, the HIPAA protective order entered in this case adequately protects third party medical information from public exposure. The Court also found the argument that the motion to compel should be denied because the *Lippert* reports are inadmissible hearsay and have limited value at trial not well taken. The Court was "not ruling on whether the *Lippert* reports themselves are admissible" but whether information was relevant for the purposes of discovery. (*Id.* at p. 9) (citations omitted). Finally, IDOC had not provided any information to support its contentions that the requests were overly broad and producing the subpoenaed documents would be burdensome. The Court therefore could not make a determination on whether the burden imposed by the subpoena was undue.

On November 18, 2022, Plaintiffs filed a motion seeking to compel production requests from Defendant Wexford pertaining to documents related to the *Lippert* reports and Wexford practices and policies. (Doc. 81). A few weeks later, Plaintiffs also filed a second motion to compel against IDOC. (Doc. 92).[3] The Court held a hearing on the motions to compel on April 24, 2023. (Doc. 124). The Court deferred ruling on the motions and instructed the parties to continue engaging in meaningful discovery. Since that time, the Court has since conducted four status conferences to track the parties' progress. (Doc. 129, 133, 137, 140). Discovery and dispositive motions deadlines have been vacated and have not been reset.

---

confirming that it possessed documents responsive to the subpoena, but it considered the information requested to be covered by the *Lippert* court's protective order. *Id.* at p. 3-4. Plaintiffs successfully intervened in the *Lippert* case, and the *Lippert* court granted their motion to modify the protective order allowing them to access the non-redacted versions of the *Lippert* reports. *Id.* at Doc. 1534. In granting the motion, the *Lippert* court noted that because of the HIPAA qualified protective order in this case, it had "no concerns that [the protective order] will not adequately protect the privacy interests of the inmates listed by description in the public versions of the" reports. *Id.*

[3] During this time, Defendants Shah, Ritz, and Wexford filed a motion for a protective order preventing further *Monell* discovery or in the alternative bifurcate the issue. (Doc. 94). The Court denied the motion. (Doc. 134).

**MOTIONS TO COMPEL**

I. **Motion to Compel Responses to Subpoena against IDOC (Doc. 92)**

Plaintiffs served a subpoena on IDOC seeking (1) documents and communications regarding certain Wexford patients who were identified as receiving inadequate medical care by the court-appointed experts in the *Lippert* case; and (2) documents and other communications relating to the *Lippert* reports and related matters. IDOC objected to the requests as unduly burdensome. (Doc. 120).

Since the hearing on April 24, 2023, Plaintiffs and IDOC appear to be working well together to resolve their issues without Court interference. IDOC has reported that they have gained access to document review platform to assist in discovery.[4] At the most recent status conference, the parties reported that searches and review of documents for responsiveness and privilege are being conducted and that the first set of documents would be produced soon. Despite the acquisition of a document review platform, it appears that the agreed upon search terms have still yielded a large number of documents. Plaintiffs communicated that they would work with IDOC to narrow the search terms further. Accordingly, the motion to compel subpoena responses is denied without prejudice. The Court sees no reason to compel production, as IDOC is making efforts to produce the documents requested.

The Court further denies IDOC's request to shift the costs of discovery to Plaintiffs without prejudice. (Doc. 120). If at the conclusion of production, IDOC still believes that Plaintiffs should pay for costs incurred as a result of responding to the subpoena, IDOC may file the appropriate motion.

---

[4] IDOC's lack of technology that can "perform basic filtering" was Plaintiffs' main complaint in the motion to compel. Plaintiffs argued that the large results yielded from the designated search terms was due to IDOC's own making because IDOC refused to use a document review program, characterized as "basic search technology."

II.     **Motion to Compel against Wexford (Doc. 81)**

In Plaintiffs' motion to compel filed against Wexford, Plaintiffs seek two main groups of documents: (1) documents relating to information found in the 2014 and 2018 *Lippert* reports (Production Requests #47-60); and (2) documents relating to Wexford's written policies about the delivery of medical care, actual practices regarding the delivery of medical care, and Wexford's efforts to identify any deficiencies in its written policies or actual practices (Production Requests #30, #38, and #39).

Wexford argued in opposition that Plaintiffs did not comply with the requirement of Federal Rule of Civil Procedure 37 to make a good faith effort to confer with opposing counsel prior to filing the motion. Wexford further opposed the motion because the documents relating to the *Lippert* report were overly broad, unduly burdensome, and disproportional to the needs of this case. As to the requests for documents concerning policies and practices, Wexford stated that it has not refused to respond to these requests, but that Plaintiff has asked for unwritten policies, which is nonsensical, and has failed to identify with reasonable particularity what it is they seek. The parties also disagree on whether Wexford may assert peer review privilege, as provided under Illinois state law in this case.

At the April 24 hearing, the Court observed that Plaintiff had not met the obligation to meet and confer prior to filing the motion to compel against Wexford. The Court also recognized that in the civil case *Wiley v. Wexford,* involving different plaintiffs but similar allegations against Wexford regarding inadequate medical care and similar discovery disputes, Wexford was ordered to produce discovery that overlapped with the discovery disputed in this case. *See Wiley v. Wexford,* 21-cv-599-JPG-RJD, 2023 WL 1967468 (S.D. Ill. Feb. 13, 2023). Because some of the issues might resolve themselves once the parties engaged in further discussion and the discovery in *Wiley* was produced, the Court deferred ruling on the motion to compel against Wexford. The

parties were instructed to continue to work together to narrow down the discovery disputes.

