IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LENNISHA REED,** *Co-Administrator of the Estate of Lenn Reed,* and **LENN REED JR.,** *Co-Administrator of the Estate of Lenn Reed,* **Plaintiff,** v. **WEXFORD HEALTH SOUCES, INC.,** *et al.,* | Case No. 20-cv-01139-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a second motion to compel filed by Plaintiffs against Defendant Wexford Health Sources, Inc. (Doc. 139). For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiffs Lennisha Reed and Lenn Reed Jr., Co-Administrators of the Estate of Lenn Reed Sr., commenced this action on October 28, 2020, claiming constitutional violations pursuant to 42 U.S.C. § 1983 and violations of Illinois state laws. (Doc. 1, 63). Plaintiffs allege that while Lenn Reed Sr. ("Reed") was incarcerated with the Illinois Department of Corrections, medical staff continued to mistreat his complaints of digestive problems and ignore signs of colon cancer. Once tests were performed and Reed was diagnosed with cancer, medical staff proceeded treating and caring for Reed in an unhurried manner. As a result, it became too late for Reed to receive effective treatment, and he died of cancer in January 2019. Relevant to Plaintiffs' motion currently before

the Court is the *Monell* claim asserting that Reed's injuries were proximately caused by the policies and practices of Wexford Health Sources, Inc. ("Wexford"). (Doc. 63, p. 15-16).

On November 18, 2022, Plaintiffs filed a motion to compel against Wexford seeking to require the production of documents pertaining to the *Lippert* reports[1] (Requests #47-60) and Wexford practices and policies (Requests #30, 38, and 39). (Doc. 81). Around the same time, a similar motion to compel was filed in the case *Wiley v. Young,* No. 21-cv-599-DWD, Doc. 86 (S.D. Ill. Nov. 30, 2022).[2] There are several similarities between this litigation and the *Wiley* case. The plaintiff in *Wiley,* Keyana Wiley, filed the lawsuit as the Administrator of Omar McCullough's Estate and is represented by the same attorneys as Plaintiffs Lennisha and Lenn Reed. Plaintiff Wiley asserts that while incarcerated within the Illinois Department of Corrections McCullough complained of gastrointestinal symptoms. *See Wiley,* 2023 WL 1967468, at *1 (S.D. Ill. Feb. 13, 2023). In 2019, McCullough was diagnosed with intestinal cancer. Soon after his release, McCullough died in March 2020. Like in this case, the plaintiff in *Wiley* asserts that:

> Defendants were deliberately indifferent to Omar McCullough's serious medical needs in violation of the Eighth Amendment to the United States Constitution. She further alleges that Defendants committed medical malpractice and are liable for Omar McCullough's pain and suffering and wrongful death.

*Id.*

On February 13, 2023, Magistrate Judge Daly issued a ruling on the motion to compel in *Wiley* and granted the motion in part*. Wiley,* 2023 WL 1967468, at *1. Regarding the requests for production concerning the *Lippert* reports, Judge Daly agreed with the plaintiff's argument that

---

[1] *Lippert* was a class action lawsuit filed in the Northern District of Illinois alleging inadequate healthcare on behalf of all prisoners in the custody of IDOC. The two *Lippert* reports, produced by experts and were submitted in 2014 and 2018, describe numerous instances of inappropriate medical care provided to IDOC prisoners, including multiple examples of inappropriate care provided to cancer patients. *See Lippert v. Ghosh*, No. 10-cv-04603 (N.D. Ill. *filed on* July 23, 2010).
[2] Requests for Production #47-60 and #30, 38, and #39 served in this case are nearly identical to those served in *Wiley*. *See Wiley v. Young,* Doc. 81-1 (S.D. Ill., motion to compel filed November 30, 2022).

"whether Wexford made changes or contemplated making changes to its policies and procedures because of the *Lippert* reports is highly relevant to the issue of whether Wexford had a widespread practice of delaying offsite diagnostic service." 2023 WL 1967468, at *2. Although the information was relevant, Judge Daly stated that the plaintiff "failed to draft most of the requests at issue in any sort of meaningful way the reflects her claims against Defendants." Thus, Judge Daly limited the requests for production concerning the *Lippert* reports. Wexford was directed to produce the following:

> [A]ll documents and/or communications that memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates. Some examples of these deficiencies include, but are not limited to, the inmates listed in the subparagraphs of Plaintiff's Requests for Production #47 and #54. Communications between outside counsel (meaning, attorneys that work at law firms retained by Wexford) and Wexford that "memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates" need not be produced or included on the privilege log.

