UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LENNISHA REED and LENN REED JR., as Co-Administrators of the Estate of LENN REED, SR., #B28789,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, STEPHEN RITZ, and FAIYAZ AHMED,<br><br>Defendants. | Case Number 3:20-cv-01139-SPM<br><br>Judge Stephen P. McGlynn |

### DEFENDANTS' JOINT MOTION TO STRIKE PLAINTIFFS' 26(a)(2)(C) DISCLOSURES

COME NOW Defendants WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O., by and through their attorneys, CASSIDAY SCHADE LLP, and Faiyaz Ahmed, M.D., by and through his attorneys, HEYL, ROYSTER, VOELKER & ALLEN P.C., and for their Joint Motion to Strike Plaintiffs' 26(a)(2)(C) Disclosure, state as follows:

### PRODECURAL HISTORY

1. Plaintiffs filed this lawsuit on October 28, 2020. (Doc. 1). Plaintiffs' Complaint references the *Lippert* Report in *Lippert v. Godinez (Ghosh). Id.*

2. The original expert deadline in this case, agreed to by the parties, was March 22, 2022. This deadline provided Plaintiffs more than a year to disclose an expert (two years total). (Doc. 27-1).

3. On March 22, 2022, the day of Plaintiffs' expert disclosure deadline, Plaintiffs first sought an extension of time, seeking four additional months, up to and including July 22, 2022, for their expert disclosures. This request was granted over Defendants' objections. (Docs. 56; 58; 60).

4.     Then again, on July 22, 2022, the day of Plaintiffs' extended expert disclosure deadline, Plaintiffs sought another extension of time seeking over three more months for their expert disclosures, up to and including November 4, 2022.  This request was granted over Defendants' objections, but the Court explained it "will not extend the deadlines again, however, except for exceptional circumstances."  (Docs. 72-3; 78, p. 3).

5.     On November 4, 2022, Plaintiffs did not disclose any experts in this case, nor did they seek a third extension of time.

6.     On January 6, 2023, Defendants again raised Plaintiffs' failure to disclosure any experts in this matter, moved for a protective order or bifurcation, and timely disclosed their experts.  Co-Defendant Dr. Ahmed also timely disclosed his experts. (Doc. 94).  Discovery was set to close on January 27, 2023.  (Doc. 78).

7.     On January 23, 2023, after Defendants' expert disclosures, Plaintiffs sought another six months for their overdue expert disclosures, extending their expired November 4, 2022 deadline to May 12, 2023.  (Doc. 101).

8.     As the dispositive motion deadline was February 28, 2023, Defendants prepared their Motion and Memorandum in Support of Summary Judgment on the merits, which was nearly finalized when on February 27, 2023, the Court granted Plaintiffs' third Motion for Extension of Time, over Defendants' numerous objections.  The Court set a deadline for the close of all discovery for April 27, 2023.  (Doc. 116).

9.     Plaintiffs identified a retained witness, Dr. Schmidt, on April 17, 2023, who agreed that Mr. Reed's cancer was terminal at first presentation.

10. On April 24, 2023, at Plaintiffs' request, the Court vacated all discovery deadlines. Defendants were informed they could not take the deposition of Plaintiffs' retained witness as she may amend her opinions related to the *Monell* claim. (Doc. 124).

11. After several hearings with the Court, on November 16, 2023, the Court ordered the parties to submit a Joint Scheduling Order by December 7, 2023. Plaintiffs sought three extensions of time and finally provided proposed dates on January 12, 2024, which was entered by the Court. (Docs. 149-156).

12. On April 15, 2024, Plaintiffs filed their fourth Motion for Extension of Time, which was again granted over the Defendants' objections. (Docs. 162-168). The Court noted, "Plaintiffs are advised that absent extraordinary circumstances, no further extensions will be granted." (Doc. 168). The parties were also ordered to submit a proposed scheduling order for the remaining deadlines.

13. After the close of fact discovery, Plaintiffs filed their fifth Motion for Extension of Time. (Doc. 170). Plaintiffs sought another month of fact discovery and an unknown amount of time for the remaining deadlines.

14. On June 17, 2024, Plaintiffs and Defendants provided the Court proposed scheduling and discovery orders. Plaintiffs' proposed amended scheduling order specifically surrendered Plaintiffs' rebuttal discovery in order to obtain additional time for their expert disclosures. (Exhibit D, Plaintiffs' Proposed Amended Scheduling Order).

