# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ILLINOIS

Lennisha Reed *et al.*,

    Plaintiffs,

v.

Wexford Health Sources, Inc., *et al.*,

    Defendants.

Case Number 3:20-cv-01139-SPM

Judge Stephen P. McGlynn

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STRIKE SUPPLEMENTAL DISCLOSURES

Plaintiffs Lennisha Reed and Lenn Reed Jr., through their counsel, respectfully oppose Defendants' motion to strike Plaintiffs' Supplemental Rule 26 disclosures. Dkt. 198.

## INTRODUCTION

In the final days of expert discovery, Defendants unexpectedly made an issue of the *Monell* discovery provided to Plaintiffs—modeled as an attack on Plaintiffs' *Monell* expert's methodology. Now Defendants ask this Court to bar Plaintiffs from rebutting that critique to prove their case, under the false reason that Plaintiffs' experts were improperly disclosed.

Plaintiffs sued for the inadequate medical care Wexford provided to the decedent Lenn Reed Sr., and alleged *Monell* liability against Wexford. Throughout discovery, Defendants refused to provide Plaintiffs with the identities and medical records of other Wexford patients for their *Monell* claim. After many attempted compromises, and orders from this Court, Plaintiffs were forced to identify Wexford patients using the expert reports in another matter (the *Lippert* reports),[1] and requested those patients' medical records (about forty Wexford patients). Then,

---

[1] The *Lippert* Reports, formally known as the Lippert Survey of Inmate Healthcare Standards, are detailed assessments prepared by court-appointed external experts (the *Lippert* monitors) on the quality of healthcare services provided to incarcerated people in Illinois state prisons. These reports are part of the

1

Plaintiffs' expert Dr. Homer Venters used those records to form his opinions about Wexford's systematic failures to provide medical care, supporting Plaintiffs' *Monell* claim.

Then, on the day their expert disclosures were due, Defendants exploited that very discovery dispute and disclosed a statistician's expert opinion that the *Lippert* experts' methodology of identifying patients (and, by extension, Plaintiffs' experts' methodology for identifying patients) was flawed, in that he only analyzed a portion of Wexford's patient files. To combat this issue or risk losing their *Monell* claim, Plaintiffs disclosed the *Lippert* monitors as unretained experts who would testify consistently with the opinions in the *Lippert* reports in this matter's record, including their knowledge of and expert opinions on the methodology implemented by the *Lippert* medical investigation team. Now, Defendants move to strike these properly disclosed, unretained experts.

This history informs why Defendants may have filed a motion to strike, rather than a more appropriate motion, and explains Defendants' recounting of the discovery period in their motion. But the heart of the issue is that Plaintiffs' November 18, 2024 disclosure of the *Lippert* witnesses were timely and permitted by the *Lippert* court. Defendants have not provided any legally sound reason why the Court should strike Plaintiffs' disclosures.

For the reasons as set out below, the Court should deny Defendants' motion in its entirety.

---

evidence and monitoring tools used in the *Lippert* class action litigation and contain anonymized descriptions of individual patients' medical care.

## LEGAL STANDARD

The purpose of Rule 26(a)'s disclosure process is to prevent unfair surprise, *Westefer v. Snyder*, 422 F.3d 570, 584 (7th Cir. 2005), and to provide opposing parties a reasonable opportunity to prepare for an effective cross-examination. *See* Fed. R. Civ. P. 26(a) Advisory Committee Notes. When information not contained in a party's disclosures is otherwise made known during discovery, there is no further duty to supplement under Rule 26(a) because the other party has been given adequate notice. *Banister v. Burton*, 636 F.3d 828, 833 (7th Cir. 2011).

Motions to strike are disfavored in part because they potentially serve only to delay. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (stating that motions to strike are not favored). Courts generally disapprove of motions to strike because they dislike allowing the results of a case to turn solely on procedure, especially when a party was not prejudiced. *See, e.g.*, *Carlson v. Triton Indus., Inc.*, 605 F. Supp. 3d 1124, 1130 (W.D. Wis. 2022) (citing *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975)).

