UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LENNISHA REED and LENN REED JR., as Co-Administrators of the Estate of LENN REED, SR., #B28789,<br><br>    Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, STEPHEN RITZ, and FAIYAZ AHMED,<br><br>    Defendants. | Case Number 3:20-cv-01139-SPM<br><br>Judge Stephen P. McGlynn |

## DEFENDANTS' JOINT REPLY TO THE MOTION TO STRIKE PLAINTIFFS' 26(a)(2)(C) DISCLOSURES

COME NOW Defendants WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O., by and through their attorneys, CASSIDAY SCHADE LLP, and Faiyaz Ahmed, M.D., by and through his attorneys, HEYL, ROYSTER, VOELKER & ALLEN P.C., and for their Joint Reply to the Motion to Strike Plaintiffs' 26(a)(2)(C) Disclosure, state as follows:

1. Although replies are disfavored, exceptional circumstances warrant a reply as, yet again, Plaintiffs' Response misrepresents facts and the law to this Court, including but not limited to Plaintiffs falsely telling this Court 1) there was prior testimony from Dr. Shansky, 2) Defendants have this prior testimony, and 3) such testimony is why Defendants did not depose Dr. Shansky (instead of the facts that *he is deceased, he is barred from testifying,* and ***Plaintiffs did not timely disclose him***).  Meanwhile, Plaintiffs' Response fails to justify how they disclosed a deceased person on the last day of discovery after they proffered to the *Lippert* court that they would not seek the monitor's testimony because Plaintiffs know the monitors are barred from testifying in any other matter.

2. First, Plaintiffs' argument appears to be both that the disclosure of the *Lippert* monitors was certain, ***and*** that Plaintiffs were surprised by Defendants' retained statistician, so much so that they

decided for the *first time* that they needed to disclose the *Lippert* monitors. These arguments are mutually exclusive. If it were true that "Defendants have been on notice of Plaintiffs' potential interest in calling the *Lippert* monitors as witnesses in the present litigation," then Plaintiffs had no excuse for their failure to timely identify them as expert witnesses in this case.

3. Of course, Plaintiffs' proffer that Defendants were on notice is untrue as Plaintiffs promised the *Lippert* court that they would not seek the monitors' testimony because the court has barred such testimony. Thus, a truthful rendition of the history of this case is that Plaintiffs have made it clear that they intend to interject the *Lippert* **reports**, but they knew they could not obtain ***testimony*** from the *Lippert* monitors. This explains why Plaintiffs apparently conducted no investigation into whether the witnesses were even alive, let alone willing and able to testify.

4. To the extent Plaintiffs complain that they are in a predicament, Plaintiffs made the calculated choice to base their case on inadmissible reports from *Lippert* that had not been subject to cross-examination or scrutiny. When the reports are compared to industry standards, they fail to meet any degree of reliability or accuracy. Plaintiffs' strategic choice to base their claims on opinions of individuals who are barred from testifying in this case is a problem of their own making. These reports should be barred, which resolves all pending matters before this Court.

5. It was also Plaintiffs' strategy choice to assume the *Lippert* reports were accurate and reliable. While this was an ill-advised choice given that it is Plaintiffs' burden to lay the foundation for her proposed evidence, Plaintiffs' argument that they were surprised by Defendants' expert testimony because Plaintiffs did not question the *Lippert* reports is not an exception to the discovery rules. Plaintiffs should have anticipated Defendants would defend this matter by timely disclosing retained experts. Defendants' retained experts reviewed the same documents available to Plaintiffs. Mr. Heidari, a methodologist, assessed the *Lippert* reports based on industry standards equally available to Plaintiffs. Mr. Heidari's opinions that the *Lippert* reports are unreliable, and that Dr. Venters knew

or should have known that the reports were unreliable, were appropriately and timely disclosed.[1] In fact, they are uncontested by Dr. Venters or any other witness. Plaintiffs make no sound argument, let alone citation to relevant caselaw to support their argument that Defendants' timely disclosure of expert witnesses permits Plaintiffs' disclosure of expert witnesses on the last day of discovery.

6. Plaintiffs argue, "Defendants cannot have their cake and eat it too," citing a case concerning withholding documents until after an expert is deposed. To be perfectly clear, there are *no* allegations that Defendants withheld any documents from Plaintiffs. Instead, it appears Plaintiffs' objection is that there were not simultaneous expert disclosures in this case. Yet, it was Plaintiffs' proposed scheduling order that was adopted, including that Plaintiffs waived rebuttal discovery in order to obtain additional time for their expert disclosures (another strategy choice). (Ex. D, p. 4, "***Plaintiff second proposal***. In response, Plaintiff proposed the following schedule, in which Plaintiff proposed to forego submittal of a rebuttal report.").[2] Now, Plaintiffs argue they are entitled to rebuttal disclosures, while denying Defendants any discovery thereto. Defendants cannot bear the burden of the consequences of Plaintiffs' strategy choices.

