UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LENNISHA REED and LENN REED JR., as
Co-Administrators of the Estate of LENN
REED, SR., #B28789,

             Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
VIPIN SHAH, STEPHEN RITZ, and FAIYAZ
AHMED,

             Defendants.

Case Number 3:20-cv-01139-SPM

Judge Stephen P. McGlynn

## DEFENDANTS' MOTION FOR SANCTIONS

COME NOW Defendants WEXFORD HEALTH SOURCES, INC., VIPIN SHAH, M.D., and STEPHEN RITZ, D.O., by and through their attorneys, CASSIDAY SCHADE LLP, and for their  Motion for Sanctions in accordance with FRCP 11, 28 USCS § 1927, and/or Illinois Supreme Court Rule 137, state as follows:

## PRODECURAL HISTORY

1.      Plaintiffs filed this lawsuit on October 28, 2020.  (Doc. 1).

2.      In response to Defendants' April 2021 Requests for Production of Documents, on September 2, 2021, Plaintiffs produced IDOC medical records only from the 1990s for decedent. (Exhibit A, Plaintiffs' Response to Defendants' Request for Production).

3.      On or about December 6, 2021, Defendants received a response to their subpoena to the IDOC for Mr. Reed's medical records and quickly learned that the Complaint had numerous misrepresentations of objective fact underlying their claims against the Defendants.  For example, Mr. Reed was admitted in the hospital receiving care during the time frame Plaintiffs allege Dr. Shah failed to provide Mr. Reed medical care.

4.      On December 21, 2021, undersigned counsel conducted a meet and confer with Plaintiffs' counsel raising the failure to disclose medical records in Plaintiffs' counsel's possession that disproved their allegations.  Undersigned counsel demanded Plaintiffs amend the Complaint to remedy the knowingly false allegations, including but not limited to paragraphs 28 and 31. (Exhibit B, December 21, 2021 Correspondence to Plaintiffs' counsel).

5.      The following day, December 22, 2021, Plaintiffs produced the relevant IDOC medical records (PLAINTIFFS000207 - PLAINTIFFS004443).  (Exhibit E, Correspondence re Plaintiffs' Supplemental Production).[1]

6.      Instead of curing their errors, Plaintiffs filed a Motion to Compel.  (Doc. 44).

7.      In response to the Motion to Compel, Defendants outlined again the objectively false allegations in the Complaint.  (Doc. 47).

8.      On March 8, 2022, Plaintiffs replied in part, "[l]awyers make mistakes, and it is possible that plaintiff [sic] counsel made one here," but proffered that counsel was *still* reviewing the medical records, even though the case had been pending for a year and a half.  (Doc. 54, p. 5).

9.      Defendants' counsel followed up with Plaintiffs' counsel as 11 weeks had transpired since the meet and confer, and Plaintiffs had not amended the Complaint.  (Exhibit C, March 2022 Correspondence with Plaintiffs' Counsel).

10.     The original expert deadline in this case, agreed to by the parties, was March 22, 2022.  This deadline provided Plaintiffs more than a year to disclose an expert.  (Doc. 27-1).

11.     Still receiving no amendment to the Complaint and due to Plaintiffs' request to extend Plaintiffs' expert disclosures six months, Defendants outlined their position and objection

---

[1] Defendants were not able to locate any further subpoena or document request that would cause this set of records to be produce later.  These records were also produced out of order and with several sets of duplicates.

in a letter dated March 21, 2022. (Exhibit D, Emails and Letter re Plaintiffs' March 2022 Request for Extension of Time).

12.    On March 22, 2022, Plaintiffs sought an extension of four additional months, up to and including July 22, 2022, for their expert disclosures. This request was granted over Defendants' objections. (Docs. 56; 58; 60).

13.    On March 24, 2022, Plaintiffs sought leave to amend the Complaint to cure some, but not all, the misrepresentations made in the Complaint. (Doc. 59).

14.    On July 22, 2022, Plaintiffs' extended expert disclosure deadline, Plaintiffs sought another extension of time seeking three more months for their expert disclosures, up to and including November 4, 2022. (Doc. 72).

15.    This request was granted over Defendants' objections, including that Plaintiffs made false representations to the Court in their Motion.[2] (Doc. 73). However, the Court explained it "will not extend the deadlines again, however, except for exceptional circumstances." (Doc. 78, p. 3).

16.    On November 4, 2022, Plaintiffs did not disclose any experts in this case, nor did they seek a third extension of time.

17.    Instead, on November 18, 2022, Plaintiffs filed their second Motion to Compel. (Doc. 81).

---

[2] "Plaintiffs' Motion proffers to this Court that "Mr. Reed died of cancer without ever even receiving chemotherapy." Not only did Mr. Reed receive chemotherapy, surgery, and radiation, it was Mr. Reed's oncologists at Carle Hospital and Dr. Saba who determined when/if palliative chemotherapy was appropriate. Dr. Saba expressly testified that he was not waiting on any approval from Wexford (the medical team at the facility) during this time. He further explained that Mr. Reed's molecular profile of his cancer showed that his cancer was very high risk and resistant to treatment with an extremely poor prognosis and chemotherapy could end up making his condition worse. Nonetheless, at Mr. Reed's request, he first ordered chemotherapy on December 19, 2018 to begin in two weeks, which Mr. Reed received on January 2, 2019. (Ex. A, 45-48; 54-57; 65-77; 81-86; 89-90; 136)." (Doc. 73, p. 5).

18.    On December 9, 2022, Defendants responded to Plaintiffs' second Motion to Compel, raising that Plaintiffs' deadline to disclose expert witnesses had passed and Plaintiffs disclosed no witnesses which, given the nature of the allegations, made their claims futile.  (Doc. 88).