As Wexford and Plaintiffs continued to engage in discovery, they agreed to an ESI protocol. Under the ESI protocol, the searches yielded over 85,000 documents. Wexford asked Plaintiffs to narrow down the search for the other custodians, and Plaintiffs have agreed. However, Plaintiffs further argued that the thousands of documents produced as a result of the search terms could be efficiently reviewed for privilege using a document review platform. At the time of the status conference on July 26, 2023, Wexford did not know the price of obtain this additional technology. Wexford was directed to produce to Plaintiffs estimates for the costs associated with obtaining and using an electronic discovery platform. (Doc. 134).

At the September 5, 2023, status conference, the parties reported that progress was being made. Wexford stated that documents responsive to the searches were being reviewed for privilege, and the documents would be produced soon. The Court set another status conference for September 26, 2023. The day of the status conference, Plaintiffs filed a new motion to compel against Wexford. (Doc. 139). At the status conference, Plaintiffs stated that still in dispute are documents that were not produced which were responsive to the search term "Lippert" and to discovery requests. This issue is more fully discussed in the new motion to compel.

As discovery has evolved, due to the parties' ongoing efforts to work together to resolve the issues raised in the original motion to compel, it is no longer clear specifically which production requests remain outstanding and in dispute. Additionally, the new motion to compel recently filed by Plaintiffs seems to narrow the discovery disputes between Wexford and Plaintiffs down to three main issues. Therefore, in light of this new motion, the Court denies the motion to compel against Wexford without prejudice at this time. (Doc. 81). Wexford is ordered to respond to the new motion to compel on or before October 10, 2023. (*See* Doc. 139).

### REQUESTS TO SEAL

Finally, the Court will address the requests to seal parts of the record. Along with the response to Plaintiffs' November 18 motion to compel, Wexford filed a motion requesting leave to file an exhibit, Exhibit B, to the response under seal. (Doc. 87). Wexford filed the response and Exhibits A and C on the public record and Exhibit B under seal. (Doc. 88, 89). Exhibit B is the guideline for the Clinical Morality review and certain blank forms that are utilized during the mortality review process. Wexford argues that "given the highly sensitive, proprietary, and confidential nature of these trade secret records," they cannot be filed publicly. Wexford contends that the documents would be very valuable to its competitors if publicly released. Plaintiffs do not oppose the motion.

Plaintiffs filed a reply brief at Doc. 93 and then a corrected reply brief at Doc. 97. Both reply briefs quote a passage from the mortality review sheet of Reed's death prepared by the Illinois Department of Corrections. At Wexford's request, Plaintiffs submitted a motion to strike both replies (Doc. 103), and motion for leave to file underseal an unredacted version of the reply and a version of the reply with the mortality review paragraph redacted. (Doc. 104). Wexford argues that the inclusion of the language from the mortality review runs afoul of the state law peer-review privilege. Although Plaintiffs oppose Wexford claiming the privilege to prevent discovery, they do not oppose redacting the language from their public filing.

The Court will grant the motions to seal. The Court has denied the motions to compel based on the parties' ongoing efforts to resolve their discovery disputes and due to the new motion to compel narrowing the issues between Plaintiffs and Wexford. Accordingly, these documents, at this stage, have not impacted the disposition of this litigation, and the privacy interests asserted outweigh the interests of the public. *See Melton v. Pavilion Behavior Health Sys.,* No. 17-2112, 2020 WL 13679915, at *2 (C.D. Ill. June 30, 2020) ("A court should permit the sealing of

documents only if there is good cause to do so, that is, the property and privacy interests of the movant outweigh the interests of the public in full transparency of the judiciary." (quoting *Jeffords v. BP Products North America, Inc.*, No. 15-cv-55-TLS-JEM, 2018 WL 527933 at *1 (N.D. Ind. Jan. 24, 2018))).

### DISPOSITION

For the reasons stated above, the Motion for Leave to File Under Seal filed by Wexford Health Sources, Inc. is **GRANTED**. (Doc. 87).

The Motion to Strike Documents 93 and 97 filed by Plaintiffs is **GRANTED**. (Doc. 103). The Clerk of Court is **DIRECTED** to **STRIKE** and to **SEAL** Documents 93 and 97. The Motion for Leave to File Under Seal filed by Plaintiffs is **GRANTED.** (Doc. 104).

The motion to compel filed by Plaintiffs against Wexford Health Sources, Inc. and the motion to compel filed by Plaintiffs against the Illinois Department of Corrections are **DENIED without prejudice.** (Doc. 81, 92).

Wexford Health Sources, Inc. **SHALL** file a response to the September 26, 2023, motion to compel by **October 10, 2023.**

**IT IS SO ORDERED.**

**DATED:** September 28, 2023

                                                  *s/Stephen P. McGlynn*
                                                  **STEPHEN P. MCGLYNN**
                                                  **United States District Judge**