*Id.* at *2-3. Wexford was also directed to produce all documents responsive to the plaintiff's requests for production #47 (a)-(e) and #60 (a)-(c), (e), (g)-(q), and (s).

As to the plaintiff's requests for production relating to Wexford polices and practices, Judge Daly agreed with Wexford that most of the topics listed "are either irrelevant (e.g., utilization review management) or so overly broad that Defendant could not possibly respond in any sort of meaningful fashion…" *Id.* at * 5. Thus, Judge Daly ordered for Wexford to produce:

> Documents that refer to Wexford's unwritten customs and practices since 1/1/2014, but before July 1, 2019, within the IDOC regarding (1) diagnosis, evaluation, treatment for colon cancer; and (2) diagnosis, evaluation, and treatment for sudden or dramatic weight loss.

*Id.* at *5.

The Court held a hearing on the motion to compel in this case on April 24, 2023. (Doc. 124). The Court deferred ruling on the motion. The Court noted that while the discovery requests at issue were almost identical to those in *Wiley*, it did not appear that Plaintiffs had properly met and conferred pursuant to Federal Rule of Civil Procedure 37 prior to filing the motion to compel in this litigation. (*See* Doc. 126, p. 18). Furthermore, the Court recognized that production of the documents ordered to be produced by Wexford in *Wiley* may narrow down the parties' disputes or moot issues raised. Thus, the parties were directed to continue to meet and work in good faith to resolve their disputes. The motion remained pending as the parties continued to conduct discovery.

On September 25, 2023, Plaintiffs filed the second motion to compel against Wexford that is currently before the Court. (Doc. 139). Because discovery had evolved since the filing of the first motion to compel and the new motion to compel seemed to narrow the discovery disputes between Plaintiffs and Wexford, the first motion to compel was denied without prejudice. (Doc. 142).

## MOTION TO COMPEL

In the current motion to compel, Plaintiffs continue to seek to compel discovery related to the *Lippert* reports. Plaintiffs state that Wexford has conducted three searches for *Lippert* related documents using ESI search terms as agreed upon by the parties. (Doc. 139, p. 4). After conducting the searches, Wexford reported that the three searches yielded 3,815 documents, a "majority of which did not include attorneys and thus were not exempted from review." (*Id.*). Although a number has not been specified, Plaintiffs assume that the number of nonprivileged documents is around 2,000. From these nonprivileged documents, Wexford reported to Plaintiffs that only 18 documents were responsive to their discovery requests. Wexford had confined its responsiveness analysis to the production request as modified in Judge Daly's order in *Wiley*:

> [A]ll documents and/or communications that memorialize or discuss Wexford's efforts (if any) prior to July 1, 2019 to address the deficiencies in the *Lippert* reports regarding the untimely diagnoses of cancer and other life-threatening conditions for IDOC inmates.

Plaintiffs argue that the documents reviewed should have been considered against all of their *Monell* discovery requests in *Wiley* and this case. (*Id.* at p. 5). They further contend that now that the number of documents has been reduced, Wexford cannot refuse to consider whether any of the gathered documents are responsive to all of Plaintiffs' production requests based on prior objections of overbreadth and undue burden. (Doc. 144, p. 2).

Plaintiffs also seeks production of discovery pertaining to in person meetings that discussed the *Lippert* reports. Plaintiffs state that Wexford has recently reported that the ESI search terms were unlikely to turn up many responsive emails regarding the *Lippert* reports because Wexford's executives did not communicate about *Lippert* via emails, but rather, discussions regarding the *Lippert* class action suit occurred during in person meetings. (Doc. 139, p. 5). Plaintiffs argue that this is the first time that Wexford has revealed this information. (*Id.* at p. 6). In light of this new information, Plaintiffs asked Wexford to locate and produce notes taken by participants at the meetings. Wexford refused. (*Id.*). Plaintiffs also seek to compel the production of computerized meeting invitations to meetings pertaining to *Lippert*. These invitations appeared as hits in the *Lippert* ESI searches.