15. On June 20, 2024, the Court adopted Plaintiffs' proposed scheduling and discovery order. (Doc. 176). Accordingly, Plaintiffs' expert reports were due on August 5, 2024 and no rebuttal discovery was allotted. *Id.*

16. At 11:26pm on August 5, 2024, Plaintiffs emailed their 26(a)(2) disclosures, identifying Dr. Schmidt and Dr. Venters but supplied no report. Plaintiffs did not identify Dr. Shansky, Dr. Saylor, or RN Hewitt in their 26(a)(2) disclosures.

17. Plaintiffs finally produced Dr. Venters' written reports (at 11:40am) on August 7, 2024, two days after Plaintiff's deadline. Dr. Venters' report discussed the *Lippert* monitors' reports.

18. On September 16, 2024, Dr. Ron Shansky passed away.[1]

19. Defendants retained a statistician, at Precision Consulting, to assess the methodology of the Reports in order to determine whether they were scientific or reliable. Defendants disclosed the Precision 2014 *Lippert* Report on November 5, 2024. Defendants disclosed the Precision 2018 *Lippert* Report and Dr. Venters' Report on November 7, 2024. Mr. Heidari, on behalf of Precision, was deposed on November 13, 2024.

20. Discovery closed on November 18, 2024. (Doc. 185).

21. On November 18, 2024, Plaintiffs emailed their 26(a)(2)(C) disclosures, identifying Dr. Ron Shansky, Dr. Karen Saylor, and Mr. Larry Hewitt, concerning the 2014 *Lippert* Report and indicating only that they would testify consistently with the opinions contributed to and authored in it, including his knowledge of and expert opinions on the methodology implemented by the medical investigation team. (Exhibit E, Plaintiffs' November 18, 2024 Disclosure)

22. On the same day, undersigned counsel emailed Plaintiffs' counsel, providing both objections to the late disclosures and the *Lippert* Orders barring these same individuals from testify in any other case.[2]

---

[1] https://www.jewishchronicle.org/2024/11/05/remembering-my-brother-ronald-shansky/
https://www.ncchc.org/in-memorium-former-ncchc-board-member-ronald-shansky-md-mph/
[2] "Counsel, setting aside the fact that Plaintiffs' expert disclosures in this case and *Wiley* were due months ago and today is the close of discovery, attached please find the Orders in *Lippert* barring the monitors from testifying in

4

23. The next day, Plaintiffs' counsel simply responded, "We will not be withdrawing these disclosures." Thus, undersigned counsel responded, "Please provide a substantive response in regard to the fact that these witnesses have been barred from testifying."

24. Plaintiffs' response lacked an understanding of the nature of the *Lippert* Order; thus, on November 20, 2024, in yet another attempt to avoid this Motion, undersigned counsel provided Plaintiffs' counsel with additional *Lippert* holdings that soundly rejected Plaintiffs' position.[3] Yet, the same day, Plaintiffs' counsel responded, "We will not be withdrawing our disclosures," ending the discussion.

## **LEGAL ARGUMENT**

FRCP 26(a)(2)(B) requires a written and signed report for an expert, "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."

The report must contain:
    (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
    (ii) the facts or data considered by the witness in forming them;
    (iii) any exhibits that will be used to summarize or support them;
    (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

---

another matter. See Doc 244, par. 1b and Doc. 593, par. 1c. As these individuals are barred from testifying in any case but *Lippert*, they could not testify as non-retained experts in this case, even if they were timely disclosed.
Please advise by the close of business tomorrow if you are withdrawing these disclosures. I will note that if we must file yet another Motion to Strike, we will seek attorneys' fees.
Please advise if you have any questions."

[3] "Getting back to the *Lippert* monitors disclosed as non-retained experts on the last day of discovery, please review the declaration of Dr. Shanksy on this very issue that he "would not have accepted the appointment [] if [he] had believed that, in spite of the clear language of the Order, [he] could be subpoenaed for documents or testimony..." (*Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-4). In that instance, the *Lippert* Court denied leave to intervene to modify the order of appointment and held that to "conclude Dr. Shanksy should be allowed to be deposed [] in an unrelated case would be contrary to the plain language of [Rule 706] and this Court has no discretion to ignore the plain language of Rule 706." (*Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-3, p. 10).
This is a settled issue. I am trying to avoid unnecessary litigation and expense. Please review the orders we have sent you and have referred to and advise if this changes your stance or if you have questions that can be addressed on a meet and confer. Alternatively, please advise if you are unwilling to withdraw the disclosure simply because of our pending Motion to Strike untimely retained expert reports/opinions."