Even in cases where evidence is inadequately disclosed, courts do not resort to the sanction of barring evidence unless the omission was both unjustified and prejudicial. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). "[T]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Id.* "In determining whether a failure to disclose was unjustified and prejudicial, courts consider: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or

willfulness involved in not disclosing the evidence at an earlier date." *Id*.

Sanctions must be "proportionate to the infraction," which means that in cases like this one where the expert opinion is primary evidence on an issue, the infraction must be severe to justify barring the evidence. *Spearman Indus. Inc. v. St. Paul Fire and Marine In*s., 138 F. Supp. 2d 1088, 1095 (N.D. Ill. 2001). Barring primary evidence can be tantamount to dismissal. *Id.* at 1095. The Seventh Circuit has admonished that courts "cannot let stand a dismissal that, in light of the entire record, is not proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 739–40 (7th Cir. 1998) ("Depriving the parties of a merits disposition is serious business.").

Following this instruction, rather than exclude or strike expert witnesses, district courts often impose lesser sanctions for discovery violations. *Beaton v. SpeedyPC Software*, 338 F.R.D. 232, 238 (N.D. Ill. 2021) (citing *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996), then citing *Rice v. City of Chicago*, 333 F.3d 780, 786 (7th Cir. 2003) (holding expert exclusion was disproportionate sanction since prejudice could be cured by lower sanction shifting costs).

Rebuttal evidence must "contradict or rebut evidence on the same subject matter." *City of Gary v. Shafer*, 2:07-CV-56-PRC, 2009 WL 1370997, at *3 (N.D. Ind. May 13, 2009) (citing Fed. R. Civ. P. 26 (a)(2)(2)(c)(ii)). The admission of rebuttal evidence on a topic is permissible once a party has opened the door to that topic. *Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) (citing Black's Law Dictionary 579 (7th ed. 1999)). It is within the court's discretion whether to admit or exclude rebuttal evidence. *Id*. Rebuttal evidence is not necessarily precluded simply because it may have been offered in a party's case-in-chief. *See Bell v. AT&T*, 946 F.2d 1507, 1512 (10th Cir. 1991) (stating, "where the evidence rebuts new evidence or theories

proffered in the defendant's case-in-chief, that the evidence may have been offered in the plaintiff's case-in-chief does not preclude its admission in rebuttal").

The Court's scheduling order may be amended for good cause. Fed. R. Civ. P. 16(b)(4). A rebuttal expert disclosure is timely if it is filed within 30 days of the defendants' expert disclosures, unless the court has set another deadline. *Aircraft Gear Corp. v. Marsh,* No. 02 C 50338, 2004 WL 1899982, at *5 (N.D. Ill. Aug. 12, 2004) (finding that an expert rebuttal report was timely filed where filed within 30 days of the defendants' expert disclosure, even though the court had not set a deadline for rebuttal reports); S.E.C. v. Badian, No. 06 Civ. 2621(LTS)(DFE), 2009 WL 5178537, at *4–7 (S.D.N.Y. Dec. 23, 2009) (collecting cases); Akeva L.L.C. v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C.2002) ("The court joins the majority of courts who have rejected the theory that silence in the scheduling order renders the federal rule allowing rebuttal evidence meaningless.").

**ARGUMENT**

I. **<u>Plaintiffs' supplemental disclosures were timely.</u>**

Plaintiffs' November 18, 2024 supplemental disclosures were timely for two reasons: (1) the parties have known about the *Lippert* reports, including the monitors' identities, since February 2023; and (2) Plaintiffs' decision to explicitly disclose the 2014 *Lippert* monitors was in response to one of Defendants' November 7, 2024 expert reports.

Because the parties have been undoubtedly aware of the *Lippert* monitors and their respective roles since February 2023, Plaintiffs' supplemental disclosures were timely and were only issued out of an abundance of caution.