7. Plaintiffs oddly argue that their disclosure of expert witnesses is proper because they have not subpoenaed the witnesses yet, which is a separate issue. Nonetheless, this passive admission that a subpoena of the *Lippert* monitors would be inappropriate only highlights the issues here. The purpose of the expert disclosure is to provide the opposing side with an opportunity to discover and defend the opinions. Particularly, Plaintiffs seek to call the *Lippert* monitors to testify to the methodology utilized in their review. The *Lippert* reports indicated that the methodology from the California Prison

---

[1] Of note, Plaintiffs did not file a motion to bar or limit and of Defendants' retained witnesses and the time to do so has passed.

[2] It is remarkable that Plaintiffs argue that their waiver of a rebuttal disclosure is irrelevant when they are arguing the disclosure at issue was intended to be a rebuttal disclosure. Of course Mr. Weil did not yet know Defendants' experts' opinions, which is nearly always the case when preparing a proposed scheduling order, but he intentionally and knowingly waived rebuttal disclosures so he could obtain more time to disclose Plaintiffs' retained witnesses' reports.

Receivership was supposed to be used, but a simple comparison shows that it was not. The *Lippert* reports contain no alternative applied methodology, which necessitated the retention of Mr. Heidari. In other words, Plaintiffs seek to inquire with the *Lippert* monitor into topics ***not*** contained in the reports and not previously disclosed, which would unduly prejudice Defendants.

8. Second, Plaintiffs' proffer to this Court that Defendants chose not to depose Dr. Shansky because Defendants had his prior testimony from *Lippert* is a false statement made for the purpose of improperly influencing the Court's decision. After reading such representation, undersigned counsel conferred with both Wexford and counsel for Wexford in *Lippert,* confirming that no such prior testimony was available. Undersigned counsel then requested Plaintiffs' counsel remedy this misrepresentation to the Court. Plaintiffs' counsel has refused. Plaintiffs' pattern of a lack of candor with the Court will be addressed further in a subsequent motion, but should the Court have any question in ruling on this motion as to Plaintiffs' misrepresentation, Defendants seek a hearing.

9. Third, Plaintiffs' argument that "Defendants refused to provide Plaintiffs with the identities and medical records of other Wexford patients for their *Monell* claim," misrepresents the history of this case but is ultimately irrelevant to the pending motion as it does not relate to the disclosure of *Lippert* monitors. Instead, Plaintiffs sought to compel the medical records from the IDOC as the IDOC, not Wexford, maintains the medical records for incarcerated persons. The IDOC produced a spreadsheet naming prisoners who have died from 2000-2020. Instead of having Dr. Venters create a pool of patients from the IDOC spreadsheet, Plaintiffs' counsel cherry-picked patients from the *Lippert* reports. The patients' names were protected from disclosure by the *Lippert* court. Years ago, Plaintiffs intervened in *Lippert* to obtain the names of the patients. This can hardly justify Plaintiffs' inappropriate disclosure of deceased and barred witnesses on the last day of discovery years later.[3]

---

[3] In fact, Plaintiffs' argument, as it can be interpreted, is that Plaintiffs were surprised that Defendants challenged the methodology for sampling the patients ***Dr. Venters*** reviewed. While Plaintiffs may have failed to appreciate the foundational flaws of cherry-picking cases from the *Lippert* reports, this argument

4

10. Fourth, citing nothing, Plaintiffs argue that questions remain as to the enforceability and scope of the *Lippert* court's protective orders. These arguments are unsupported by any fact or law and lack a good faith basis. Instead, as Defendants previously briefed at length, the *Lippert* Court held that to "conclude Dr. Shansky should be allowed to be deposed [] in an unrelated case would be contrary to the plain language of [Rule 706] and this Court has no discretion to ignore the plain language of Rule 706." *Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-3, p. 10.[4]

11. Fifth, Plaintiffs' argument that the *Lippert* monitors are non-retained witnesses because Plaintiffs did not contact them is meritless. Plaintiffs cite cases concerning non-retained treating physicians, but it is undisputed that the *Lippert* monitors were not treating physicians but were appointed under FRCP 706 for purposes of litigation.[5] It is undisputed that the *Lippert* monitors formed opinions based on a review of documents after the fact, which Plaintiffs concede is the province of a retained expert witness under Rule 26(a)(2)(B). *LeBlanc v. Mr. Bult's, Inc.,* No. 15 C 6019, 2019 U.S. Dist. LEXIS 134937, 2019 WL 3776957, at *4 (N.D. Ill. Aug. 12, 2019); *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017). Plaintiffs' disclosure of the *Lippert* monitors as non-retained experts is improper and should be struck.