19.    On December 23, 2022, Plaintiffs filed their third Motion to Compel (against the IDOC).  (Doc. 92).

20.    On January 6, 2023, Defendants again raised Plaintiffs' failure to disclosure any experts in this matter, moved for a protective order or bifurcation, and timely disclosed their experts.  Co-Defendant Dr. Ahmed also timely disclosed his experts.  (Doc. 94).  Discovery was set to close on January 27, 2023.  (Doc. 78).

21.    On January 23, 2023, after Defendants' expert disclosures, Plaintiffs sought another six months for their overdue expert disclosures, extending their expired November 4, 2022 deadline to May 12, 2023.  (Doc. 101).

22.    As the dispositive motion deadline was February 28, 2023, Defendants prepared their Motion and Memorandum in Support of Summary Judgment on the merits, which was nearly finalized when on February 27, 2023, the Court granted Plaintiffs' third Motion for Extension of Time, over Defendants' numerous objections.  The Court set a deadline for the close of all discovery for April 27, 2023.  (Doc. 116)

23.    Dr. Judy Schmidt was retained in March 2023, two and a half years into the litigation and *after* Plaintiffs repeatedly missed their expert disclosure deadlines, *after* Defendants' expert disclosures, and *after* the February 28, 2023, summary judgment deadline. (See Doc. 186, Exhibit A , 16:20-21).  Plaintiffs identified Dr. Schmidt as a retained witness on April 17, 2023.

24.    In her April 2023 report, Dr. Schmidt agreed that Mr. Reed's cancer was terminal at first presentation.  (Exhibit F, Dr. Schmidt's Report).

25.    On April 24, 2023, at Plaintiffs' request, the Court vacated all discovery deadlines. Defendants were informed they could not take Dr. Schmidt's deposition as she may amend her opinions to address Plaintiffs' *Monell* claim. (Doc. 124).[3]

26.    On September 26, 2023, Plaintiffs filed their third Motion to Compel.  In their Motion, Plaintiffs proffered "Wexford revealed to Plaintiff, for the first time, that Wexford's executives had avoided the use of email to communicate about the information in the Lippert reports, and instead had communicated about the Lippert reports by holding meetings."  Plaintiffs also proffered, "[u]pon learning that Wexford executives used meetings to avoid communicating about the Lippert reports via email…" (Doc. 139).  These statements are complete fabrications.

27.    Furthermore, Plaintiffs falsely proffered "Wexford has not produced a single document in response to Plaintiffs' written discovery."  (Doc. 139, p. 6).

28.    Immediately upon reviewing such false statements, undersigned counsel emailed Plaintiffs' counsel as follows:

> The following excerpts from your motion to compel are fabrications.  I have not said that Wexford executives "avoided the use of email."  You can make whatever argument you want but saying that my client made this statement to you is false and highly inappropriate.  You are publicly filing false statements about myself and my client, in a perceived attempt to improperly damage our relationship.  Amend this motion to be forthright with the Court.  If you do not remedy this misrepresentation, we will seek relief from the Court and all future communication between us will need to be in writing.

29.    Instead of amending the motion, Plaintiffs' counsel filed a supplement partially addressing undersigned counsel's concerns.

---

[3] She never amended the report to address Plaintiffs' *Monell* claim.  The reality was that Plaintiffs still had not retained a *Monell* expert.

30.     Defendants continued to attempt to address Plaintiffs' discovery disputes.  The parties participated in numerous communications and Defendants supplemented discovery to address Plaintiffs' concerns.

31.     After several hearings with the Court, on November 16, 2023, the Court ordered the parties to submit a Joint Scheduling Order by December 7, 2023.  Plaintiffs sought three extensions of time and finally provided proposed dates on January 12, 2024, which was entered by the Court.  (Docs. 149-156).

32.     Meanwhile, on December 8, 2023, in the *Wiley* matter, where Plaintiff, by and through Mr. Weil, and Defendants submitted a Joint Report to the Court as to their positions on the outstanding discovery (concerning the same discovery material Plaintiffs simultaneously sought in this matter).  (Exhibit G, Discovery Dispute Letter and Attachments).

33.     The Joint Report explained,

For the *Lippert* meetings invitations issue, I want to confirm your offer to resolve this issue. If we conduct a third review of the Lippert ESI protocol results for meeting invitations responsive to interrogatories #15-18 in *Wiley* and #16-19 in *Reed*, and supplement these interrogatories with the date, subject, and invitees for each meeting, will this resolve written discovery on meeting invitations/meeting dates.  In other words, there will be no further written request or demand by Plaintiff to review/conduct Lippert ESI again or conduct further investigation/production as to the dates, subject, invitees, etc. related to Lippert meetings.
If so, we may be able to come to an agreement to avoid additional briefing on the issue and move forward in discovery but I need to be clear on the agreement to confirm with my client.
Despite Plaintiff's original optimism that this proposal "would go a long way to resolving this," last night Plaintiff declined continued discuss[ion] of this proposal and seeks Defendant conduct further investigation into when Lippert meeting occurred and who was in attendance/invited.

34.     Yet, on March 5, 2024, Plaintiffs filed yet another Motion to Compel, falsely alleging  "Plaintiffs have also offered to confine the meetings to the various electronic 'invitations'

that Wexford's counsel reviewed (but did not produce) as part of the ESI discovery in this case."
(Doc. 159).

37. Undersigned counsel promptly contacted Plaintiffs' counsel about these false
representations and the parties conducted a meet and confer on March 6, 2024.   (Ex. G).