Wexford opposes the motion. (Doc. 143). As to reviewing the 2,000 documents for responsiveness to all of Plaintiffs' *Monell* discovery, Wexford argues that its objections to Plaintiffs' discovery requests, as stated in response to their first motion to compel, have not been waived or overruled. (*Id.* at p. 6). Wexford points out that Judge Daly's order "created a scope of discovery that the court found to be proportional and appropriate," and that the ruling was discussed at each status conference held by this Court. (*Id.* at p. 7). Because Wexford has produced

discovery responsive to Judge Daly's scope of *Monell* discovery, it should not have to conduct further discovery irrespective of its objections.

Wexford further argues that Plaintiffs did not identify with particularity invitations of *Lippert* meetings or notes from executives in their discovery requests; thus, they cannot move to compel them now. (Doc. 143, p. 14). Further, meeting notes from executives from *Lippert* meetings are privileged documents protected by work product and attorney client communication. (*Id.* at p. 15).

## ANALYSIS

The scope of discovery in federal civil cases is governed by Federal Rule of Civil Procedure 26. The Rule states that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The term "relevant" for the purposes of discovery is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). Federal courts permit liberal discovery, and "the party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Peppers v. Credit One Bank, N.A.*, No. 17-2190, 2018 WL 8244003, at *2 (C.D. Ill. Dec. 21, 2018) (citations omitted).

As previously mentioned, Plaintiffs are seeking to compel discovery to support their *Monell* claim. To prove a *Monell* claim against a corporation, such as Wexford, a plaintiff must show that a policy, practice, or custom violated his constitutional rights, rather than the acts of the corporation's employees. *See Whiting v. Wexford Health Sources, Inc.,* 839 F. 3d 658, 664 (7th Cir. 2016). In this case, Plaintiffs allege that Wexford was deliberately indifferent to Reed's serious medical needs in violation of the Eighth Amendment. A deliberate indifference claim requires that

Plaintiffs' must demonstrate that Wexford was "aware of the risk created by the custom or practice and failed to take appropriate steps to protect [Reed]." *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F. 3d 293, 303 (7th Cir. 2010).

This Court and others have stated that when *Monell* claims are involved the plaintiff is entitled to a "broad and substantial amount of discovery." *Green v. Meeks,* 20-cv-00463-SPM, Doc. 122, p. 2-3 (S.D. Ill. July 14, 2021) (quoting *Lymon v. Chamberlain,* No. 17 CV 20093, 2020 WL 6940985, at *3 (N.D. Ill. Nov. 4, 2020) (collecting cases). As a result, "*Monell* discovery is inherently time-consuming and voluminous, and the Court should also not excessively limit discover such that it affects [the] [p]laintiff's ability to prove his claim at trial." *Prince v. Kato,* No. 18 C 2952, 2020 WL 1874099, at *2 (N.D. Ill. Apr. 15, 2020).

I. **Review of ESI Search Results**

Plaintiffs first seek the Court to compel Wexford to review roughly around 2,000 documents,[3] which were the results of an ESI search, for responsiveness to "all of Plaintiffs' discovery requests" relating to the *Lippert* reports. (Doc. 139, p. 7). Plaintiffs do not specify exactly which document requests are included in "all," and the Court assumes that Plaintiff is referring to requests for production #47-60, which were the subject of the previous motion to compel. (*See* Doc. 81-2). The Court agrees with Plaintiffs' contention that documents and communications that reflect actions Wexford took in response to the *Lippert* reports are relevant to whether Wexford acted with deliberate indifference despite being aware of the inadequacies of its policies and practices. (*See* Doc. 81, p. 4). However, even though the number of documents to review has been

---

[3] Wexford disputes that the accuracy of this number but does not provide an alternative. (Doc. 143, p. 11). Wexford merely states that Judge Daly did not require emails to or from counsel to be recorded in a privilege log. While Judge Daly did not require communications between outside counsel and Wexford to be produced or included in a privilege log, it is not clear why when reviewing the 3,817 documents that were a result of the ESI search, Wexford would not know or record the number of emails that were to not be produced because they were privileged due to attorney-client privilege, privileged documents that were responsive but would still "need to be listed on a privilege log" as directed by Judge Daly, and those that were responsive, non-privileged, and required for production.

narrowed down by the ESI search, the issue remains that many of the document production requests remain overly broad. A fact that has been observed by both this Court (*see* Doc. 126, p. 18) and Judge Daly, *see Wiley,* 2023 WL 1967468, at *2-3.