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.
> *Id.*

Conversely, a non-retained expert witness need not produce a report, but the disclosure must contain, "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FRCP 26(a)(2)(C).

In deciphering whether a witness falls within the category of a non-retained expert, courts have explained that "[n]on-retained experts must only testify about opinions that were formed during the course of their participation in the relevant events of the case, and only to those opinions which were properly disclosed." *Guarantee Trust Life Insurance v. American Medical*, 291 F.R.D. 234, 237 (N.D. Ill. July 26, 2013). Additionally, "a former employee may be a non-retained expert for the purposes of Rule 26(a)(2) if he is a percipient witness and is testifying based upon his personal knowledge of the facts or data at issue in the litigation." *Id.* However, "[f]orming an opinion based on a review of documents and invoices after the fact is the province of a retained expert witness under Rule 26(a)(2)(B)." *LeBlanc v. Mr. Bult's*, Case No. 15 C 6019, 2019 U.S. Dist. LEXIS 134937, 2019 WL 3776957, at *4 (N.D. Ill. Aug. 12, 2019) (citing *Vill. Of Bondville v. Windstream Corp.*, No. 13 C 2078, 2015 U.S. Dist. LEXIS 194439, 2015 WL 13608437, at *4 (C.D. Ill. Apr. 13, 2015)).

"If a party fails to provide information or identify witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FRCP 37(c).

## ARGUMENT

Plaintiffs' Rule 26(a)(2)(C) disclosures must be struck for one of a variety of reasons: 1) Dr. Shansky is deceased, 2) *Lippert* Monitors are barred from testifying in any case but *Lippert*, 3) they are untimely, and 4) they are improper and insufficient.

### I. Dr. Shansky

First, at the time of Plaintiffs' disclosure of Dr. Shansky, he had already passed away and could not be a witness in this case. It appears Plaintiffs conducted no research or investigation into whether Dr. Shansky could possibly be a witness in this case. As Dr. Shansky is deceased, he cannot be a non-retained expert in this case and Plaintiffs' disclosure should be struck.

There is no reason to believe any further investigation went into whether Dr. Saylor or RN Hewitt are available or willing to testify in this matter and, as discussed below, even if they are available, they are barred from testifying in this matter. As such, Defendants' second Motion to Strike should be granted.

### II. *Lippert* Monitors are Barred from Testifying in Any Case but *Lippert*

*Lippert* is a statewide class action against the Illinois Department of Corrections challenging its provision of medical care. During the course of the litigation, the Court appointed expert witnesses under Federal Rule of Evidence 706, including Dr. Ronald Shansky. According to the Court's Agreed Order Appointing *Lippert* Monitors ("Experts"), "[t]he Expert, his consultants or assistants shall not provide opinions and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing their services in this matter." *Lippert v. Godinez*, Case No. 10-cv-4603, Doc. 244, p. 2; Doc. 593, p. 2. Specifically, Dr. Shansky was prohibited from testifying about *Lippert* either at deposition or trial of other matters. The *Lippert* Court's Order appointing Shansky stated:

7

> 1b.  The Expert, his consultants and assistants shall not provide opinions and/or testimony in unrelated cases based on knowledge and/or information gained in the course of performing their services in this matter.
>
> 6a. The expert and his consultants and assistants, and counsel for any party, shall maintain the confidentiality of all materials obtained and reviewed pursuant to this Order, as if all material was marked "Attorneys Eyes Only" as set forth in the Protective Order entered by this Court on April 11, 2012.
>
> 6b. All Drafts of and comments to any drafts of the Expert's Reports required by or produced pursuant to this Order and/or future Court Orders shall be treated as "Attorneys Eyes Only" material under the April 11, 2012, Protective Order.

*Lippert v. Godinez*, Case No. 10-cv-4603, Doc. 244. (Exhibit A, *Lippert* Court Orders).