Under Rule 26(e)(1), there is no obligation to supplement Rule 26(a)(1) witness disclosures to formally identify a witness where the opposing party is on notice during the

discovery period of the witness's identity, the subjects on which he could provide testimony pertinent to the case, and the party's potential interest in calling the witness in support of its claims or defenses. *See Maxson v. Dwyer*, No. 16-CV-9417, 2023 WL 4352146, at *2 (N.D. Ill. July 5, 2023); *see also*, *Johnson v. Statewide Investigative Servs., Inc.*, No. 20 C 1514, 2021 WL 825653, at *12 (N.D. Ill. Mar. 4, 2021); *G&G Closed Cir. Events, LLC v. Castillo*, No. 14 C 2073, 2016 WL 3551634, at *9 (N.D. Ill. June 30, 2016) (quoting Fed. R. Civ. P. 26(e)(1)(A) (finding that there is a "safe harbor" for "witnesses who had otherwise been made known to the opponent 'during the discovery process or in writing.'")); *Wells v. Berger, Newmark & Fenchel, P.C.*, No. CIV.A. 07 C 3061, 2008 WL 4365972, at *2 (N.D. Ill. Mar. 18, 2008).

In February 2023, Plaintiffs received documents from Illinois Department of Corrections ("IDOC") that were responsive to their subpoena, including the *Lippert* Reports from 2014 and 2018. Subsequently, Plaintiffs produced all the IDOC documents to Defendants. Long before the production, Plaintiffs had been seeking the identities of Wexford patients from Defendants so it could issue the IDOC subpoena. Thus, since February 2023, Defendants have known about the *Lippert* monitors, their identities, and their respective roles in the review of IDOC's medical care as conducted in *Lippert*. Additionally, Plaintiffs and their experts have regularly relied on the *Lippert* Reports to develop support for the *Monell* claims.

Taken together, Defendants have been on notice of Plaintiffs' potential interest in calling the *Lippert* monitors as witnesses in the present litigation. Even more, Defendants specifically retained an expert to criticize and invalidate the methodology of the *Lippert* Reports while also attempting to thwart Plaintiffs' ability to challenge that criticism. Thus, Defendants cannot now claim surprise about the potential role of the *Lippert* monitors in this case when their statistician's opinions triggered Plaintiffs' rebuttal disclosures. Defendants cannot have their cake

and eat it too. *Cf. DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 940 (N.D. Ill. 2021) ("[P]arties cannot withhold documents or information from the other side as well as their expert and then after the expert issues a report and is deposed, produce the documents or information to the other side.").[2]

In their motion, Defendants briefly mention that Plaintiffs' prior lead attorney surrendered the option for rebuttal expert discovery during one of their conferrals for a motion for extension. Br. at 12–13. Defendants do not identify what this means for the Court's analysis. But in any event, it is not dispositive or relevant. At the time Plaintiffs' counsel did so, he did not know that Defendants would later disclose an expert statistician to attack the methodology of the *Lippert* case review. Thus, as a rebuttal disclosure, Plaintiffs disclosed the *Lippert* monitors in an appropriate timeframe. *See Hammers v. Douglas Cnty.*, 15-7994, 2016 WL 6804905, at *3 (D. Kan. Nov. 16, 2016) (holding rebuttal expert disclosure was proper and timely where plaintiff introduced causation experts in their case-in-chief, then introduced rebuttal experts to rebut defense expert's theory on causation).

Even if this Court found Plaintiffs violated the scheduling order by disclosing rebuttal experts where the scheduling order did not specifically contemplate it, there is good cause. Fed. R. Civ. P. 16. Plaintiffs could not have predicted in preparing their case in chief that Defendants would mount a statistical attack on Plaintiffs' expert's methodology, where Plaintiffs had limited access to other patients' medical records. Defendants have cited no case law stating that such statistical analysis is prima face evidence for a Monell claim. Indeed, a "statistically significant"

---

[2] Moreover, Defendant Wexford at the outset of this case disclosed as witnesses: "Individuals identified in records received in response to Defendants' subpoenas in this matter as they may have information related to the records they authored or consulted with." Wexford's April 5, 2022 Initial Disclosures. Plaintiffs are not waiving any argument that these disclosures are impermissibly vague and inconsistent with the requirements set forth under Rule 26, but after issuing such a blanket disclosure Defendants cannot claim surprise in their motion.

pattern is not an element of a *Monell* claim. *See* Seventh Circuit Civil Pattern Jury Instructions, Instruction No. 7.24.