12. Lastly, Plaintiffs argue that Defendants' 16-page Motion to Bar did not argue they have been prejudiced, which is demonstrably false.[6] Plaintiffs argue that the evidence Defendants have not been

---

does not relate to the *Lippert* monitors at all. Mr. Heidari's uncontested criticism of Dr. Venters' sampling methodology cannot open the door to Plaintiffs' inappropriate disclosure of deceased or barred witnesses on the last day of discovery.

[4] Subsequently, Plaintiffs argue, "The monitors are percipient witnesses in this case because they acquired the relevant knowledge—IDOC's medical care system and the method for monitoring it—through their court appointment in *Lippert* and independent of Plaintiffs' litigation," which is expressly what the monitors were barred from testifying to.

[5] Plaintiffs also confusing cite to caselaw concerning timeliness for supplements to initial disclosures under FRCP 26(a)(1) when the disclosure at issue here is controlled by FRCP 26(a)(2).

[6] "… Plaintiffs' efforts are fatal and are knowingly increasing the cost of litigation with no justifiable purpose... Plaintiffs lack a good faith basis in fact and/or law for their non-retained expert disclosure of *Lippert* monitors and it was propounded to unnecessarily increase the cost of litigation." (Doc. 198, p. 10-11). "Yet, Plaintiffs disclosed *Lippert* monitors as potential witnesses in this case on the last day of discovery, November 18, 2024, when Defendants could do nothing further in response…"[i]t is beyond debate that this left no time for

prejudiced is that Defendants sought to bar testimony instead of reopening discovery to depose the witnesses. First, the witnesses are already barred from testifying, which is entirely the point. Second, Dr. Shansky, the main author, is deceased. Third, for years, Defendants have objected to Plaintiffs' dilatory prosecution of this case. Reopening discovery and attempting to depose people who are barred from testifying will only continue to increase litigation expenses unnecessarily and delay resolution of this matter. Plaintiffs cannot legitimately argue that reopening discovery would not affect the trial in this case. Not only has discovery closed but also the Defendants have filed their dispositive and *Daubert* motions, which should be granted.

WHEREFORE, for the above reasons, Defendants jointly respectfully request this Honorable Court grant their Motion to Strike Plaintiffs' 26(a)(2)(C) Disclosures, and for such further relief deemed appropriate.

CASSIDAY SCHADE LLP

By: /s/ Jaclyn A. Kinkade
One of the Attorneys for Defendants WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O.

/s/ Keith B. Hill (with consent)
One of the Attorneys for Defendant Faiyaz Ahmed, M.D.

Jaclyn A. Kinkade
ARDC No. 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377

---

depositions or discovery regarding their reports, or engaging rebuttal experts." *Id.* at p. 12. "… to wait until the last day of discovery can only be a strategic choice to 1) attempt to deprive Defendants of the ability to discover and defend this case, including discovery as to whether the monitors are competent, available, or willing to testify, let alone what their opinions in this case would be, and/or 2) to require Defendants to brief yet another motion on a settled issue, increasing the cost of litigation and taking time away from preparation of their meritorious Motions… due in less than a month." *Id.* at p. 13.

(314) 241-1320 (Fax)
jkinkade@cassiday.com

Keith B. Hill
ARDC No. 6277660
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
105 West Vandalia, Suite 100, Mark Twain Plaza III
Edwardsville, IL 62025 0467
(618) 656-4646
khill@heylroyster.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the Southern District of Illinois using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the following:

ATTORNEYS FOR DEFENDANT, FAIYAZ AHMED, M.D.:
Keith Hill
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 618.656.7940
khill@heylroyster.com

ATTORNEY FOR DEFENDANT, ILLINOIS DEPARTMENT OF CORRECTIONS:
Tara Barnett
Assistant Attorney General
201 West Pointe Dr., Ste. 7
Swansea, IL 62226
(618) 236-8781
tara.barnett@ilag.gov

ATTORNEYS FOR PLAINTIFFS:
Jon I. Loevy
Maria Makar
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
jon@loevy.com
makar@loevy.com

/s/ Jaclyn A. Kinkade