36. On March 7, 2024, Plaintiffs filed a Motion to Withdraw the Motion to Compel,
stating the issues were resolved after Plaintiffs filed the Motions, instead of taking accountability
for filing motions that were blatantly wrong or clarifying Plaintiffs' false statements about
Defendants and their counsel. (Doc. 160).

37. Given the repeated and escalating nature of the misrepresentations, on March 12,
2024, undersigned counsel propounded a letter to Plaintiffs' counsel's firm addressing a pattern of
false and misleading representations in this case (and *Wiley*) in an attempt to undermine counsel's
relationship with her client and reputation with the Court.  (Ex. G).

38. On April 15, 2024, Plaintiffs filed their fourth Motion for Extension of Time, which
was again granted over the Defendants' objections. (Docs. 162-168).  The Court noted, "Plaintiffs
are advised that absent extraordinary circumstances, no further extensions will be granted."  (Doc.
168).   The parties were also ordered to submit a proposed scheduling order for the remaining
deadlines.

39. On May 27, 2024, the last day of fact discovery, Plaintiffs filed their fifth Motion
for Extension of Time.  (Doc. 170).  Plaintiffs sought another month of fact discovery and an
unknown amount of time for the remaining deadlines.

40. On June 6, 2024, the Court denied Plaintiffs' Motion for Extension of Time to
Complete Fact Discovery. (Docs. 174).  Except for one class of documents, fact discovery had
closed.  The Court ordered a proposed scheduling orders for the remainder of discovery.

41.    On June 17, 2024, Plaintiffs and Defendants provided the Court proposed scheduling and discovery orders. Plaintiffs' proposed amended scheduling order specifically surrendered Plaintiffs' rebuttal discovery in order to obtain additional time for her expert disclosures. (Exhibit H, Plaintiffs' Proposed Amended Scheduling Order).

42.    On June 20, 2024, the Court adopted Plaintiffs' proposed scheduling and discovery order. (Doc. 176). Accordingly, Plaintiffs' expert reports were due on August 5, 2024. *Id.* Defendants' expert reports were due on October 5, 2024 and no rebuttal discovery was allotted for. *Id.*

43.    Because the deposition required extensive travel, prior to the disclosure deadline, the parties agreed that Dr. Schmidt's depositions (for this case and *Wiley*) would be conducted on August 15-16, 2024, in Missoula, Montana. Counsel for Defendants was scheduled to travel to Missoula on August 14th.

44.    At 11:26pm on August 5, 2024, Plaintiffs emailed their 26(a)(2) disclosures, identifying two retained experts (Dr. Schmidt and Dr. Venters) but supplying no reports.  Plaintiff did not identify Dr. Shansky, Dr. Saylor, or RN Hewitt in her 26(a)(2) disclosures.

45.    Plaintiffs did not seek an extension of time for their expert disclosures.

46.    Plaintiffs indicated the reports would be provided on August 6, 2024, at noon, but Defendants did not receive any expert reports at noon on August 6, 2024.

47.    At 10:41 pm on August 6, 2024, Plaintiffs produced a report by Dr. Schmidt, but no list outlining her testimony history and no report whatsoever by Dr. Venters.

48.    Plaintiffs finally produced Dr. Schmidt's deposition list and Dr. Venters' written reports (at 11:40am) on August 7, 2024, two days after Plaintiffs' deadline.

49.     Given only four business days were left between Plaintiffs' untimely disclosures and counsel traveling to Montana, on August 7, 2024, Defendants filed a Joint Urgent Motion to Strike Plaintiffs' Expert Disclosures.  (Doc. 178).

50.     On August 7, 2024, Plaintiffs' counsel emailed undersigned counsel stating, Plaintiffs "propose that given the delay in submitting the reports to you, your deadlines for filing responsive expert reports could be extended from the current October 5 deadline to October 7, with no changes to any other deadlines."[4]  (Doc. 196, Exhibit A, Communications Regarding Plaintiffs' Offer).  Undersigned counsel responded, "October 5 is a Saturday, so the deadline is October 7, but the larger picture is this doesn't resolve the issue with the depositions next week or other issues mentioned in the motions."  *Id.*

51.     On August 8, 2024, the Court indicated that the parties should proceed with depositions and a hearing would be set at a later time to address, "whether Plaintiffs' alleged Rule 26 violation was harmless or not." (Doc. 180).

52.     Dr. Schmidt was deposed in this matter on August 15, 2024.[5]  At her deposition, Dr. Schmidt produced numerous documents, publications, and opinions for the first time.  First, Dr. Schmidt produced a summary report of her opinions that was not provided to Defendants prior to her deposition.  (Doc. 186, Ex. A, 15:3-16:5). Second, the day before the deposition, Plaintiffs produced Dr. Schmidt's 9-page timeline that she created more than a year prior to the expert disclosure deadline.  *Id.* at 16:6-11, 17:7-9. Third, during her deposition, Dr. Schmidt produced

---

[4] Ms. Makar was included on these exchanges.
[5] Defendants note that continuing Dr. Schmidt's deposition was not an option provided to Defendants at the time.  At Dr. Schmidt's deposition, Mr. Weil for Plaintiffs, informed undersigned counsel for the first time that he would be leaving Loevy/Loevy.  He subsequently requested to continue Dr. Venters' deposition and only then moved to continue the remaining deadlines due to his departure.

for the first time three medical publications she relied on. *Id*. at 7:12-8:5; 54:22-55:24; 59:17-63:12.