For example, Production Requests #50, #51, #57, and #58 seek all documents or communications discussing medical care or delay in care generally in relation to the *Lippert* reports. Likewise, Plaintiffs' Production Requests #52 and #59 seek all documents relating to changes in policies, practices, rules, procedures, budgeting, recruiting, training, retention, or discipline in light of the *Lippert* reports. Production Requests #49 and #56 ask for all documents or communications relating to the *Lippert* reports and descriptions of medical care provided to persons with cancer. The *Lippert* class action lawsuit was expansive, and the class included all inmates with serious medical or dental needs. *See Lippert v. Ghosh,* 10-cv-04603, Doc. 1557 (N.D. Ill. June 24, 2022) (Amended Consent Decree). The lawsuit addressed a variety of topics from sanitation in clinical spaces to the provision of routine dental cleanings. *Id.; See also Arsberry v. Wexford Health Sources, Inc.,* 2021 WL 5232733, at *6 (N.D. Ill. Nov. 10, 2021) (denying the plaintiff's request for *all* documents underlying the *Lippert* reports as "documents relating to emergency care, on site dental care, and infection control [for example] would not be relevant and necessary to Plaintiff's claim"). Thus, these requests are overly broad and not tailored to the claims in this case. The Court will not compel Wexford to produce documents responsive to these production requests.

Because identifying other similarly situated inmates who were subjected to the same policies and practices of Wexford is one way to support a *Monell* claim and establish the practice was widespread, the Court will grant Plaintiffs' motion as to Production Requests #47, #48, #53, #54, #55, and #60, which seek information pertaining to the medical care provided to specific individuals and whether there were repercussions against staff because of the medical care

provided.[4] Wexford is directed to review the *Lippert* ESI searches and produce documents responsive to Production Requests #47, #48, #53, #54, #55, and #60.

## II. Lippert Meeting Invitations

Plaintiffs argue that the electronic invitations to meetings about the *Lippert* reports are responsive to their discovery, which specifies that the term "communications… includes but is not limited to letters, memoranda, e-mail, notes, audio recordings, video recordings, SMS or text messages, Tweets, and other exchanges on social media." (Doc. 139, p. 8).

The Court disagrees. Plaintiffs did not serve a production request asking that the meeting invitations be produced, and the meeting invitations do not fit within the scope of the production requests that have been reviewed by this Court.

## III. Meeting Notes

Plaintiff moves to compel the production of "notes taken by participants at the meetings" discussing the *Lippert* reports. (Doc. 139, p. 6).

Notes, meeting minutes, or other documentation composed in preparation of, during, or following meetings constitute documents and communications, and therefore fall within the scope of Production Requests #47, #48, #53, #54, #55, and #60. Such communications and documents are relevant to Plaintiffs' *Monell* claim, and Plaintiffs' motion to compel is granted in part only as to these production requests. *See Arsberry v. Wexford Health Sources, Inc.,* 2021 WL 5232733, at *10.

As discussed below, Wexford will not be required to produce documents that are protected by attorney-client privilege. The argument that the documents and communications are protected by work product privilege are conclusory, and Wexford has not met its burden of demonstrating

---

[4] Part of Plaintiffs' *Monell* claim is that Wexford failed to adequately punish and discipline prior instances of similar misconduct. (Doc. 63, p. 16).

that the privilege applies to any of the meeting documents requested.

### IV.     Attorney-Client Privilege

The Court is in agreement with Judge Daly's observation that "Wexford undoubtedly has many documents that are written by or to its outside counsel regarding the reports and are clearly attorney client privilege." *Wiley,* 2023 WL1967468, at *2. Therefore, "communications between outside counsel (meaning, attorneys that work at law firms retained by Wexford) and Wexford" need not be produced or included on the privilege log for discovery in this matter. *Id.*

### V.     Joint Scheduling Order

The parties are directed to submit a joint proposed amended scheduling order on or before **December 7, 2023.**

#### DISPOSITION

For the reasons stated above, the Motion to Compel filed by Plaintiff is **GRANTED in part** and **DENIED in part**. (Doc. 139).

Wexford has 60 days from the date of this Order to review the ESI searches and produce documents and communications responsive to Production Requests #47, #48, #53, #54, #55, and #60. Wexford is further directed to produce meeting notes, minutes, or other documentation prepared by participants who were at meetings discussing the *Lippert* reports that are responsive to Production Requests #47, #48, #53, #54, #55, and #60.

**IT IS SO ORDERED.**

**DATED:   November 15, 2023**

                                         *s/Stephen P. McGlynn*
                                         **STEPHEN P. MCGLYNN**
                                         **United States District Judge**