A plaintiff from an unrelated case attempted to intervene in *Lippert* to modify the Order appointing Dr. Shansky so that he could be deposed in that plaintiff's individual damages case. *Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-3. Dr. Shansky responded with a declaration in opposition, stating he agreed to be a court-appointed expert but "would not have accepted the appointment [] if [he] had believed that, in spite of the clear language of the Order, [he] could be subpoenaed for documents or testimony in the hundreds of individual health care cases against IDOC or its contractor, Wexford Health Services, [sic] Inc." *Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-4. The *Lippert* Court denied leave to intervene to modify the order of appointment and held that to "conclude Dr. Shansky should be allowed to be deposed [] in an unrelated case would be contrary to the plain language of [Rule 706] and this Court has no discretion to ignore the plain language of Rule 706." *Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-3, p. 10.

Here, similarly, Plaintiffs' Rule 26(a)(2)(C) disclosures must be struck. Plaintiffs specifically disclosed Dr. Shansky, Dr. Saylor, and RN Hewitt to testify consistently with the opinions in the 2014 *Lippert* Report. Dr. Shansky, Dr. Saylor, and RN Hewitt are plainly barred

8

from testifying to these matters pursuant to the Court Order and settled caselaw.[4] Accordingly, Plaintiffs' disclosure of them as non-retained experts in this case must be barred as it would require these individuals to violate a Court Order.

Defendants sought to avoid this Motion by providing this information to Plaintiffs' counsel. Based on communication between the parties, it appears Plaintiffs intend to argue that the Orders in *Lippert* appointing Dr. Shansky (Doc. 244, p. 2; Doc. 593, p. 2) has been interpreted to state the Experts are barred from testifying only in "unrelated" cases. Accordingly, Plaintiffs contend *Reed* is *not* an "unrelated" case as Plaintiffs have asserted a *Monell* claim, and some *Lippert* patient records were reviewed in this case by retained witnesses in this case. However, when the Court Orders appointing the Experts reference "unrelated" cases, it is clear in context and in conformity with the remaining language in the Orders that the Court's intention is to bar the Experts' testimony in any case **other than Lippert**. Further, as discussed above, the *Lippert* Court already decided this issue and based on both the Orders and Rule 706, they rejected Plaintiffs' exact argument.

Plaintiffs know this argument has been roundly rejected as they argued as much in their Motion to Intervene in *Lippert*. In Plaintiffs' Motion to the *Lippert* Court, they outlined the following:

> In 2018, the Court in this case ruled on a motion to intervene in *Lippert* by the plaintiff in another case, called *Burks v. Soto. See Lippert,* ECF 653 (Mar. 9, 2018). That ruling, which was issued by Magistrate Judge Martin at ECF 653 in this case, serves as a useful guide for assessing Movants' present motion.
> The *Burks* plaintiff sought to intervene in this case to seek modification of protective orders governing the *Lippert* report experts, in order to allow one of the *Lippert* report authors (Dr. Shansky) to produce documents and appear for a deposition in the *Burks* case. *See* ECF 653 at 1. Judge Martin first held that the *Burks* plaintiff was an appropriate intervenor under Rule 24(b)(1)(B). *See* ECF 653 at 3-7. On the merits, however, Judge

---

[4] Section 2(b) of the Order states that "[t]he Expert shall provide each retained consultant and assistant with a copy of this Order and the Protective Order entered by the Court on April 11, 2012." (Doc. 244, p. 2; Doc. 593, p. 3). In addition to the plain language of the Order, it is clear the Court intended the retained consultants and assistants be bound by the terms of the Order, including the prohibition against testifying in unrelated cases, as the consultants and assistants were to be provided copies of the Order.