## II. **Plaintiffs' disclosures are permissible by the *Lippert* Court.**

The Court can also swiftly dispense of Defendants' argument that the *Lippert* monitors are not allowed to testify in any other cases about what they learned in their capacity as court-appointed experts. First, Plaintiffs have only disclosed these individuals, Dr. Shansky and his team, but has not attempted to subpoena them for depositions. Nothing in the *Lippert* Court's order bars a party from disclosing them as witnesses. *See generally*, Defs.' Ex. A at Dkt. 198-1. Plaintiffs have not issued trial subpoenas for the *Lippert* monitors, but simply disclosed them as expert witnesses as obligated under Rule 26. Thus, Defendants' motion to strike is improper for its timing alone.

Second, the question of whether this Court's subpoena power will be affected by the *Lippert* Court's order is a question of law to be decided by this Court. Moreover, the monitors were only barred from testifying in any unrelated case about "information gained in the course of performing their" court-appointed roles, such as the medical information of prisoners. Dkt. 198-1, Defs.' Ex. A at ¶1(b). With the relevant orders, the *Lippert* Court sought to prevent the prisoners who were subjects of the *Lippert* Report from deposing or subpoenaing Dr. Shansky and his team for their respective individual cases for denial or delay in medical care.

However, Mr. Reed Sr. was not a patient examined by the *Lippert* team or identified in the *Lippert* Reports. Plaintiffs disclosed the monitors to speak to the underlying methodology of their analyses. That is not the type of testimony the *Lippert* Court sought to prevent. In other words, the court's order in *Lippert v. Godinez* was meant to protect Dr. Shansky and his team from being subpoenaed to testify about medical information in the individual cases contained in

the *Lippert* reports—not shield them from explaining or defending the methodology they employed to conduct their review of IDOC and Wexford.

Therefore, nothing in the *Lippert* Court Orders that Defendants reference prohibits the court-appointed experts from testifying about their methodology.

### III.    The *Lippert* Monitors are not retained experts under Rule 26(a)(2)(B).

Despite Defendants' representations, the *Lippert* monitors patently fall outside of the definition of "retained" experts under Rule 26.

Under Rule 26(a)(2)(B), a retained expert is "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B); *Lewis v. PDV Am., Inc.*, 247 F.R.D. 544, 546 (N.D. Ill. 2007).

To determine whether an expert is retained or not, courts often examine the relationship between the expert and the party, as well as the context in which the expert's knowledge was acquired. *See, e.g., Cedant v. United States*, 75 F.4th 1314, 1321–22 (11th Cir. 2023) (finding that an expert is "retained" when their connection to the litigation was, from the outset, as a paid expert witness). A party "retains" someone for a purpose, and that purpose is most naturally defined at the beginning of the relationship. *Id.* "Forming an opinion based on a review of documents and invoices after the fact is the province of a retained expert witness under Rule 26(a)(2)(B)." *LeBlanc v. Mr. Bult's,* Case No. 15 C 6019, 2019 WL 3776957, at *4 (N.D. Ill. Aug. 12, 2019) (citing *Vill. Of Bondville v. Windstream Corp.*, No. 13 C 2078, 2015 WL 13608437, at *4 (C.D. Ill. Apr. 13, 2015)).

As such, courts routinely classify treating physicians as non-retained experts under Rule 26. *See, e.g.*, *Beaton v. SpeedyPC Software*, 338 F.R.D. 232 (N.D. Ill. 2021); *Guarantee Tr. Life*

9

*Ins. Co.*, 291 F.R.D. at 237; *Coleman v. Am. Fam. Mut. Ins. Co.*, 274 F.R.D. 641 (N.D. Ind. 2011); *Zurba v. United States*, 202 F.R.D. 590 (N.D. Ill. 2001).