53.     Fourth, and most importantly, during her deposition, Dr. Schmidt produced yet another article, published in 2016.  Dr. Schmidt then gave ***new opinions***, not contained in her report, based on the newly produced 2016 article, including opinions on Mr. Reed's performance status, responsiveness to chemotherapy, and expected range of survival for BRAF+ colon cancer patients after receiving FOLFOX chemotherapy.  *Id*. at 71:24-72:11.

54.     On September 25th and 26th, Defendants deposed Dr. Venters concerning his untimely report.  While Dr. Venters did not produce new materials at his deposition, Dr. Venters identified a spreadsheet that Plaintiffs' counsel provided him that contained summaries and/or descriptions of care provided to 25 non-party prisoners.  Based on that spreadsheet, Dr. Venters selected 14 patients' records to review in this case because the spreadsheet suggested their care was "relevant."  Yet, this spreadsheet was not produced until after his deposition.

55.     On October 10, 2024, Defendants renewed their Motion to Strike Plaintiffs' 26(a)(2)(B) disclosures given the additional discovery violations learned during the deposition of Dr. Schmidt and Dr. Venters.  (Doc. 186).

56.     In their response, Plaintiffs falsely proffered to this Court that they emailed undersigned counsel and offered a two-day extension of their deadline to depose Plaintiffs' experts in exchange for Defendants' withdrawal of their Motion to Strike. (Doc. 193, p. 3). Plaintiffs' counsel further proffered to this Court that "Defense counsel rejected the offer." *Id.*

57.     Discovery closed on November 18, 2024. (Doc. 185).

58.     On November 18, 2024, Plaintiffs emailed their 26(a)(2)(C) disclosures, identifying Dr. Ron Shansky, Dr. Karen Saylor, and Mr. Larry Hewitt, concerning the 2014 *Lippert* Report

and indicating only that they would testify consistently with the opinions contributed to and authored in it, including knowledge of and expert opinions on the methodology implemented by the medical investigation team.  (See Doc. 198, Exhibit E).

59.    On the same day, undersigned counsel emailed Plaintiffs' counsel, providing both objections to the late disclosures and the *Lippert* Orders barring these same individuals from testifying in any other case.[6]

60.    The next day, Plaintiffs' counsel simply responded, "We will not be withdrawing these disclosures."  Thus, undersigned counsel responded, "Please provide a substantive response in regard to the fact that these witnesses have been barred from testifying."

61.    Plaintiffs' response lacked an understanding of the nature of the *Lippert* Order; thus, on November 20, 2024, in yet another attempt to avoid this Motion, undersigned counsel provided Plaintiffs' counsel with additional *Lippert* holdings that soundly rejected Plaintiffs' position.[7]  Yet, the same day, Plaintiffs' counsel responded, "We will not be withdrawing our disclosures," ending the discussion.

---

[6] "Counsel, setting aside the fact that Plaintiffs' expert disclosures in this case and *Wiley* were due months ago and today is the close of discovery, attached please find the Orders in *Lippert* barring the monitors from testifying in another matter.  See Doc 244, par. 1b and Doc. 593, par. 1c.  As these individuals are barred from testifying in any case but *Lippert*, they could not testify as non-retained experts in this case, even if they were timely disclosed.
Please advise by the close of business tomorrow if you are withdrawing these disclosures.  I will note that if we must file yet another Motion to Strike, we will seek attorneys' fees.
Please advise if you have any questions."

[7] "Getting back to the *Lippert* monitors disclosed as non-retained experts on the last day of discovery, please review the declaration of Dr. Shansky on this very issue that he "would not have accepted the appointment [] if [he] had believed that, in spite of the clear language of the Order, [he] could be subpoenaed for documents or testimony..." (*Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-4).  In that instance, the *Lippert* Court denied leave to intervene to modify the order of appointment and held that to "conclude Dr. Shansky should be allowed to be deposed [] in an unrelated case would be contrary to the plain language of [Rule 706] and this Court has no discretion to ignore the plain language of Rule 706."  (*Lippert v. Baldwin*, Case No. 10-C-4603, Doc. 110-3, p. 10).
This is a settled issue.  I am trying to avoid unnecessary litigation and expense.  Please review the orders we have sent you and have referred to and advise if this changes your stance or if you have questions that

62.     On November 27, 2024, Defendants filed a Joint Motion to Strike Plaintiffs' improper and untimely November 18, 2024 disclosures.  (Doc. 198).

63.     Amongst other issues, in their response, Plaintiffs' counsel falsely proffered to this Court that: 1) there was prior testimony from Dr. Shansky, 2) Defendants had this prior testimony, and 3) such testimony is why Defendants did not depose Dr. Shansky in this case. (Doc. 209).

64.     Undersigned counsel confirmed with both Wexford and its counsel in *Lippert* that no such prior testimony was available. Undersigned counsel then requested Plaintiffs' counsel remedy their fictitious arguments with the Court.  Plaintiffs' counsel has refused and has failed to provide a good faith basis for these proffers to the Court.

65.     This motion, minus this paragraph #65, was served on Plaintiffs' counsel on June 6, 2025.  (Exhibit I, Service of Motion for Sanctions).

## LEGAL STANDARD

FRCP 11(b) requires that an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Illinois law has similar requirements.  Rule 137.

---

can be addressed on a meet and confer.  Alternatively, please advise if you are unwilling to withdraw the disclosure simply because of our pending Motion to Strike untimely retained expert reports/opinions."