> Martin refused the *Burks* plaintiff's request to modify the protective orders to permit Dr. Shansky's deposition, holding that such discovery should not be allowed. *Id.* at 7-11.
>
> The *Burks* motion is instructive for Movants' request, both as to Rule 24 intervention and as to the merits of Movants' subpoena. On the one hand, Movants' request to intervene is appropriate for the same reason as the intervention in the *Burks* motion: Rule 24(b)(1)(B) is the correct vehicle for a party who seeks to gather discovery available in a different matter. On the other hand, the merits of Movants' subpoena bears no resemblance to the discovery sought in the *Burks* motion—**none of the concerns animating Judge Martin to deny the Burks plaintiff's deposition request exist here**.... In serving the UPLC subpoena in this case, Movants merely seek limited information that will help them gather appropriate discovery in their own underlying litigation.
>
> As to the request for deposition, Judge Martin held that "the modification [to the *Lippert* protective orders] Mr. Burks seeks would retroactively undo the terms on which Dr. Shansky consented to perform his work," noting that Dr. Shansky's declaration (submitted in opposition to the *Burks* motion) stated that "[Dr. Shansky] 'would not have accepted the appointment in this case if I had believed that, in spite of the clear language of the [protective] Order, I could be subpoenaed for documents or testimony in the hundreds of individual health care cases against IDOC or its contractor, Wexford Health Services, Inc.'" ECF 653 at 9 (quoting Shansky declaration). Judge Martin further held that permitting the deposition of experts appointed pursuant to Rule 706 was contrary to the rule, and would make it harder for courts to recruit Rule 706 experts in the future. *Id.* at 8-10. Judge Martin therefore denied the *Burks* plaintiff's request to modify the protective order to permit Dr. Shansky's deposition. *Id.* at 11…
>
> Second, the UPLC subpoena **does not seek a deposition, and does not require anything from any of the *Lippert* report authors at all.** It merely seeks production of a handful of documents that Movants anticipate will permit them to gather discovery in the underlying *Reed* litigation. The UPLC subpoena presents none of the burdens on the Rule 706 expert witnesses that were at issue in the *Burks* opinion, nor does it run afoul or Rule 706 itself.

(Exhibit B, Plaintiffs' Motion to Intervene, p. 4-5; 7) (emphasis added). In other words, Plaintiffs' counsel knew well enough in 2021 when they were before the *Lippert* Court that the monitors were barred from testifying in this case as they conceded it and expressly proffered to the Court that they ***were not seeking to intervene for a deposition*** of the monitors in this case.

Fast-forward three years and Plaintiffs' counsel discloses *Lippert* monitors as non-retained witnesses, even though they did not intervene to obtain their testimonies because they knew it would be denied. In fact, if called to testify based on the history of *Lippert,* Defendants anticipate that the monitors will abide by the *Lippert* Court's protective order and refuse to testify. As this

10

Court lacks jurisdiction to amend the *Lippert* Court's Order, Plaintiffs' efforts are fatal and are knowingly increasing the cost of litigation with no justifiable purpose. Thus, in line with the Court's intention behind the language in *Lippert* Order and Plaintiffs' own arguments in her Motion to Intervene, Plaintiffs' disclosures of *Lippert* monitors must be struck.

Because this is a settled issue, because Plaintiffs' counsel knew this was a settled issue and proffered to the *Lippert* Court that they were not seeking the monitors' testimony, and because Defendants made multiple attempts to bring these issues to Plaintiffs' counsel's attention to avoid this Motion, Defendants can only conclude that Plaintiffs lack a good faith basis in fact and/or law for their non-retained expert disclosure of *Lippert* monitors and it was propounded to unnecessarily increase the cost of litigation. As such, Defendants also move the Court to order Plaintiffs' counsel's firm reimburse Defendants for the attorneys' fees for preparing this Motion and their Reply, if necessary.

## III. Plaintiffs' November 18, 2024 Rule 26(a)(2)(C) Disclosures are Untimely

This case is over four years old. Plaintiffs' Complaint contained (improper) allegations about the *Lippert* Reports. In over four years of discovery, Plaintiffs targeted *Lippert* discovery, including subpoenaing the medical records of several prisoners discussed in the reports. Plaintiffs also sought *Lippert* discovery from Defendants, specifically targeting privileged information. Plaintiffs sought to compel certain *Lippert* documents. In response to Defendants' *Monell* discovery requests, Plaintiffs relied on the *Lippert* reports. As discussed at length above, Plaintiffs intervened in *Lippert* for the names of the prisoners addressed in the reports, but did not intervene to depose the monitors and, in fact, proffered to the court that they were not seeking depositions.

After obtaining numerous extensions of time, Plaintiffs' expert disclosures were due on August 5, 2024. Yet, Plaintiffs did not disclose any *Lippert* monitors as witnesses. (Exhibit C,

11

Plaintiffs' August Expert Disclosures). Instead, Dr. Venters, Plaintiffs' retained witness, penned a report discussing his review of the *Lippert* Reports.