Non-retained experts can, and must, only testify about opinions that were formed in the course of their participation in the relevant events of the case. *Guarantee Tr. Life Ins. Co.*, 291 F.R.D. at 237. This means that non-retained experts may not testify to any opinions they developed later on or in anticipation of the litigation. *Peters v. Butler*, No. 3:16-CV-00382-MAB, 2021 WL 979272, at *7 (S.D. Ill. Mar. 16, 2021). For example, a former employee may be a non-retained expert if he or she is a percipient witness and would testify based upon personal knowledge of the facts or data at issue in the litigation. *Guarantee Tr. Life Ins. Co.*, 291 F.R.D. at 237.

Here, Plaintiffs did not retain, or seek to retain, Dr. Shansky or his team, nor did Plaintiffs "specially employ" them to provide expert testimony in this case. In fact, Plaintiffs have not contacted the *Lippert* monitors at all. Moreover, the *Lippert* monitors have not reviewed any documents specific to Mr. Reed's care or treatment in IDOC. The monitors are percipient witnesses in this case because they acquired the relevant knowledge—IDOC's medical care system and the method for monitoring it—through their court appointment in *Lippert* and independent of Plaintiffs' litigation. These known facts are in the record: in the third-party patient files and in the *Lippert* reports. Given that, Rule 26 does not require Plaintiff to obtain and disclose reports from these *Lippert* monitors. Therefore, Plaintiffs' November 18 disclosures are sufficient.

## IV. Plaintiffs' supplemental disclosures were justified and harmless.

Even if the Court finds that the supplemental disclosures were untimely, it should still deny Defendants' motion to strike because Defendants did not suffer any harm as a result and the timing was substantially justified.

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37. The determination of whether a late expert witness disclosure should be allowed is entrusted to the district court. *Caterpillar*, 324 F.3d at 857. The Seventh Circuit has set forth four factors to guide the district court's analysis: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Ruddell v. Marathon Petroleum Co. LP*, No. 3:15-CV-1253-NJR-DGW, 2017 WL 1479324, at *2 (S.D. Ill. Apr. 25, 2017) (citing *Caterpillar.*, 324 F.3d 851 at 857. Substantial justification is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Ellison v. Windt*, 2001 WL 118617(M.D. Fla. Jan. 24, 2001) (quotation and citation omitted).

As explained above, Defendants have suffered no prejudice or surprise from Plaintiffs' November 18, 2024 disclosures. The strongest evidence of this is the relief Defendants sought in their motion—rather than seeking to reopen discovery to depose the *Lippert* monitors, Defendants have sought the far more extreme sanction of striking Plaintiffs' supplemental disclosures. In fact, Defendants do not even argue that they were harmed or prejudiced by Plaintiffs' disclosures, thereby waiving the argument. *See Milligan v. Bd. of Trs. of S. Ill. Univ.,*

686 F.3d 378, 386 (7th Cir.2012) ("Milligan did not make that argument, either here or in the district court. His failure to do so forfeits the argument."); *Kyles v. J.K. Guardian Sec. Servs.*, 236 F.R.D. 400, 401 (N.D. Ill. 2006) ("skeletal, undeveloped, perfunctory or unsupported, arguments are deemed waived.").

Indeed, expert depositions were still ongoing when Plaintiffs disclosed the *Lippert* monitors, with the final expert deposition taking place two days later. And as explained above, Defendants knew much earlier that the *Lippert* monitors had knowledge of the facts in this case but chose not to depose them. This is likely because Defendants already have their prior testimony from the *Lippert* matter. *McKee v. Montiel et al*, No. 6:2021cv01085 (M.D. Fla. 2023) (finding no harm or prejudice where, if plaintiff disclosed earlier, defendants would have had to make the same strategic decision whether to depose the witnesses). As to the second factor, because Defendants were not prejudiced by Plaintiffs' November 2024 supplemental disclosures, there is nothing to cure. However, in the event the Court disagrees, the proper relief would be to allow Defendants to seek the depositions of the *Lippert* monitors (other than Dr. Shansky) should they choose to proceed with them.