"The purpose of . . . section 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co., Inc. v. C & O Enters., Inc.,* 886 F.2d 1485, 1491 (7th Cir. 1989) "Sanctions against counsel under 28 U.S.C. § 1927 are appropriate when counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (quotations omitted). "'Objective bad faith' will support a sanction under § 1927." *Bell v. Vacuforce, LLC*, 908 F.3d 1075, 1081-82 (7th Cir. 2018). "A lawyer demonstrates objective bad faith when [he] pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Id*. at 1082 (quotations and citation omitted). "A court has broad discretion using this power." *Id*; *New v. JPMorgan Chase Bank*, N.A., No. 23 Civ. 1016, 730 F. Supp. 3d 851, 2024 U.S. Dist. LEXIS 69942, 2024 WL 1663371 (N.D. Ind. 2024).

## ARGUMENT

Over the course of more than four years, Plaintiffs' counsel has engaged in a pattern of withholding evidence from Defendants, misrepresenting evidence to the Court, making knowingly false statements and/or refusing to cure material errors in order to improperly influence the Court. Meanwhile, Plaintiffs have failed to comply with the Court's deadlines in order to gain unfair advantages and to prejudice Defendants in this case. Taken collectively, sanctions are warranted to curb Plaintiffs' counsel and others from engaging in these improper practices and to protect the rights afforded to defendants in discovery.

### I.    Plaintiffs' Withholding of Medical Records and their Complaints

There can be no dispute that Plaintiffs did not timely produce the medical records that were in their possession when they filed the Complaint on October 28, 2020. Plaintiffs misrepresented

to the Court that they timely produced some relevant records. (Doc. 56). Six months into discovery, Plaintiffs produced medical records from the 1990s. (Ex. A). Defendants had numerous communications with Plaintiffs' counsel about the **_relevant_** medical records. Only after Defendants informed Plaintiffs' counsel (once Defendants had obtained them from a subpoena to the IDOC) that the records contradicted the Complaint, did Plaintiffs produce medical records during the operative time frame.[8] Plaintiffs had a duty to timely produce initial disclosures and responses to Defendants' requests for production and they did not. Plaintiffs undeniably had the records at the time of drafting the Complaint, as Plaintiffs quote portions of them (but proceeded to plead allegations contrary to the medical records). Then, Plaintiffs did not produce the medical records for more than a year.

Plaintiffs' Complaint alleged that after October 25, 2018, "Dr. Shah, Dr. Ahmed, and Wexford's medical staff allowed Mr. Reed to sit in the prison's infirmary, with no chemotherapy, as his health continued to deteriorate." (Doc. 1, p. 8, ¶28). Yet, on October 25, 2018 until November 3, 2018, Mr. Reed was admitted inpatient at Carle Hospital recovering from the surgery, recommended by his oncologist Dr. Saba, that placed his chemotherapy port and biopsied his advanced metastasized colorectal adenocarcinoma cancer. Dr. Saba had not yet ordered chemotherapy to begin. The Complaint also alleges that after November 14, 2018, "Dr. Shah and Dr. Ahmed did not arrange for Mr. Reed to receive acute, outside medical care that would improve his condition." (Doc. 1, p. 9, ¶31). Yet again, on November 14, 2018, Mr. Reed was inpatient at the hospital receiving palliative radiation and other treatment for his stage IV cancer at the

---

[8] There has been no explanation for why Plaintiffs' counsel produced some but not all of the records.

direction of his treating oncologists.[9]  These objectively false statements in the Complaint allowed Plaintiffs to proceed on claims where there was no good faith basis in fact and law.

These misrepresentations and withholding of records (that would identify these misrepresentations) raise Rule 11 concerns.  If Plaintiffs had been truthful about the content of the medical records, they could not have stated viable claims against the Defendants.  Particularly, there is no good faith basis for the claims against Dr. Shah as he referred Mr. Reed for a CT scan at their first appointment and submitted all recommendations by specialists.  Fast forward to expert discovery and Plaintiffs' retained witnesses could not find error in Dr. Shah's provision of care within his scope of practice.  Instead, Dr. Shah was forced to defend false allegations for years because of intentional misrepresentations or persistent neglect that Plaintiffs and their counsel refused to fully cure.

## II.    Discovery Delays and Further Misrepresentations

Over the course of the next two and a half years, Plaintiffs filed motion after motion delaying expert discovery.  It seems apparent that Plaintiffs filed a claim of a delay in cancer care without consulting any medical professional and proceeded to litigate the same claims despite all evidence to the contrary.  Defendants begged for expert discovery, knowing it would show that Plaintiffs' claims for a failure to cure terminal cancer were meritless.

Plaintiffs did not retain an expert witness for years.  Instead of timely seeking extensions, Plaintiffs allowed expert deadlines to expire, including in November 2022.  Plaintiffs were filing motions to compel and were repeatedly made aware of their missed deadline, but did not seek leave for more time until *after* Defendants propounded their expert disclosures. Only then did Plaintiffs first retain an expert in this case (in March 2023), two and a half years after filing the

---

[9] While Plaintiffs' counsel professed a difficulty reading the records, the Carle Hospital and Dr. Saba's records are typed and clear.

Complaint. Plaintiffs failed to follow the Court's Scheduling Order to gain an improper advantage by having Defendants' expert report before even retaining an expert themselves.

Plaintiffs then moved to stay discovery so Defendants could not depose Dr. Schmidt. Plaintiffs proffered to the Court that Dr. Schmidt may amend her report to include opinions as to their *Monell* claim. In reality, Plaintiffs did not retain Dr. Schmidt to provide *Monell* opinions and Plaintiffs had not retained a *Monell* expert at that time.

Then, after being given another year for their expert disclosures, Plaintiffs missed their August 5, 2024, expert disclosure deadline. Plaintiffs' counsel was aware that the parties had limited availability for expert depositions and, instead of either ensuring they complied with their own deadlines or seeking to extend the deadlines from the Court, Plaintiffs' counsel shifted the burden of their continued delays to Defendants, another improper advantage at Defendants' expense.