To be clear, Defendants have maintained that the *Lippert* Reports are inadmissible hearsay. Defendants have argued vehemently in this matter that the Reports cannot be offered for the truth of the matter asserted and should not be offered for any purpose. In furtherance of these objections, and as Plaintiffs' Complaint, discovery responses, and motions indicated that they would attempt to introduce the *Lippert* Reports, not the *Lippert* monitors, Defendants retained a statistician from Precision Consulting to assess the methodology of the Reports in order to determine whether they were scientific or reliable. The assessment was based on the Reports themselves as the monitors have been barred from testifying in any other case, as discussed *supra*. Defendants disclosed the Precision report for the 2014 *Lippert* Report on November 5, 2024. Defendants disclosed the Precision reports for the 2018 *Lippert* Report and Dr. Venters' Report on November 7, 2024. Mr. Heidari, on behalf of Precision, was deposed on November 13, 2024. Yet, Plaintiffs disclosed *Lippert* monitors as potential witnesses in this case on the last day of discovery, November 18, 2024, when Defendants could do nothing further in response. *See Finwall v. City of Chi*., 239 F.R.D. 494, 501 (N.D. Ill. 2006) (striking the untimely and incomplete expert disclosures and finding, "[i]t is beyond debate that this left no time for depositions or discovery regarding their reports, or engaging rebuttal experts.") "Acquiescence in the late disclosures would simply have extended the discovery schedule without judicial approval and in violation of the fundamental principle that '[d]isclosures must not be used as a means to extend a discovery deadline.'" *Id.* citation omitted; *See also Carter v. Finley Hosp.,* 2003 U.S. Dist. LEXIS 17439, No. 01-50468, 2003 WL 22232844, *2 (N.D.Ill. Sept. 22, 2003).

There can be no good faith argument of surprise that Defendants defended Dr. Venters reports or the *Lippert* Reports as Plaintiffs repeatedly attempted to put them at issue. There can be no good faith argument that Precision's reports were an unjustified surprise. Again, the statistician's analysis is based on the *Lippert* Reports themselves and not based on testimony of the monitors. Nonetheless, to wait until the last day of discovery can only be a strategic choice to 1) attempt to deprive Defendants of the ability to discover and defend this case, including discovery as to whether the monitors are competent, available, or willing to testify, let alone what their opinions in this case would be, and/or 2) to require Defendants to brief yet another motion on a settled issue, increasing the cost of litigation and taking time away from preparation of their meritorious Motions for Summary Judgment and *Daubert* Motions, due in less than a month.

Further, Plaintiffs identify their Rule 26(a)(2)(C) disclosures as "rebuttal" disclosures. However, Plaintiffs specifically surrendered rebuttal discovery and removed it from the Scheduling Order in order to obtain a later disclosure date for the retained expert reports. Plaintiffs cannot have it both ways and have waived any rebuttal discovery and Defendants' Motion to Strike should be granted.

Defendants note, as briefed repeatedly, including in their recent Renewed Motion to Strike, there is a long history of Plaintiffs delaying this matter, failing to meet deadlines at Defendants' expense, and making misrepresentations to the Court. Defendants sought to bifurcate this case to avoid these expenses, but Plaintiffs not only opposed bifurcation, but also extended "*Monell* discovery," for years only to make expert disclosures on the last day of discovery. For any of these reasons, Defendants' Second Motion to Strike should be granted and Plaintiffs' counsel's firm should be ordered to reimburse Defendants for the preparation of this Motion and its Reply, if needed.

### IV.     Plaintiffs' November 18, 2024 Rule 26(a)(2)(C) Disclosures are Improper and Insufficient

Neither Dr. Shansky, Dr. Saylor, nor RN Hewitt treated Mr. Lenn Reed. In fact, none of these proposed witnesses treated ***any*** IDOC prisoner identified in this lawsuit. No retained expert witness has opined as to the care provided by Dr. Shansky, Dr. Saylor, or RN Hewitt. This is because they were appointed court monitors in another matter altogether. As discussed above, the monitors were tasked with conducting a review for an ongoing lawsuit and any opinions given by them were formed, not as a treater, but for the purposes of investigation for litigation. As such, these opinions are not non-retained expert opinions and, if Plaintiffs sought to elicit at trial expert opinions from them, Plaintiffs were required to obtain a written report containing their opinions in this case and their grounds for their opinions. *Peters v. Butler,* 2021 WL 979272, at *8 (S.D. Ill. Mar. 16, 2021); *Malibu Media, LLC v. Harrison,* 2014 WL 6474065, at *2 (S.D. Ind. Nov. 19, 2014) (distinguishing between a witness who is "recruited for the purpose of giving testimony-rather than treatment"). Furthermore, Plaintiffs were required to timely provide Defendants with:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Plaintiffs have not disclosed these proposed witnesses properly as retained experts. They are not so identified. They were not identified in Plaintiffs' retained expert disclosures. As confessed in the disclosure, they did not prepare written reports in this case. It is undisputed that Plaintiffs did not disclose all facts and data relied on, any exhibits, the witnesses' qualifications