For the third factor, Plaintiffs' disclosures are not likely to disrupt the trial schedule. In fact, Plaintiffs supplemented their disclosures with the *Lippert* monitors as soon as they could after Defendants' expert reports and depositions. In anticipating Defendants' position on their disclosures, Plaintiffs issued the rebuttal disclosures during discovery, even if on the last day, to avoid an eleventh-hour legal quarrel in the lead up to trial that would distract from pretrial preparation and divert the Court's resources.

Lastly, Plaintiffs did not disclose the *Lippert* monitors when they did in bad faith or to gain a strategic advantage in litigation. Rather, Plaintiffs only appreciated the importance of the

*Lippert* monitors after Defendants' expert attacked the Report's methodology through his own opinions and at his deposition, and then Plaintiffs immediately disclosed the *Lippert* monitors.

Courts in this Circuit routinely deny motions to strike disclosures in similar circumstances as presented here. *See, e.g.*, *Abbey Ridge LLC v. Addison Ins. Co.*, 416 F. Supp. 3d 760 (S.D. Ill. 2019); *Shirrell v. Billing*, No. 17-CV-0567-MJR-DGW, 2018 WL 3328092, at *2 (S.D. Ill. May 10, 2018); *Whitlow v. Martin*, No. 04-CV-3211, 2008 WL 4822054 (C.D. Ill. Oct. 28, 2008) (denying the defendants' motion to strike plaintiff's supplemental disclosures issued on the last day of discovery because the defendants did not suffer any unfair surprise); *Headley v. McVaigh*, No. CIV. 06-4002-GPM, 2007 WL 1100760 at *3 (S.D. Ill. Apr. 12, 2007) (denying defendants' motion to strike plaintiff's Rule 26(a)(2) disclosures); *Barron v. Lee Enterprises, Inc.*, 183 F. Supp. 2d 1077 (C.D. Ill. 2002) (finding no prejudice where witnesses could have been deposed during discovery period); *see also*, *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 723 F. Supp. 3d 640 (N.D. Ill. 2024) (denying motion to strike and request for leave to conduct deposition where late disclosure was not in bad faith, and where movant could obtain context from their own documents and their own employees); *Bezingue v. Steuben Lakes Reg'l Waste Dist.*, 507 F. Supp. 3d 1021 (N.D. Ind. 2020) (denying request for leave to conduct deposition where party chose not to depose disclosed witness, who was a known potential witness, during discovery); *Lane v. Walgreen Co.*, No. 1:12-CV-01180-SEB, 2014 WL 2881543 at *6 (S.D. Ind. June 24, 2014) (denying motion to strike where plaintiff's disclosure was made less than a week after unexpected deposition testimony).[3]

---

[3] Citing no caselaw, Defendants also seek to strike Plaintiffs' entire disclosure on the basis that Dr. Shansky died. Br. at 6. Plaintiffs conducted an investigation into the availability of the *Lippert* monitors as soon as they discovered that their testimony might be necessary but did not learn of Dr. Shansky's recent death prior to reading Defendants' motion to strike.

In light of Defendants' November 7th expert disclosures, Plaintiffs' supplemental disclosures of the *Lippert* monitors, functioning as rebuttal witnesses, were timely. However, if the Court disagrees, it must still deny Defendants' motion to strike pursuant to under the Seventh Circuit's *Caterpillar* analysis.

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Strike (Dkt. 198) in its entirety, and any other relief it deems appropriate.

Respectfully Submitted,

*/s/ Gianna Gizzi*
*One of Plaintiffs' Attorneys*

Jon Loevy
Maria Makar
Gianna Gizzi
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
makar@loevy.com
*Attorneys for Plaintiff*