The withholding of medical records, expert reports, and materials relied on frustrated and undermined Defendants' ability to discover and defend the claims against them. While Plaintiffs may argue that they missed their August 5, 2024 expert deadline by a matter of days, Plaintiffs knew that Dr. Schmidt's deposition was set in a matter of days. Further, the whole picture shows that after numerous extensions and leave over the course of nearly four years, Plaintiffs refuse to take the Court's deadlines seriously in order to gain unfair advantages and to prejudice Defendants in this case.

### III.    Further Discovery Violations

Defendants previously filed Motions to Strike Plaintiffs' untimely Disclosures incorporated herein as if fully stated. (Docs. 178; 186; 198). For the reasons stated therein, Defendants' Motions should be granted. However, these practices, in light of the remainder of the

patterns in this case, confirm that sanctions should be assessed against Plaintiffs' counsel. Particularly, given the age of the case, missed deadlines, and granted extensions, the fact that Plaintiffs' counsel did not timely and fully comply with their August 5, 2024 deadlines goes beyond forgivable neglect.

Then, on the last day of discovery, November 18, 2024, Plaintiffs improperly disclosed new witnesses, without seeking leave or an extension of time. First, Plaintiffs' expert disclosure deadline had passed more than three months before. Second, in order to procure the expert disclosure extension to August 5th, Plaintiffs surrendered rebuttal disclosures (although this untimely disclosure cannot rightly be deemed proper rebuttal opinions). When confronted about the disclosure on the last day of discovery, months after the deadline, Plaintiffs argued that they are now entitled to rebuttal disclosures without seeking leave of the Court or additional time for rebuttal discovery. Plaintiffs' counsel has shown a pattern of making contradictory and/or provably false statement in order to gain unfair advantages and to prejudice Defendants.

Even worse, Plaintiffs identified witnesses that they knew were barred from testifying in this case. Plaintiffs' counsel had proffered to the *Lippert* court that they would not seek the monitors' testimony for this reason. Plaintiffs' counsel either made false representations to the *Lippert* court or failed to comply with their representations to the court.

Plaintiffs' eleventh-hour disclosure is nothing more than improper gamesmanship to unnecessarily increase the cost of litigation. Plaintiffs clearly conducted no good faith investigation into this disclosure as they would have learned that Dr. Shansky was deceased. Defendants attempted to resolve these late and improper disclosures without Court intervention. Despite Dr. Shansky being deceased, despite Plaintiffs' counsel's representations to the *Lippert* court, despite the fact that the witnesses are barred, despite the fact that the disclosure was out of

time, despite the fact that Plaintiffs surrendered rebuttal discovery, and despite the fact that

Plaintiffs had absolutely no good faith basis that any identified *Lippert* witness could or would

testify in this case, Plaintiffs' counsel would not engage in a meaningful discussion.  Instead, yet

again, Defendants were forced to raise settled legal issues with the Court.

Defendants also note that the timing of these disclosures give the appearance of impropriety

as they are disclosed at remarkably inopportune times for Defendants.  First, Plaintiffs waited until

after Defendants' expert disclosures and just before the February 2023 dispositive motion deadline

to seek to reopen expert discovery.   Second, Plaintiffs' retained witness disclosures and

supplements were produced days prior to the deposition of Dr. Schmidt and when counsel was

traveling.  Third, Plaintiffs' untimely and improper disclosure of *Lippert* monitors was produced

on the last day of discovery, denying Defendants discovery and necessitating Defendants brief

another motion when preparing their summary judgment and *Daubert* motions (in this case and

*Wiley*). Even if the Court determines this pattern in and of itself may not warrant sanctions, in

totality with the remainder addressed herein, the Court should grant Defendants' Motion for

Sanctions.

## IV.    Further Misrepresentations Made to the Court in Plaintiffs' Filings

While Plaintiffs' counsel can and should be an advocate for their clients, Plaintiffs' counsel

has repeatedly made false representations to this Court in order to seek unjust relief or avoid just

relief.

### A.  Plaintiffs' Motions to Compel

In Plaintiffs' Third Motion to Compel, Plaintiffs' counsel made knowingly false

representations about communication with Defendant Wexford and its documentation practices.

At best, Plaintiffs' representations were intentionally vague in order to mislead the Court (and

others) to believe that such proffers were made. Plaintiffs' counsel at the time, Mr. Weil, was a seasoned attorney and capable of differentiating his communication with counsel from his argument. Such intentionally misleading statements were made to prejudice the Court against Wexford, harm undersigned counsel's relationship with her client, and to publicly smear Wexford. These misrepresentations do not meet the standards of professional conduct.

This is but one example of a pattern of misrepresentations by Plaintiffs' counsel to the Court. Defendants noted this was not the first,[10] second,[11] third[12] fourth,[13] fifth,[14] or sixth[15] time Plaintiffs have made misrepresentations to this Court.