and publications, a list of all cases the witnesses have testified in during the previous 4 years, or a statement of compensation (either in this case or in *Lippert*). Plaintiffs have not complied with Rule 26(a)(2)(B) and these disclosures must be struck. *See Finwall*, 239 F.R.D. 494, 501; *Keach v. U.S. Trust Co.,* 419 F.3d 626, 639 (7th Cir. 2005); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998).

Defendants anticipate that Plaintiffs will ignore all the requirements of Rule 26(a)(2)(B) and argue that providing the 2014 *Lippert* Report is sufficient for the monitors' reports in this case. In addition to the fact that the *Lippert* Report does not meet the full requirements of the Rule, the monitors did not prepare their report for this case. The monitors have not reviewed the medical care of Mr. Lenn Reed. The monitors did not come to opinions that his care was substantially similar to the care to the care they observed. In fact, Mr. Reed's care took place at Lawrence Correctional Center, a facility the monitor did ***not*** review. The *Lippert* Report provides no opinions as to practices at Lawrence Correctional Center, let alone the facts and data they relied on in coming to their opinions. As discussed below, the Report does not contain Dr. Saylor or RN Hewitt's opinions, and Dr. Shansky, the first author, is unable to testify in this matter.

Even should the Court determine that these individuals are non-retained experts, Plaintiffs' disclosure of these proposed witnesses as non-retained experts is improper and insufficient. For each individual, the disclosure states each: "will testify consistently with the opinions he contributed to and authored in the 2014 *Lippert* Report, including his knowledge of and expert opinion on the methodology implemented by the medical investigation team." There is no subject matter identified and no opinions identified, let alone a summary of facts that led to the opinions. Nor is it clear, from the over 400 pages of the 2014 *Lippert* Report, what section each individual authored, if any, what opinions they derived, and what facts led to their individual opinions. This

is even more complicated as Dr. Shansky, who is listed as the first author, is deceased and cannot testify to his methodology, opinions, or data he relied on. It remains unclear what portion of the Report Dr. Saylor or RN Hewitt contributed to, let alone what methodology they implemented, opinions they drew, and data they relied on. Certainly, Plaintiffs' disclosure does not provide Defendants notice of these requirements.

Instead of a summary of opinions that will be given, Plaintiffs' disclosure is a vague sentence very broadly stating what they would like to ask these individuals, not a summary of what their answers/opinions would be and the facts and data to support it. For any of these reasons, the Court should grant Defendants' Second Motion to Strike and award attorneys' fees for Defendants for the preparation of this Motion and its Reply, if needed.

WHEREFORE, for the above reasons, Defendants jointly respectfully request this Honorable Court grant their Motion to Strike Plaintiffs' 26(a)(2)(C) Disclosures, and for such further relief deemed appropriate.

                                                CASSIDAY SCHADE LLP

                                                By: /s/ Jaclyn A. Kinkade
                                                One of the Attorneys for Defendants WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O.

                                                /s/ Keith B. Hill (with consent)
                                                One of the Attorneys for Defendant Faiyaz Ahmed, M.D.

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377

(314) 241-1320 (Fax)
jkinkade@cassiday.com

Keith B. Hill
ARDC No. 6277660
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia, Suite 100, Mark Twain Plaza III
Edwardsville, IL 62025 0467
(618) 656-4646
khill@heylroyster.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2024, I electronically filed the foregoing with the Clerk of the Court for the Southern District of Illinois using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

ATTORNEYS FOR DEFENDANT, FAIYAZ AHMED, M.D.:
Keith Hill
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 618.656.7940
khill@heylroyster.com

ATTORNEY FOR DEFENDANT, ILLINOIS DEPARTMENT OF CORRECTIONS:
Tara Barnett
Assistant Attorney General
201 West Pointe Dr., Ste. 7
Swansea, IL 62226
(618) 236-8781
tara.barnett@ilag.gov

ATTORNEYS FOR PLAINTIFFS:
Jon I. Loevy
Maria Makar
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
jon@loevy.com
makar@loevy.com

/s/ Jaclyn A. Kinkade