In Plaintiffs' September 26, 2023 Motion, Plaintiffs argued that "Wexford has not produced a single document in response to Plaintiffs' written discovery." (Doc. 139). Defendants objected to this lack of candor with the Court, identifying that it only creates division between the parties that frustrates collaborative efforts to conduct discovery, increases the cost of litigation, and wastes judicial resources. (Doc. 143). Amongst other discovery, including production of personnel files, guidelines, and other records, the parties previously spent numerous months developing an ESI protocol to identify documents Plaintiffs sought in this case. Defendants objected to the ESI protocol. Nonetheless, Plaintiffs persisted, and Defendants complied to avoid further Court intervention. After spending months preparing the ESI protocol, undersigned counsel reviewed 3,817 emails, not including attachments. The review constituted 2GB of

---

[10] Docs. 1; 47 re the allegations in the Complaint that were admittedly false.
[11] Docs. 56; 58 re misrepresentation about Plaintiffs' production of medical records.
[12] Docs. 72-73 claiming Mr. Reed died without receiving chemotherapy.
[13] Docs. 81; 88 claiming the parties had met and conferred when they had not and claiming Defendant refused to respond to certain discovery requests, which it did not.
[14] Docs. 101; 107 re the justification and blame for Plaintiffs' untimely third Motion for Extension of Time and claiming they did not review Dr. Moriconi's report.
[15] Docs. 110; 113 misrepresenting Dr. Moriconi's report (that they represented they were not going to review).

information and production was made on July 13, 2023. (Ex. G). Telling this Court that Wexford has not produced a single document in response to Plaintiffs' discovery is a boldface lie meant to prejudice the Court against Defendants and their counsel.

Not to be discouraged by Plaintiffs' previous errors, Plaintiffs then filed a Motion to Compel on March 5, 2024, falsely alleging "Plaintiffs have also offered to confine the meetings to the various electronic 'invitations' that Wexford's counsel reviewed (but did not produce) as part of the ESI discovery in this case." Defendants identified that, in fact, **Defendants offered** to search for meeting invitations and **Plaintiffs**, not Defendant, **refused**. Fortunately, this correspondence was captured both in email and in the Joint Report to the Court in *Wiley*. Instead of clarifying this with the Court, Plaintiffs filed a Motion to Withdraw, falsely stating that the issue was resolved after Plaintiffs filed her Motion to Compel.

Plaintiffs' counsel's misrepresentations became so egregious that undersigned counsel prepared a letter outlining these gross misrepresentations, attacks on counsel and/or her clients, and other hinderances by Plaintiffs' counsel that prevented the parties from advancing the case.[16] (Ex. G). However, as discussed below, the patterns continued. There has been a clear showing that Plaintiffs' counsel are unafraid of being held accountable for lacking candor with the Court.

### B. Plaintiffs' Responses to Defendants' Motions to Strike

When Defendants' counsel moved to strike Plaintiffs' untimely Rule 26(a)(2)(B) disclosures, Plaintiffs' counsel[17] proffered to this Court that they emailed undersigned counsel and offered a two-day extension of their deadline to depose Plaintiffs' experts in exchange for

---

[16] For example, the discovery dispute that Plaintiffs raised in March 2024, could have been resolved four or more months beforehand.
[17] No longer Mr. Weil.

Defendants' withdrawal of their Motion to Strike. (Doc. 192, p. 3).  Plaintiffs' counsel further
proffered to this Court that "Defense counsel rejected the offer."  *Id.*

       **This did not happen.**

       As Defendants outlined in their Reply motion, on August 7, 2024, Steve Weil emailed
undersigned counsel stating, Plaintiffs "propose that given the delay in submitting the reports to
you, your deadlines for filing responsive expert reports could be extended from the current October
5 deadline to October 7, with no changes to any other deadlines."[18] (Doc. 196, Exhibit A).
Undersigned counsel responded, "October 5 is a Saturday, so the deadline is October 7, ***but the
larger picture is this doesn't resolve the issue with the depositions next week*** or other issues
mentioned in the motions."  *Id*. (emphasis added).

       Plaintiffs informed the Court that they offered Defendants a remedy that they did not.
Plaintiffs also informed the Court that Defendants rejected an offer that they did not.

       Upon reading such blatant misstatements of objective fact, undersigned counsel contacted
Plaintiffs' counsel and provided the exact verbiage of the offer made by Plaintiffs' counsel.
Plaintiffs' counsel refused to cure this misrepresentation.  Not only is Plaintiffs' Response untrue,
but also these false statements were specifically made to attack undersigned counsel's credibility
and motivation in seeking just relief.  Plaintiffs' counsel hopes the Court will rely on her
misrepresentations to deny Defendants' Motion to Strike.

       Then, after untimely and improperly disclosing a deceased witness on the last day of
discovery, Plaintiffs' counsel falsely proffered to this Court that: 1) there was prior testimony from
Dr. Shansky, 2) Defendants had this prior testimony, and 3) such testimony was why Defendants
did not depose Dr. Shansky. (Doc. 209).  Plaintiffs' proffer to this Court that Defendants chose not

---

[18] Ms. Makar was included on these exchanges.

to depose Dr. Shansky because Defendants had his prior testimony from *Lippert* is a false statement made for the purpose of improperly influencing the Court's decision. After reading such representations, undersigned counsel conferred with both Wexford and counsel for Wexford in *Lippert,* confirming that no such prior testimony was available.[19] Undersigned counsel then requested Plaintiffs' counsel remedy this misrepresentation to the Court. Plaintiffs' counsel refused. Clearly, Plaintiffs' counsel fears no accountability for making material assertions about Defendants without a good faith basis in fact and law.

Looking just at the number of times Defendants have had to reach out to Plaintiffs' counsel in this case about misrepresentations to the Court about objective facts, there is a serious problem. Then, looking at the subject matter of the misrepresentations, i.e. client communication, discovery agreements, and availability of testimony, these are not small issues. These are gross misrepresentations made to prejudice the Court against Defendants and their clients and to mislead the Court on material facts related to pending motions. These patterns have made litigation in this case unnecessarily difficult, unreasonably delayed, unduly expensive, and unnecessarily taxing on judicial resources. Accordingly, Defendants' Motion for Sanctions should be granted. *See Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005)(upholding sanctions against counsel for proceeding on claims "entirely without a factual basis," explaining "cases in which this court has upheld section 1927 sanctions have involved situations in which counsel acted recklessly, counsel raised baseless claims despite notice of the frivolous nature of these claims, or counsel otherwise showed indifference to statutes, rules, or court orders.")(quoting *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992).

---

[19] Quite obviously, Dr. Shansky was not deposed because: 1) he was not identified as a witness in this case, 2) he is not a witness in this case, 3) he is barred from testifying in this case, and 4) he passed away and is incapable of being deposed. Arguments to the contrary are absurd and disingenuous at best.

**C.  Plaintiffs' Responses to Defendants' Motion for Summary Judgment**

As briefed in Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment (Doc. 233), Plaintiffs continued to make misrepresentations to the Court to attempt to confuse and mislead the Court to attempt to avoid summary judgment.  Plaintiffs' misrepresentations include but are not limited to: 1) arguing Dr. Ritz delayed oncological or palliative care; 2) arguing that Dr. Schmidt found a delay in Dr. Shah's CT referral after Dr. Schmidt admitted her opinion was in error; 3) arguing weights were not documented when they were documented (another Dr. Schmidt error that she recanted at her deposition); and 4) mischaracterizing Dr. Saba's notes by ignoring his clarifying testimony concerning the same.

Furthermore, Plaintiffs' counsel repeatedly misrepresented facts and/or holdings in other cases.  For example, as outlined in Defendants' Reply, Plaintiffs argued that in *Piercy v. Warkins,* 14 CV 7398, 2017 U.S. Dist. LEXIS 62552, 2017 WL 1477959, at *12 (N.D. Ill. Apr. 25, 2017), the court found seven instances could constitute a widespread practice; however, "Dr. Evans reviewed 455 charts of inmates who had been incarcerated in WCJ (Whitehouse County Jail)," and in footnote 4 explains "[i]n 2013, WCJ had an average daily population of 74 detainees." *Id*. Plaintiffs' arguments, both on the facts and the law, lack a good faith basis and instead Plaintiffs intentionally misrepresent objective facts to this Court.  The history of this case shows that these errors are not mistakes but are a pattern of attempting to mislead the Court to attempt to avoid just relief.  Not only does this unnecessary increase litigation costs by forcing Defendants to brief each misrepresentation, but also it makes the Court's assessment much more difficult and unnecessarily time-consuming. For the reasons stated herein, Defendants' Motion for Sanctions should be granted.

## **CONCLUSION**

Defendants have had to brief the Court on Plaintiffs' numerous objective false statements about counsel's communications, the objective facts in Mr. Reed's care, the documents produced in this case, holdings in other cases, the existence of testimony, untimely disclosures, depositions by ambush, deceased/barred experts, unreasonable delays in discovery (many times over), etc. Plaintiffs' counsel decided to make this case about delaying discovery to attack Defendants and their counsel and exponentially increase the cost of litigation, instead of the fact of Mr. Reed's care. This is clearly a strategy choice to prejudice Defendants, confuse the Court, and make litigation as expensive as possible, all to leverage a case alleging Defendants did not cure terminal cancer.

Whether under FRCP 11 or 28 USCS § 1927, the Court should sanction Plaintiffs' counsel for numerous reasons including but not limited to: 1) withholding of medical records and misrepresentations in the Complaint; 2) discovery delays and further misrepresentations; 3) repeated discovery violations; and 4) additional misrepresentations made to the Court in Plaintiffs' filings. These patterns only serve to increase frivolous and unnecessary litigation, deny Defendants their rights, and overextend the resources of the Court. The duration and degree of Plaintiffs' counsel's disregard for the Court, basic tenets of litigation, and fundamental fairness cannot be ignored. As such, Defendants seek sanctions against Plaintiffs' counsel, including striking the identified pleadings and an amount to be determined by the Court.[20]

---

[20] Defendants note that these issues are not isolated to a specific attorney but have spanned years and attorneys from Plaintiffs' counsel's firm. Defendants have made these issues known, yet they continued. Thus, although Mr. Weil's behavior in this case is deeply troubling, these issues cannot rightly be assessed *only* against him.

WHEREFORE, for the aforementioned reasons, Defendants pray this Court grants their Motion for Sanctions, sanction Plaintiffs' counsel in accordance with the above, and for any further relief the Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By:  /s/ Jaclyn Kinkade
          One of the Attorneys for Defendants
          WEXFORD HEALTH SOURCES, INC., VIPIN
          SHAH, M.D., and STEPHEN RITZ, D.O.

Jaclyn Kinkade
ARDC# 6333722
CASSIDAY SCHADE LLP
100 North Broadway, Suite 1580
St. Louis, MO 63102
(314) 241-1377
(314) 241-1320 (Fax)
jkinkade@cassiday.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the Southern District of Illinois using the CM/ECF system.  The electronic case filing system sent a "Notice of E-Filing" to the following:

ATTORNEYS FOR DEFENDANT, FAIYAZ AHMED, M.D.:
Keith Hill
Heyl, Royster, Voelker & Allen, P.C.
105 West Vandalia, Suite 100
Edwardsville, IL 62025
Telephone 618.656.4646
Facsimile 618.656.7940
khill@heylroyster.com

ATTORNEYS FOR PLAINTIFFS:
Jon I. Loevy
Maria Makar
Gianna Gizzi
Loevy & Loevy
311 N. Aberdeen Street, Third Floor
Chicago, IL 60607
jon@loevy.com
makar@loevy.com
Gizzi@loevy.Com

/s/ Jaclyn Kinkade